# EXHIBIT 4

REPORT OF INVESTIGATION INTO

EEO COMPLAINT OF

EDWARD J. GILMORE

UNITED STATES DEPARTMENT OF JUSTICE

DRUG ENFORCEMENT ADMINISTRATION

CASE NO. DEA-2008-00180

Lee Kramer Associates, LLC

Investigator: Joy Savage

1

I. **COMPLAINT IDENTIFICATION**

**Complainant's Name:**

Edward J. Gilmore

**Home Address:**

1192 Clarence Unit #6
Oak Park, Illinois 60304

**Job Title, Series, and Grade (former):**

Associate Deputy Chief Inspector
GS-1811-15

**Name of Involved Organization Unit and Address:**

Drug Enforcement Administration (DEA)
Office of Inspections
700 Army Navy Drive
Arlington, VA 22202

**Dates of Alleged Discrimination:**

Various dates, beginning in 2007 and continuing through March 2008

**Nature of Alleged Discrimination:**

Discrimination based on race, age and reprisal for prior EEO activity when he was rotated out of a previous position that was elevated to the Senior Executive Service and he was not selected for several lateral positions.

II. **DESCRIPTION OF INVESTIGATION**

**Investigator and Contractor:**

Joy Savage, Investigator
Lee Kramer Associates, LLC
919 18th St., NW, 10th Floor
Washington, DC 20006

2

**Place of Investigation:**

Fairfax, Virginia

### III. RELEVANT DATES

| | |
|---|---|
| Date of alleged discrimination: | November 2007 and various other dates between then and March 2008 |
| Initial contact with EEO official: | December 13, 2007 |
| Initial review conducted by Counselor: | December 13, 2007 |
| Date complaint filed: | March 24, 2008 |
| Dates of investigation: | August 4, 2008 – March 4, 2009 |
| Date case submitted: | March 4, 2009 |

### IV. ISSUES

Whether the Complainant was discriminated against based on his race (Black), age (53 - DOB: 4/27/1954), and reprisal (for filing an EEO complaint) when:

1) He was not promoted to the Senior Executive Service (SES). Specifically, In November, he was rotated out of his previous position, which was subsequently upgraded to the SES level; and

2) Since December 2007, he has not been selected for several lateral positions.

### V. REMEDIES

The Complainant wants the following:

1. Retroactive promotion with pay and benefits from the time he was given the highest SES promotion score in 2003 to the date he retired from DEA on March 26, 2008.
2. Adjustments to his pension based on his having been promoted earlier.
3. Compensatory damages.

## VI. INVOLVED OFFICIALS

Karen Tandy, former Administrator
Michele Leonhart, Acting Administrator

## VIII. SUMMARY OF RECORD

**STATEMENT BY COMPLAINANT (Exhibit 7)**

The Complainant alleges that there was discrimination against him based on his race (Black), age (53) and retaliation for filing this EEO complaint (issue #2 only) when:

1. He was rotated out of a previous position which was subsequently upgraded to an SES position ; and

2. After December 2007 he was not selected for two lateral positions

The Complainant stated that he left DEA in March 2008 after he was reassigned to the position of Associate Deputy Chief Inspector, a position that had been abolished but was reinstituted, and he was reassigned there from the position of Deputy Chief Inspector in charge of the Office of Security Programs. He noted that he had significantly less responsibility in the Associate Deputy Chief Inspector position. He stated that when he was the Deputy Chief Inspector, his was the only one of 3 equivalent positions that was not an SES. The other positions were Deputy Chief Inspectors in charge of the Office of Professional Responsibility and the Inspections Program.

The Complainant stated that he reported to Jim Kasson, the Chief Inspector, when he left DEA. He stated that when he first started working in the Inspections Division, he reported to the then Chief Inspector Rogelio Guevara, who retired in June 2007. He stated that he started working in Headquarters in the Office of Professional Responsibility in 2000 as a GS-14 Inspector. He was a GS-15 when he left DEA.

The Complainant described the situation that led to his filing his EEO complaint. He stated that some years ago, a lawsuit was filed that alleged that there was discrimination at DEA relating to African Americans. He stated that, as part of the court decision in that case, DEA was ordered to set up a special process to appoint individuals to the Senior Executive Service (SES). He stated that the process involved scoring each DEA employee who was a candidate for an SES position. He noted that the scoring process was supposed to take place periodically, beginning in 2003. The Complainant stated that the scoring process took place in 2003, in 2004, and then one more time more recently, following an appeal in court.

The Complainant stated that he submitted an application to be evaluated for SES positions in 2003, with concurrence from his supervisor. He stated that he received a notice from Human Resources that he was the top rated candidate during the scoring process. He noted that the ratings were supposed to be good for 3 years. However, he stated that since no rating processes were conducted after 2004 until some time in or around 2008, he believes that the rating he had from 2003 continued to be in force until he left DEA.

The Complainant stated that it was his understanding that DEA management was trying to move his former position of Deputy Chief Inspector into the SES beginning in 2005. He stated that Mr. Guevara told him that this was the case, although no promises were made that he would be given an SES position before he accepted the Deputy Chief Inspector position. He stated that Mr. Guevara told him that he had submitted the paperwork, which had to go through the DEA Administrator and to Department of Justice for approval before the position could be made an SES. He stated that he worked for Mr. Guevara from 2005 until 2007, when Mr. Guevara retired. He also stated that the Administrator at the time was Karen Tandy, and the Deputy Administrator was Michele Leonhart, who is now the acting Administrator following Ms. Tandy's departure from DEA.

The Complainant stated that, although he was not specifically told so, he believes that DEA management deliberately waited until Mr. Guevara retired to proceed with making the Deputy Chief Inspector position an SES. He stated that Mr. Guevara told him that the position was going to become an SES, but did not promise SES status to him. He stated that in November 2007, Ms. Tandy called him into her office and told him that the position was going to be elevated to the SES level. However, Ms. Tandy also told him that she was "going to go in another direction" and was going to select someone else for the position. He noted that the person who was selected for the position was someone who worked for the new Chief Inspector, Mr. Kasson, when Mr. Kasson was the Special Agent in Charge of the Philadelphia Office of DEA.

The Complainant stated that he believes that the Deputy Administrator, Ms. Leonhart, had a lot of input into the decisions Ms. Tandy made when she was the Administrator. He noted that a lot of the individuals who were selected for SES positions worked for Ms. Leonhart when she was the Special Agent in Charge in Los Angles or San Francisco. He stated that he believes that the individuals who worked for Ms. Leonhart were given more opportunities for the experiences that would be required for them to eventually advance to higher level DEA management.

The Complainant stated that Mr. Kasson told him that he was to stay in the Deputy Chief Inspector position until the new person arrived in January 2008, Ms. Barbara Roach. He also stated that one of the reasons that he objected to this situation was that Ms. Roach had been rated as "Qualified" for SES positions while he was rated as Best Qualified, as well as being the number 1 candidate when he was scored in 2003. He stated that this situation caused him a lot of embarrassment, and he considered his reassignment to the

5

Associate Deputy Chief position to be a demotion organizationally. He stated that as the Deputy Chief Inspector, he had responsibility for 239 people and an approximate annual budget of $35 million. He noted that he also had deciding authority for the security clearances of everyone at DEA. In the Associate Deputy Chief position, he was relegated to doing intake write-ups for Office of Professional Responsibility (OPR), all day every day. He stated that the prior holder of the position also had responsibility for directing all of the investigations conducted by OPR. He stated that when faced with this scenario, he decided to retire, rather than to continue to allow DEA management to humiliate him by giving him meaningless assignments.

The Complainant stated that, after he received his first evaluation as a supervisor, he consistently received Outstanding overall ratings until just before he was given the position that he considered to be a demotion. He stated that his last rating was "Significantly Exceeds" rather than Outstanding. He stated that at this point, Ms. Leonhart had been his second level supervisor for a number of years. He stated that he believes that she influenced Mr. Guevara and Mr. Kasson to downgrade his appraisal rating so that there was a better appearance when Ms. Roach was selected for the SES position instead of him.

The Complainant stated that the court order that affects how DEA is supposed to be making SES appointments requires that management either appoint individuals who have been rated as "Best Qualified" or who are existing SES members. He stated that the court order resulted from a court decision that DEA was subjecting African Americans to discrimination. He noted that the original court decision was recently affirmed at the appellate level because DEA management was found to be violating the terms of the original court decision. He stated that, among other things, DEA management was making SES appointments of individuals rated as "Qualified" and not "Best Qualified" before the appeal was filed.

The Complainant noted that there was one White female selected for an SES position that had not been scored for SES positions at all. He also stated that he believes that many of the individuals selected over the years have not been African Americans, but most are White or female or both. He also stated that he believes that while African Americans have been promoted to Assistant Special Agent in Charge positions from the GS-15 level, White colleagues are sometimes promoted directly into Special Agent in Charge positions from the GS-15 level, which is a higher level position organizationally.

The Complainant also stated that his situation is not the first time under Ms. Tandy and Ms. Leonhart that an African American was ousted from a position before it was upgraded to the SES level and filled with another individual who is White. He stated that when the Country Attaché position in Bangkok was upgraded to the SES level, the same thing occurred to someone named Andre Kellum. The Complainant noted that he also applied for the position when it became SES, and noted that he too was passed over, even though at that time he was rated as "Best Qualified" and was the #1 rated candidate for SES positions, and he believes that the person who was selected was less qualified.

6

With regard to the allegation that he has been subjected to discrimination based on age, the Complainant stated that there was a time when he and others started to notice that Ms. Tandy and Ms. Leonhart tended to appoint individuals in their 30's to SES positions. He stated that he believes that when Ms. Tandy and Ms. Leonhart caught on to the possibility that employees might want to file EEO complaints alleging age discrimination because of this situation, they appointed a single individual who was over 50 to an SES position, who used to work for Ms. Leonhart in Los Angeles.

The Complainant stated that he believes that there is an unwritten requirement since Ms. Tandy and Ms. Leonhart became the Administrator and Deputy that to be promoted into the Senior Executive Service, the employee must have experience in enforcement at the GS-15 level. He stated that he left enforcement work when he was promoted to a GS-13 in the Aviation Service at DEA. However, since he is now a Chief of Police, that says something about his ability to manage an enforcement program. He stated that he was a proven manager at DEA, and was rated as the top rated candidate using DEA's own requirements in 2003.

The Complainant stated that he believes that Ms. Leonhart has preference for associating predominately with White people, which is reflected in her selections for supervisors and managers. He stated that before Ms. Tandy became the Administrator, DEA had 16-19 Black SES members, but now there are only 6. He noted that there are currently 64-68 SES members in DEA. He also stated that he believes that there have been 21 selections for SES positions since he was rated as the #1 candidate for SES positions, and he questions how it is that he was never selected for an SES position, including for the position that he occupied when it was moved into the SES.

The Complainant also stated that he believes that African Americans have not had the same level of access to Ms. Leonhart that White managers seem to have. He stated that there was a time when he asked to meet with her to discuss why he had not been selected for an SES position, although he was interested and eligible. He stated that she responded to his email that she would meet with him after she returned from vacation, but that she never followed through to schedule the appointment. He stated that it was his understanding that whenever an SES position became available, a list of candidates would be automatically issued, but that he believes that the candidates would also lobby Ms. Tandy and/or Ms. Leonhart about their candidacy. He stated that he never had that opportunity because of lack of access to either Ms. Tandy or Ms. Leonhart.

With regard to the issue of lateral reassignments, the Complainant stated in his affidavit that after he was taken out of the Deputy Chief Inspector position, there were several GS-15 positions open in which he indicated that he was interested, but for which he was not selected. He stated that one of the positions was that of Secretary for the Career Board and the second one was for the Assistant Special Agent in Charge in Chicago, where he lived and his family resides and so there would have been no expense to DEA to place him in that position.

7

The Complainant stated that DEA could have moved him around the corner from his existing Headquarters office to place him in the Secretary of the Career Board position, but instead a White female was promoted into the position. He stated that, instead of selecting him for the ASAC position in Chicago, a White male also in Headquarters was selected and relocated to Chicago, where he had worked before. He noted that he believes that the entire management structure in Chicago is now White, in a city that is predominantly African American. He stated that he had been a Police Officer in Chicago for 10 years prior to working at DEA, and had extensive management experience at DEA, in addition to being the top rated candidate for SES positions, and yet he was still passed over in favor of a less qualified candidate. He noted that he still has good connections with the Police in Chicago, which would be very beneficial to DEA in Chicago since working together with the Police is an important part of what happens there.

The Complainant stated that the person who was selected for the ASAC position in Chicago had formerly been on the Board of Professional Responsibility and only had responsibility for making recommendations for punishments when there were problems found. The individual selected for the Secretary of the Career Board was formerly a Supervisory Special Agent in an Area Office. He questioned how Ms. Leonhart and the Career Board could determine that either of these individuals was better qualified than he is. He also noted that he believes that Ms. Leonhart has selected candidates for the Career Board who are likely to agree with her decisions. He stated that he believes that he was subjected to reprisal when he was not selected for either of these two positions.

## MANAGEMENT STATEMENTS

### Statement by Michele Leonhart (Exhibit 8)

In her statement, Ms. Leonhart stated the decision to make the Deputy Chief Inspector for the Office of Security Programs a SES-level position was a recommendation from past Chief Inspectors over the past several years. Based upon their input, research and anticipated future growth of the Office and responsibilities of the Deputy Chief Inspector, the position was included in an official request for approximately 24 new SES positions that both she and Administrator Tandy supported and forwarded to the Department of Justice (DOJ) for consideration in approximately 2005. The position, along with several others, were approved by the DOJ for upgrading to the SES level in approximately March 2007.

Ms. Leonhart explained that Special Agent SES selections are made by the Administrator. Therefore, Ms. Tandy made the decision to select Barbara Roach for the SES Executive Secretary position. She said her role was to obtain recommendations. She stated that Complainant's former supervisors – Chief Inspectors Guevara and Kasson – did not recommend Complainant for the position.

With regard to the Executive Secretary and Chicago ASAC position, Ms. Leonhart stated that the Career Board makes selections of Special Agents for GS-15 positions. She said the Complainant was did not possess the active enforcement leadership experience that was sought for the two positions in question, therefore, the Complainant was not deemed the best qualified for either position.

Ms. Leonhart denies age was a factor in the SES selections. She explained that the ages of employees are not considered in appointments to the SES, nor are they provided to the Administrator. Ms. Leonhart further rejected the allegation that Complainant's race or his filing this complaint was a factor in his nonselection for an SES position at the DEA. She stated that at no time was race or a person's exercise of his or her EEO rights a factor in any selection decision. Further, she explained that Administrator Tandy was not aware of this EEO complaint when she made the SES selections, and that she (Leonhart) only recently became aware of the complaint, well after the Complainant's retirement.

Ms. Leonhart concluded by stating Complainant had numerous opportunities over the years to improve on his enforcement shortcomings, but did not take advantage of those opportunities. Instead, he sought positions, including the Security Programs position, which were more administrative in nature and did not improve his competitiveness for SES positions. Ms. Leonhart stated that, for this reason, most of the SES candidates have considerably more enforcement leadership experience than Complainant and that is an important factor in considering candidates for the SES. She said it also makes the Complainant less competitive than most of the other candidates.