IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| EDWARD L. GILMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:13-cv-789 |
| ERIC HOLDER, | ) | (LMB/IDD) |
| in his official capacity as | ) | |
| Attorney General of the United States, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
## MOTION TO COMPEL ANSWERS TO HIS INTERROGATORIES

### INTRODUCTION

The Plaintiff's Motion to Compel Answers to his Interrogatories is based on a view of the scope of discovery that is outdated and on a view of the case that simply ignores what actually remains at issue in this case.[1]  He also seeks what is essentially class action discovery that is unrelated to the three individual disparate treatment claims at issue in this case.  His motion to compel responses to such broad discovery requests should be denied.

This case concerns the Plaintiff Edward Gilmore ("Plaintiff")'s non-selection by Drug Enforcement Administration ("DEA") decisionmakers for three competitive senior positions within a narrow time span.  First, in October, 2007, Plaintiff was not selected by then-Administrator Tandy for a Senior Executive Service ("SES") promotion when the Agency created a new, higher-level SES position to head the Office of Security Programs, the office in

---

[1] As an example of the Plaintiff's failure to focus on the claims and defenses actually at issue in this case, he continues to claim that he was "forced to retire."  Plaintiff's Motion to Compel Memorandum (hereinafter "Pl.'s Memo.") at 3.  Considering only the allegations of the Plaintiff's complaint, Judge Brinkema dismissed that claim concluding that Plaintiff's pleadings failed to state a claim for a constructive discharge.  November 22, 2013 Mots. Hr'g. Tr. at p. 11.

which Plaintiff held the GS-15 position of Deputy Chief Inspector.  Shortly thereafter, Plaintiff applied for two lateral GS-15 positions and was not selected for either after consideration by the DEA's Career Board during its December 2007 meeting. In response to Plaintiff's request to be moved from his position in the Office of Security Programs because of the "embarrassment" of not being selected for the new SES position,  in January 2008, Plaintiff was transferred to a lateral GS-15 position in the same division and served as the Associate Deputy Chief Inspector for the Office of Professional Responsibility until voluntarily retiring two months later.  At all times material to this case, the Plaintiff was serving as a GS-15 Supervisory Special Agent. Based on his non-selection for the three positions, Plaintiff filed a Title VII action alleging discrimination and retaliation in his non-selection and subsequent lateral transfer.  *See* Compl. ¶¶ 62-91.[2]  We search the Plaintiff's memorandum in vain for any explanation of how, in his view, the Plaintiff's expansive discovery requests are relevant to the actual claims and defenses in this action.

## STATEMENT OF FACTS

1.      In 2007, the DEA was granted authority to create *inter alia* several new SES positions, including for the Deputy Chief Inspector, Security Programs position.  According to the federal Office of Personnel Management ("OPM"), the SES was designed to be a corps of executives selected for their leadership qualifications, an elite group of men and women leaders who "possess well-honed executive skills" and other exemplary traits.  *See* OPM definition, http://www.opm.gov/policy-data-oversight/senior-executive-service.   The duties of the new

---

[2] For the reasons stated on the record, the Court dismissed Plaintiff's unlawful constructive discharge claim during the oral arguments hearing on November 22, 2013. Mots. Hr'g. Tr. at p. 11 (finding that although Plaintiff found the conditions of his employment frustrating after his non-selection, "frustration is not equivalent to intolerable.")  The remaining claims relate to three selection and promotion decisions for SES and GS-15 positions between the narrow period of October – December 2007.

position included the duties the Plaintiff had been performing as a GS-15 Deputy Chief Inspector in charge of the Office of Security Programs as well as additional managerial and executive functions.[3]

2.     While the Plaintiff was among those considered for the new SES position, the Administrator (then Karen Tandy) ultimately selected Special Agent Barbara Roach, who served as Assistant Special Agent in Charge ("ASAC") of the DEA's Philadelphia Division at the time of her selection.  The decision to select Ms. Roach rather than the Plaintiff to the new SES position was made by Administrator Tandy based on several factors including each employee's overall record, leadership skills, and expertise.  Plaintiff was advised by Administrator Tandy that he was not the selectee for the SES position shortly before the announcement of Ms. Roach's selection to the entire DEA staff on October 18, 2007.

3.     Unwilling to serve under Ms. Roach's supervision in the Office of Security Programs, Plaintiff sought a lateral transfer to one of two positions at the GS-15 level.  One of those positions was as Assistant Special Agent in Charge ("ASAC") of the DEA's Chicago Division, the other was as the Secretary of the Career Board.  The DEA's Career Board  was responsible for considering all of the candidates for those two GS-15 positions and making a consensus recommendation to the Deputy Administrator (then Michele Leonhart), who as then Chair of the Career Board, was the selecting official for all GS-15 positions.

4.     The Career Board was established in 1983 by then Acting Administrator Francis Mullen, Jr., as a way to ensure a more comprehensive career mobility system within the DEA. *See* History of DEA 1980-1985, available at http://www.justice.gov/dea/about/history/1980-1985.pdf.  The Career Board was designed to elicit a diversity of perspectives and tries to ensure

---

[3] Please see enclosed as Defendant's Exhibits ("DEX") A and B, the position descriptions for the both the GS-15 and SES position.

that the most qualified personnel for promotions were selected.  *See id*.  To do so, the Career

Board evaluates" each employee's overall record of experience and expertise, the Special Agent

in Charge's personal recommendations, the overall needs of the DEA, and most important, the

fair and equitable treatment of each individual."  *Id*.

5.     The Career Board reviewed detailed memoranda setting forth the qualifications of

three top candidates recommended for the GS-15 positions as well as the biographical materials

for all the Best-Qualified List candidates.  DEX D, Mark Mazzei Decl. at ¶¶ 10-11. Gilmore was

neither recommended by the Recommending Officials in their memoranda to the Career Board

nor in final consideration for either lateral transfer. *Id.* at ¶ 17.  The Career Board's consensus

recommendations and the Chair of the Career Board's ultimate decisions to select other

candidates for the two GS-15 positions for which the plaintiff applied was made during the DEA

Career Board meeting  in December 12, 2007 meeting.  The members of the Career Board at that

time included as chair then-Deputy Administrator Michelle Leonhart, Michael Braun, Anthony

Placido, James Craig, James Kasson, Javier Pena, Mark Trouville, Jeffrey Sweetin, Gary

Olenkiewicz, Timothy Landrum, Cathy Kasch, Margo Norman, Mark Mazzei, Debbie Stawicki

and Enjolia Jones.

## DISCUSSION

## I.     The Scope of Discovery Should Be Focused on the Actual Remaining Claims and Defenses of the Parties

In 2000, Rule 26(b) was amended.  As now constituted, Rule 26(b)(1) permits a party to

"obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or*

*defense* – including the existence, description, nature, custody, condition, and location of any

documents or other tangible things and the identity and location of persons who know of any

discoverable matter."   Formerly the Rule had permitted discovery of any matter relevant to the

subject matter of the action; the Committee's Note explaining the amendment to Rule 26(b) in 2000 states that: "The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action."[4]

Even before the 2000 amendment to Rule 26(b)(1), courts have pointed out that "[i]n a disparate treatment case, discovery should be 'reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct.'" *Rodger v. Electronic Data Systems, Corp.*, 155 F.R.D. 537, 540 (E.D.N.C. 1994) (*quoting Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618–19 (D.D.C.1983)).   Similarly, courts have recognized that in a disparate treatment case alleging discriminatory non-selection or promotion, the positions that are relevant for discovery purposes are the positions that the plaintiffs occupied or for which they sought to be promoted.   *See Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D. Pa. 1995).   The revised Rule 26(b) gives even greater force to focusing discovery to the circumstances of the personnel actions actually in issue.

Despite the fact that Plaintiff is alleging discriminatory or retaliatory non-selection for three positions in only two grades (one SES-level position and two GS-15 positions) within a six-month period, Plaintiff's contend that the Defendant should be compelled to provide all data related to DEA's employment practices and the racial makeup of its workforce during the entire length of former Administrator Tandy's tenure.   Pl.'s Memo at 9-11.   Plaintiff moves to compel Defendant to produce information responsive to unreasonably broad and unduly burdensome requests, including for employment data and hiring decisions for an agency with spanning over a

---

[4] Further, the Committee stated, "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."   *Id.*

decade, and for thousands of employees across a breath of grade levels, well beyond the SES and GS-15 promotions in the years leading up to Plaintiff's non-selection.  *See, e.g.*, Interrog Nos. 3-5, 11-12.  The DEA currently employs approximately 10,000 people.  The requested discovery would be unduly oppressive and burdensome in scope.  Moreover, Plaintiff fails to demonstrate a "particularized need and relevance" for the sweeping discovery sought in its Interrogatories.  *See Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 62 (D.N.J. 1985)(internal citations omitted) (finding that an individual plaintiff must show a more particularized need and relevance before being permitted a broad inquiry into defendant's employment practices).

Plaintiff also fails to show why an individual non-selection case arising from employment decisions in 2007 requires data spanning from 2002 to the present.  Courts discussing the temporal scope of discovery in a Title VII case have limited permissible discovery to a *reasonable* time period that predates a plaintiff's claims.  *See Miller v. Hygrade Food Products Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000) (citing various cases and discovery scope permitted as reasonable) (internal citations omitted) (emphasis added); *see also Gen. Ins. Co. of Am. v. Equal Employment Opportunity Comm'n*, 491 F.2d 133, 136 (9th Cir. 1974) (affirming ruling that discovery requests reaching back eight years regarding evidence not even charged or alleged was unduly broad.).  "Thus, the task of the trial court is to balance the clear relevance of the information against the burden on the defendant."  *Miller*, 89 F. Supp. 2d at 657.  Unless and until Plaintiff can demonstrate the "clear relevance of information beyond this period," discovery regarding a non-selection occurring in a particular year should be limited to the years leading up to and immediately following the non-selection.  *See Robbins*, 105 F.R.D. at 63; *see also Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 656 (D. Kan. 2004) (discovery seeking information starting two and a half years prior to the discriminatory conduct is a reasonable period of time).

We search the Plaintiff's memorandum in vain for any explanation of how the sprawling, extensive discovery sought relates to the three 2007 non-selections at issue in this case.

## II.     Plaintiff's Discovery Requests are a Fishing Expedition and Should Be Denied

Plaintiff attempts to engage in a further fishing expedition in the hope of potentially finding something that contravenes the evidentiary record. *See Morrow v. Farrell*, 187 F. Supp. 2d 548, 551 (D. Md. 2002) *aff'd*, 50 F. App'x 179 (4th Cir. 2002) (denying "fishing expedition" request for discovery in discrimination case based on generalized statements without specification of what discovery might be needed or pointing to specific facts that might merit further discovery).

### a.   Plaintiff Cannot Seek Overly Broad Discovery Simply Because the Evidentiary Record Undermines His Claims or Does Not Exist.

Plaintiff seeks to compel answers regarding former EEO counselor Ms. Stephanie Smith's record practices although her declaration states simply and completely the nature of her information.  There is no additional information to provide.  The evidentiary record is pellucidly clear.  Ms. Smith met and counseled Plaintiff regarding his EEO claims on December 13, 2007 – over 45 days after being denied the SES promotion and the day after the Career Board selected other candidates for the two GS-15 lateral transfer vacancies to which he applied.  Faced with the evidence that Plaintiff's initial contact with the DEA office on December 13, 2007 supports Defendant's defenses that a) Plaintiff's SES non-selection is time-barred and b) his retaliatory claims are unsustainable, Plaintiff has alleged that he might have called to schedule the appointment within the 45 day period and hopes that he can conjure evidence to support his belated recollection.  As indicated in Ms. Smith's sworn declaration, all the records of the plaintiff's EEO counseling after his meeting with her were transferred to the U.S. Marshals'

Service's EEO Staff, which conducted the remaining EEO investigation.[5]  Ms. Smith routinely

kept a  hard copy appointment calendar, which she destroyed upon leaving the DEA.  She did not

keep an electronic calendar of her appointments and the EEO did not log incoming calls.  *See*

DEX E, Smith Decl. ¶¶ 6-7.  Even if there were another copy of the calendar; it would have only

reflected the December 13, 2007 appointment which is recorded and averred to by both Plaintiff

and Ms. Smith.  There is no additional information.

Plaintiff relies on pure conjecture to compel additional information relating to Ms.

Smith's declaration and the EEO calendar procedures.  Ms. Smith declared under oath that there

was no additional information available to provide.  Where a plaintiff already has an extensive

amount of information available to him, requests for additional discovery may be determined to

rely "on pure conjecture." *Hamilton v. Geithner*, 1:08CV1112 (JCC), 2009 WL 2240358 at *2

(E.D. Va. July 23, 2009) (Cacheris, J.) "[T]here is no reasonable expectation that Plaintiff's

requested discovery will turn up anything new, especially as the questions that he wants to ask

were substantially answered under oath and closer in time to the occurrence of the events in

question . . ." *Id.*.

      b.  <u>Plaintiff Impermissibly Requests Broad and Irrelevant *Segar* Class Action Litigation
         Discovery in an Inappropriate Venue</u>

---

[5] Plaintiff has repeated his concern about the structure or the format of the administrative record
but his frustration is both misguided and misdirection.  The DEA had no involvement with the
EEO investigation following his initial consultation in December 2007.  Due to the appearance
of a conflict of interest, the investigation was transferred by the Department of Justice's Justice
Management Division to the U.S. Marshals' Service. *See* Smith Decl. ¶ 15. The U.S. Marshals'
EEO Staff supervised the investigation (which was conducted by a contract investigator),
maintained the administrative record, and the Department of Justice's Complaint Adjudication
Officer concluded the DEA did not discriminate against the Plaintiff.  Plaintiff's motion to
compel additional information from the DEA will not correct any perceived issues with
Plaintiff's EEO file as the DEA was not the agency maintaining the administrative record.

Plaintiff attempts to leverage class action litigation pending in another jurisdiction to bolster his own non-selection or non-promotion claims.  *See* Compl. ¶¶ 16-20 (citing *Segar v. Civilelli*, 508 F. Supp. 690, 712-15 (D.D.C. 1981), *aff'd* in relevant part *sub nom.*, *Segar v. Smith*. 738 F.2d 1249 (D.C. Cir. 1984).  *Segar* is a Title VII class action pending in the United States District Court for the District of Columbia brought by a class of African-American DEA Special Agents alleging discrimination by the Agency in, among other things, promotions to SES and GS-15 positions.  Plaintiff is a member of the plaintiff class.[6]

On November 23, 2007, the United States Court of Appeals for the District of Columbia Circuit issued a decision clarifying a stipulation that the parties previously entered in that case regarding promotions to SES positions.[6]  As the November 23, 2007 *Segar* appellate opinion explains, DEA and the *Segar* plaintiff class entered "Stipulated Procedures"—which the district court had first entered and then subsequently vacated finding that the parties' differing interpretations showed that there had not been a meeting of the minds regarding the selections of Special Agents to the Agency's SES, whereby candidates for such positions would file an application, be rated and ranked, and placed on a list presented to the Administrator for consideration for selection. *See Segar v. Mukasey*, 508 F.3d 16, 19-21 (D.C. Cir. 2007).

The D.C. Circuit's November 23, 2007 appellate decision—issued *after* October 18, 2007, when Plaintiff learned of his non-selection to the SES DCI position—resolved the controversy over the Stipulated Procedures, ruling, among other things, that the DEA Administrator does not retain the authority to select an SES promotion candidate who never

---

[6] The district court in *Segar* certified a class pursuant to Fed. R. Civ. P. 23(b) (2) consisting of all African-Americans who then served as DEA Special Agents, had been discharged as Special Agents, who have unsuccessfully applied for DEA Special Agent positions or who *in the future* will apply to be Special Agents.  *See Segar v. Smith*, 738 F.2d 1249, 1260-61 (D.D.C. 1977). It thus is undisputed that Complainant is a member of the *Segar* plaintiff class.

submitted an application and was never rated or ranked by an SES selection panel.  The *Segar* litigation in the district court is still pending.

At the time of Plaintiff's non-selection to the SES, the stipulated order in *Segar* on which he relies had been vacated and not yet reinstated on appeal.  Plaintiff attempts to strengthen his otherwise untimely denial of promotion and discharge claims by requesting an irrelevant fishing expedition into the DEA's compliance with *Segar* Stipulated Procedures. But this Court lacks subject matter jurisdiction to determine whether or not there was a violation of the Segar settlement or the underlying orders in that case. Consequently discovery relevant to the *Segar* litigation is simply not relevant to the parties' claims or defenses in this Court.  *See Slaughter v. U.S. Dept of Agriculture*, 2014 WL 563644, at *2, -- Fed. Appx. --- (11th Cir. Feb. 14, 2014) (enforcing a settlement agreement or a consent decree falls outside of the ancillary jurisdiction of the federal courts, even where the court had jurisdiction to hear the underlying case; there must be an independent jurisdictional basis to seek enforcement of a settlement agreement);  *Hankins v. CarMax Inc.*, 2012 WL 113824, at *8 (D. Md. Jan. 13, 2012) (declining to assert jurisdiction over matters relating to the interpretation of a settlement agreement where another court specifically retained jurisdiction to enforce the consent decree).  On January 22, 2002, the *Segar* court granted the class' motion to make the bylaws of the Segar Committee an order of the Court.  *See* January 22, 2002 Order with attachments (attached hereto as DEX C).  Those bylaws – now an order of the Segar court – specifically provide that, while Segar class members individual discrimination complaints "are to be remedied separately" and not through the <u>Segar</u> action, "classwide discrimination" claims "are properly part of the Segar class."   If Plaintiff seeks to bring a claim to enforce the *Segar* orderor contendsthat the *Segar* procedures were violated, he must go to the district court where the litigation is pending – the U.S. District Court

for the District of Columbia.  He is not entitled to what is essentially the equivalent of class-wide discovery relating to all SES or GS-15 selections for his individual disparate treatment claim.

### III.    Defendant Properly Objected to the Interrogatories and Responses Which are the Subject of the Plaintiff's Motion

Plaintiff's motion to compel is directed to Plaintiff's Interrogatory Nos. 3 – 6, 11 – 12, 15 – 16, and 18.  Notably absent from the Plaintiff's motion is the Defendant's actual responses to the Plaintiff's requests.  For the convenience of the Court, we have set out the interrogatories the Plaintiff propounded, followed by the objections interposed and responses provided.  After each interrogatory, objection and response we will show why no further information should be required:

a.   <u>Interrogatories 3-6</u>

**INTERROGATORY NO. 3**:   *For each year between January 2002 to the present, provide the total number of DEA employees and, on a percentage basis, the race of those employees separately for every GS and step level and for the Senior Executive Service.*

**Objection**
The Defendant objects to this Interrogatory as being vague, overly broad and unduly burdensome because it seeks information not relevant to the parties' claims or defenses.  The Defendant further objects to this Interrogatory to the extent that the information sought "for every GS and step level" is not relevant to the claims and defenses at issue in this litigation and requests information regarding persons who are neither parties to this litigation nor applicants for the selection of the three positions at issue (the SES DCI position and the two GS-15 lateral positions –Executive Secretary of the Career Board and Chicago ASAC).

**Response**
Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request the annual total number of DEA Special Agent employees, their racial identification, and grade level over the specified time period.  To the extent a response is required, without waiving the foregoing objections, information regarding the race, GS level and position of the candidates selected by the December 2007 Career Board has already been provided in the administrative record.  *See* Report of Investigation ("ROI"), Tab 16 ("Career Board Actions").

<u>Discussion</u>

-11-

As originally propounded, this Interrogatory sought a profile by race of all DEA employees by race and grade level.  The majority of DEA employees are not Special Agents like the Plaintiff; they include support personnel, laboratory scientists and staff, intelligence specialists and drug diversion investigators, among others.  In a meet-and-confer Plaintiff's counsel did agree to narrow this request to include only sworn 1811-series criminal investigators ("Special Agents").  However, even with this limitation, the scope of the Interrogatory is too broad.  Neither during the meet-and-confer nor in his memorandum did Plaintiff explain how information relating to 1811 Special Agents dating back a period of 13 years and covering the tenure of at least three Administrators and of numerous iterations of the Career Board are relevant to the claims of racially disparate treatment in the non-selection of the Plaintiff for an SES position in October, 2007, and for the selection in December, 2008 of two other Supervisory Special Agents for two positions for which he applied as a candidate for a lateral transfer.[7]

> **INTERROGATORY NO. 4**: *For every SES-level employee employed by the DEA between January 1, 2002 and the present, provide each such individual's title(s), salary, race, and duration of service separately for each year, and specify when any GS-15-level employee was promoted to the SES.*
>
> **Objection**
> The Defendant objects to this Interrogatory as being compound, overly broad and unduly burdensome because it seeks information not relevant to the parties' claims or defenses.  The Defendant further objects to this Interrogatory to the extent that the information sought for "every SES-level employee" is not relevant to the claims and defenses at issue in this litigation and requests information regarding persons who are neither parties to this litigation nor applicants for the selection of the three positions at issue.

---

[7] Any attempt in a reply brief to proffer an excuse for the failure to relate the Plaintiff's interrogatories to the claims or defenses in this case, or to proffer such an explanation for some or all of the Plaintiff's interrogatories in a reply brief should be disregarded.

**Response**

Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request annual data on DEA SES Special Agents, their racial identification, position title and year hired by DEA over the specified time period. To the extent a response is required, without waiving the foregoing objections, information regarding the race of the candidates selected for SES promotion during the period of March 2005- March 2008 has already been provided in the administrative proceedings.  *See* Report of Investigation ("ROI"), Tab 17 ("SES Appointments Made Between 3/05 and 3/08").

Discussion

The Report of Investigation of the Plaintiff's claim of discrimination included a report

detailing the race of SES selectees for the three year period prior to the Plaintiff's retirement.

Plaintiff nowhere explains how this period, which roughly coincides with the tenure of

former Administrator Tandy, is an insufficient response.  Absent an explanation of how the

decisions of other Administrators would be relevant to a claim of disparate treatment by

Administrator Tandy, which Plaintiff has not even attempted, it is clear that the information

sought is not relevant to claims or defenses before this court in this case.

**INTERROGATORY NO. 5**:  *State in detail all SES-level positions which became open between January 1, 2002 and March 31, 2008 and for each such position, IDENTIFY the person to whom DEA offered that position, and state their race, the date employment was offered, the date the offer of employment was accepted or declined, the date the person started employment, the date the person ended employment in that position, and state whether the person was listed on the "Best Qualified" list, "Qualified" list, "Minimally Qualified" list (as those terms are used in practice by the DEA to make hiring decisions of SES-level employees), no list, or was a lateral SES transfer.*

**Objection**

The Defendant objects to this Interrogatory as being compound, overly broad and unduly burdensome because it seeks information not relevant to the parties' claims or defenses.  The Defendant further objects to this Interrogatory to the extent that the information sought includes private information for persons who are neither parties to this litigation nor applicants for the selection of the three positions at issue.

**Response**

Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request a chart or compilation of data, reflecting the racial identification and qualification status under the Segar Stipulated Procedures for SES Agent employee positions during the specified time period. Additionally, if available, Plaintiff is requesting data on whether any SES Agent offers were declined during this time period. To the extent a response is required, without waiving the foregoing objections, *see* above response to Interrogatory No. 4. Information regarding the race and qualification status of the other candidates for the three relevant positions has already been provided during the administrative proceedings. Without exception, every SES candidate selected during the period reflected in the administrative proceeding data (March 2006 through March 2008) was either on the "Best Qualified" list or "Qualified" list. With regards to the SES DCI position, Barbra Roach was offered and accepted the SES position, her appointment was announced via cable and email on October 18, 2007, and she began serving in that position on January 6, 2008. Ms. Roach was on the "Qualified" list for the SES DCI candidates.

Discussion

As the Defendant's response stated, the Plaintiff has the racial and gender profile of the applicant pools with which he competed for the positions at issue in this case. Plaintiff was further informed that there were no instances in which a candidate who was offered an SES position declined. Other than the duplicating the information already in their possession, then, Plaintiff seeks to compel DEA to compile information about candidates for positions *other than* the position which Plaintiff claims he was not given because he is an African-American. As the Plaintiff offers no explanation as to how the information sought in this interrogatory, for a period of 13 years and counting, relates to the selection of SA Roach for the position, his motion should be denied.

**INTERROGATORY NO. 6**: *Separately for each position described in response to Interrogatory 5, provide the race of every person who applied or was considered for these positions, indicate which if any of these persons were recommended by the Deputy Administrator, and for each person state whether that person was listed on the "Best Qualified" list, "Qualified" list, "Minimally Qualified" list, no list, or would be a lateral SES transfer.*

**Objection**

The Defendant objects to this Interrogatory as being vague, compound, overly broad and unduly burdensome because it seeks information not relevant to the parties' claims or defenses.  The Defendant further objects to this Interrogatory to the extent that the information sought includes private information for persons who are neither parties to this litigation nor applicants for the selection of the three positions at issue.

**Response**

Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request record-based data on the race of the applicants for the SES Agent positions identified in Interrogatory No. 5 and the identification of persons who were formally recommended in writing by then Deputy Administrator Leonhart or if there were any applicants selected who did not apply for consideration.  To the extent a response is required, without waiving the foregoing objections, information regarding the race and qualification status of the other candidates during the relevant time period has already been provided during the administrative proceedings.

Discussion

As with Interrogatory No. 5, Plaintiff seeks to compel DEA to compile a statement of the race and other information who was a candidate for a position *other than* the SEs position which he claims he was not given because he is an African-American.  As the Plaintiff offers no explanation as to how the information sought in this interrogatory, for a period of 13 years and counting, would relate to the selection of Ms. Roach rather than the Plaintiff, his motion should be denied.

    b.  Interrogatories 11-12

**INTERROGATORY NO. 11**: *For each person who the DEA has promoted, from January 1, 2002 to the present, to a position of Associate Special Agent in Charge, IDENTIFY the person, including their race, the GS level from which he/she was promoted, the date employment was offered, the date the offer of employment was accepted or declined, the date the person started employment, and the date the person ended employment.*

**Objection**

The Defendant objects to this Interrogatory as being overly broad and unduly burdensome because it seeks information not relevant to the parties' claims or defenses.  The Defendant further objects to this Interrogatory to the extent that the information sought includes information that is not relevant to the claims or

defenses at issue in this litigation – none of the three relevant positions were for that of an "Associate Special Agent in Charge."

**Response**

Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request a list or compilation of annual data similar to Interrogatory No. 5 regarding the promotion of persons to the position of "Assistant Special Agent in Charge" including race, previous GS level and employment for the specified time period. *See* response to Interrogatory No. 5. Information responsive to Mr. Gilmore's non-selection for the ASAC Chicago position is also responsive to other numbered document requests or has already been provided in the underlying administrative record and pleadings, including the answer to Plaintiff's Complaint and dispositive motions. The Defendant reserves the right to supplement with additional information as it becomes available through the course of investigation and discovery.

Discussion

As was the case with Interrogatory No. 5, the Plaintiff has the racial and gender profile of the applicant pools with which he competed for the positions at issue in this case. Here, too, then the Plaintiff seeks to require the DEA to duplicate the information already in his possession, or to compel DEA to compile information about candidates for positions *other than* the position which Plaintiff claims he was not given because he is an African-American. The Plaintiff offers no explanation as to how the information sought in this interrogatory, for selections made by Career Boards whose composition changed regularly relates to the non-selection of the Plaintiff for the position. Moreover, the Plaintiff seeks to compel recreation of the applicant pools for positions not at issue in this case for a period of 13 years. Six of those years – indeed, now almost seven, followed his voluntary retirement to accept the position of Police Chief in Calumet City, Illinois. The motion to compel a further response to this interrogatory should be denied.

**INTERROGATORY NO. 12**: *For each person who the DEA has promoted, from January 1, 2002 to the present, to a position of Special Agent in Charge, IDENTIFY the person, including their race, the GS level from which he/she was promoted, the date employment was offered, the date the offer of employment was accepted or declined, the date the person started employment, and the date the person ended employment.*

**Objection**

The Defendant objects to this Interrogatory as being overly broad and unduly burdensome because it seeks information not relevant to the parties' claims or defenses. The Defendant further objects to this Interrogatory to the extent that the information sought includes information that is not relevant to the claims or defenses at issue in this litigation – none of the three relevant positions were for that of a "Special Agent in Charge."

Discussion

As with the preceding interrogatories, Plaintiff seeks information about positions not at issue in this case, made under different standards by different decision-makers, and for a period at least half of which followed the Plaintiff's voluntary retirement. The Plaintiff offers no explanation as to how thus information would be itself relevant to his non-selection for the positions actually at issue in this case. The motion to compel a further response to this interrogatory should be denied.

    c.   Interrogatories 15-16 and 18

**INTERROGATORY NO. 15**: *Describe in detail all other complaints, lawsuits, or administrative actions filed against DEA from January 1, 2002 through December 23, 2013 relating to allegations on the basis of race.*

**Objection**

The Defendant objects to this Interrogatory as being vague, overly broad and unduly burdensome because it seeks information not relevant to the parties' claims or defenses. The Defendant further objects to this Interrogatory to the extent that the information sought includes information from a time period that is not relevant to the claims or defenses at issue in this litigation.

**Response**

Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request statistical information that is publicly available. Without waiving the foregoing objections, the Plaintiff has not demonstrated that the information requested could not have been obtained from another source, *e.g.*, the Department of Justice's website on No Fear Act data (http://www.justice.gov/jmd/eeos/nofear.htm).

Discussion

The interrogatory seeks statistical information about all complaints based on race (not limited to African-Americans) without regard to the nature of the complaint or its disposition for the same excessive time period as the previous interrogatories. The information Plaintiff seeks is publicly available on the Department of Justice's web site at least from 2007 to 2012. The Plaintiff does not explain how the information that they can gather from that source is not sufficient for their purposes, or even how it relates to their claims or the Attorney General's defenses in this case. Far less do they explain what would be added to the case by requiring DEA to comb its files to identify such information for the period prior to 2007, particularly when the Plaintiff's non-selection for the SES and lateral GS-15 positions occurred in October and December 2007, respectively. The motion to compel a further response to this interrogatory should be denied.

**INTERROGATORY NO. 16**: *State in detail all actions YOU have taken to preserve DOCUMENTS related to this matter, and describe the circumstances under which Stephanie R. Smith destroyed her hard-copy date calendar, as described in her declaration dated November 1, 2013, including whether she was made aware of any document preservation notice relating to this case, and whether Ms. Smith's destruction of her hard-copy calendar violated the terms of any existing document preservation notice.*

**Objection**
The Defendant objects to this Interrogatory on the basis that some of the information requested is protected by attorney-client communication or attorney work product privileges.

**Response**
Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request statistical information that is publicly available.[8] Without waiving the foregoing objections, the DEA issued a litigation hold to preserve documents related to this matter. Stephanie Smith described in her declaration the circumstances under which she destroyed her own hard copy date calendar upon

---

[8] The first sentence of this response was included in error. It may be disregarded.

concluding her employment at the DEA in May 2013. *See* Smith Declaration, dated November 1, 2013, ¶ 7.

Discussion

All the information available to the DEA about Ms. Smith's discarding of her calendar when she left DEA's employment is contained in her declaration. The remainder of the interrogatory seeks to require DEA to disclose attorney-client communications. As stated during the parties' telephonic meet and confers and again in Defendant's response to this Interrogatory, the Agency issued a litigation hold to preserve documents related to this matter. The motion to compel a further response to this interrogatory should be denied.

> **INTERROGATORY NO. 18**: *IDENTIFY every person who provided information responsive to these Interrogatories, specifying the Interrogatory or Interrogatories to which each such person provided responsive information.*
>
> **Objection**
> The Defendant objects to this Interrogatory on the basis that the information requested is protected by attorney-client communication or attorney work product privileges.
>
> **Response**
> Pursuant to the meet and confer on January 16, 2014, Defendant understands this Interrogatory to request information regarding the general processes employed by the Defendant or Defendant's counsel in preparing the Responses to Plaintiff's Interrogatories. Without waiving the foregoing objections, the Defendant contacted persons with relevant knowledge and reviewed documents related to this matter.

Discussion

As noted, the responses to the Plaintiff's interrogatories were prepared by counsel, based on information provided at various times by individuals with knowledge of the events or on statements and documents contained in the Report of Investigation. The DEA objected to the disclosure of attorney-client communications, consequently beyond the statements in the Plaintiff's possession contained in the Report of Investigation, and the declarations on file in this case, the Court should not compel further disclosure in response to this Interrogatory.

## **CONCLUSION**

The Plaintiff's Motion to Compel seeks information unrelated to the single promotion decision at issue in this case, or to the decisions not to offer the Plaintiff either position he sought as a lateral transfer. The decisions at issue in this case were made in October and December, 2007. Without offering any justification, the motion seeks discovery of personnel actions for a period of more than a decade, the bulk of which took place after the Plaintiff retired. The decisions were made by a variety of decision-makers, many of whom had no role in the decisions at issue here. The Court should deny the Plaintiff's motion in its entirety.

Dated:  February 24, 2014

Respectfully submitted,

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

*By*: _____/s/_____
R. Joseph Sher
Ayana N. Free
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone:    (703) 299-3747
Fax:            (703) 299-3983
Email: joe.sher@usdoj.gov
*Counsel for the Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 24, 2014, I will file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Bradford Hardin (#76812)
WILMER CUTLER PICKERING HALE AND DORR LLP
1899 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
bradford.hardin@wilmerhale.com
*Counsel for the Plaintiff*

/s/
R. Joseph Sher
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone:    (703) 299-3747
Fax:            (703) 299-3983
Email: joe.sher@usdoj.gov
*Counsel for the Defendant*