IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EDWARD L. GILMORE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ERIC HOLDER, )<br>in his official capacity as )<br>Attorney General of the United States, )<br>)<br>Defendant. )<br>) | Civil Action No. 1:13-cv-789<br>(LMB/IDD) |

Memorandum in Opposition to Plaintiff's Motions to Compel

Introduction

In this case, plaintiff, who at all material times was a GS-15 Supervisory Special Agent employed by the Drug Enforcement Administration ("DEA") alleges that he was not selected for a position in DEA's Senior Executive Service ("SES") because of his race, and denied a lateral transfer to one of two GS-15 positions which he had requested not because of his race, but rather allegedly in retaliation for his seeking EEO counseling regarding the non-selection to the SES. Complaint, Claims I, II[1] and IV. Plaintiff's complaint also alleged that he was constructively discharged, Complaint, Claim III, and that he was also constructively demoted because of his race by his assignment to another GS-15 position upon his request not to remain in his former position under the supervision of the person who had been selected for the SES position he

---

[1] Plaintiff's Claim II is misleadingly denominated a claim for "unlawful discharge." But, like Claim I, it alleges that he was not selected for the new Senior Executive Service position of Deputy Chief Inspector for Security Programs. At best it duplicative of Claim I; it does not appear that the plaintiff contends that he was at any time involuntarily separated from his employment with the DEA.

sought. Complaint, Claim V.[2] The Court dismissed the plaintiff's constructive discharge claim with prejudice; *see* the Court's Order of November 22, 2013.

In his Motion to Compel filed on April 7, 2014, the plaintiff requests an order compelling DEA to produce a witness to provide testimony under Rule 30(b)(6) regarding three topics: DEA's statistical analysis of its work force;[3] DEA's hard-copy document maintenance and retention practices; and DEA's process for identifying, searching for and collecting documents responsive to the plaintiff's discovery requests.

The plaintiff's motions to compel appear to focus solely on the plaintiff's claim that he was denied promotion to the SES when the DEA was authorized to create a new SES level position to supervise the Office of Security Programs. Throughout 2007 and until his retirement, the plaintiff was and remained a GS-15 Supervisory Special Agent; the plaintiff has received all the documents relating to the selections by the Career Board for the two positions he sought, and he has deposed the Special Agent in Charge of the Chicago Division, who recommended to the Career Board that one of three other Special Agents were his recommended candidate for one of the positions, and DEA's former Assistant Administrator for Human Resources, who was the recommending official for the other, and who did not recommend the plaintiff for that position.

---

[2] Plaintiff has admitted that, while he could have remained in the DEA's Office of Security Programs once the new SES Deputy Chief Inspector reported for duty, he advised Chief Inspector Kasson, his immediate supervisor, that he would prefer not to serve in the Office of Secutiry Programs under the newly appointed Deputy Chief Inspector. At the plaintiff's request, Mr. Kasson found another GS-15 position for him within the DEA's Office of Inspections, an organization which encompassed not only the Office of Security Programs, but also the DEA's Office of Inspections and its Office of Professional Responsibility. That position was temporary pending the Career Board's action in finding a permanent position for the plaintiff; however the plaintiff's retirement forestalled any further placement decision.

[3] On A Motion to Compel filed on April 11, 2014, the plaintiff sought an order compelling the DEA to compile a document disclosing the racial composition of its Senior Executive Service annually from 2002-2008. We will respond to that motion in this Opposition as a part of our response to the plaintiff's broader request for statistical information.

He has also deposed DEA Administrator Michele Leonhart, who, as the Deputy Administrator at the time, was the non-voting Chair of the Career Board, and the outgoing Career Board Secretary. He has also deposed then-Chief Inspector Kasson and then-Deputy Administrator Leonhart regarding the DEA's efforts to find him a new position once he advised his supervisor that he did not wish to continue to serve within the Office of Security Programs.

In the following sections we will discuss each of the plaintiff's demands.

## Discussion

1. <u>The Court Should Not Require DEA To Produce Additional Statistical Information</u>

The plaintiff requests the Court to compel DEA to produce a witness who can testify to the following:

> data or reports related to race; data or reports related to employment actions; data or reports related to the EEO process; data or reports related to the composition of the GS-15 and SES level special agent workforce; how the data is collected, stored, and processed; the tools available to create compilations, reports, or to perform statistical analyses with the data; how, when, and why compilations or reports are prepared and to whom they are distributed; and the role, responsibilities, and function of the DEA EEO staff statistician(s).

Memorandum supporting plaintiff's April 7 Motion to Compel at 4. In his Motion to Compel filed on April 11, 2014, plaintiff also requests "data or documents sufficient to show the racial composition of the SES from 2002-2008." Memorandum supporting plaintiff's April 7 Motion to Compel at 2.

There are a number of reasons to deny this request: First and foremost, the plaintiff has not designated an expert on statistics within the time allowed by the Court's December 9, 2013, Rule 16(b) Scheduling Order at ¶6. Discovery is now closed. The Fourth Circuit has pointed out

that "the mere absence of minority employees in upper-level positions does not suffice to prove a prima facie case of discrimination without a comparison to the relevant labor pool." *Carter v. Ball,* 33 F.3d 450, 456-57 (4th Cir. 1994) (*citing and relying on Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 484 (9th Cir.1983) and *Hagans v. Andrus*, 651 F.2d 622, 627 (9th Cir.), *cert. denied*, 454 U.S. 859, (1981) [regarding low percentage of women in high-level positions as "meaningless" without evidence of pool of qualified women applicants]). The Supreme Court has indicated that even in a pattern or practice case, anything greater than two or three standard deviations in racial discrimination cases is suspicious. *Hazelwood School Dist. v. United States*, 433 U.S. 299, 308 n. 14 (1977); *Castaneda v. Partida*, 430 U.S. 482, 496 n. 17 (1977[4] Of course, the plaintiff would require an expert statistician to offer evidence that this threshold has been crossed. Absent expert testimony establishing a foundation that the proposed statistical evidence has some relevance to the plaintiff's claim and is based on appropriate methodology, statistics are not admissible. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 n. 1 (4th Cir.1989). Because plaintiff did not designate an expert on statistics when he had an opportunity to do so, and absent such an expert, any argument plaintiff might make from statistical evidence lacks foundation and the plaintiff's motion should be denied.[5]

Moreover, the plaintiff already has the information he could use to construct any statistical analysis that might be relevant to his claim that he was not selected for the SES

---

[4] The Fourth Circuit has cautioned, however, that "pattern and practice evidence has little, if any relevance in an individual disparate treatment action." *McClosky v. Prince George's County, Md*., 103 F.3d 118 (Table), 1996 WL 726854, at *1 (4th Cir.1996); *see also Warren v. Halstead Industries, Inc*., 613 F.Supp. 499, 506, n. 2 (D.C.N.C.1985) (holding that "statistics are not sufficient to prove pretext in individual disparate treatment cases").
[5] Plaintiff may contend that they can use the DEA's statistician to provide the requisite foundation and statistical analysis supporting his claim. Any such attempt to use a DEA employee as the plaintiff's expert witness is precluded by Office of Personnel Management regulation. *See* 5 C.F.R. §2635.805. The defendant listed DEA's statistician in an abundance of caution in the event that the plaintiff offered statistical evidence despite the lack of timely disclosure of such an expert. Accordingly, that listing offers no support to the plaintiff's effort.

position he sought. In a case, such as this, alleging intentional racial discrimination in promotions, while some statistical information may be relevant, the relevant comparison is between the percentage of minority employees promoted and the percentage of potential minority applicants in the pool from which applicants are selected. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977) (comparing proportion of African–American teachers employed by school district to proportion of qualified African–American teachers in surrounding area).

In the present case, at the time the plaintiff was not selected to the SES, the DEA Administrator was allowed to choose a candidate for promotion to the SES from one of three lists compiled by DEA's HR staff based on applications made during "open seasons" which were then rated and ranked by a panel of DEA SES executives, and provided to the Administrator. *See Segar v. Ashcroft*, 422 F.Supp.2d 117, 157 (D.D.C.2006). In short, the statistical information relevant to the plaintiff's claim is racially identifying information about Administrator Tandy's selections to the SES, and information about the relevant pool from which she selected candidates.[6] The plaintiff has received a list of all Administrator Tandy's SES selections, and copies of the content of the binders which were provided to her which set out the names and summaries of the experiences of the GS-15 Special Agents who applied for SES consideration during open seasons, as well as information supplying the racial identity of each person on each list.

---

[6] To be sure, in one instance, Administrator Tandy selected a candidate who had not been rated and ranked. That instance was fully litigated and resulted in the *Segar* opinion cited above. In another instance, Administrator Tandy selected a candidate for a foreign SES position who had not gone through the "open season" process, but rather had been rated and ranked in a separate process applicable to overseas assignments. The *Segar* court found that selection fully in accord with its order and dismissed the plaintiffs' challenge. *Segar v. Gonzales,* 2007 WL 2007506 (D. D.C. 2007).

The plaintiff nowhere even attempts to explain how data about the composition of the GS-15 Special Agent work force as a whole, regardless of whether agents participated in the SES open season, would relate to his claim that he was not selected for an SES position; since he was a GS-15 Special Agent throughout the time material to this case there is no basis for any claim that the composition of the GS-15 work force has any relevance to this case.

Finally, the plaintiff is a member of the class in the *Segar* litigation pending in the United States District Court for the District of Colombia. Before that court are class-wide allegations of discrimination in promotion to the SES and to the GS-15 level. By a court ordered stipulation, the *Segar* court has precluded class members such as Plaintiff from raising allegations of class-wide discrimination in other courts in pursuit of their individual claims. *See* Exhibit 1 the January 22, 2002 Order of the District of Columbia district court at pp. 5-7, To allow otherwise, would risk inconsistent rulings on the same issues relating to the class. Plaintiff here should not be permitted to turn this individual disparate treatment claim into a pattern and practice claim of intentional discrimination against all African American DEA agents. Moreover, in the Fourth Circuit, a plaintiff cannot pursue a cause of action based solely on a pattern or practice of discrimination, *see Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 759-61 (4th Cir.1998), *vacated on other grounds*, 527 U.S. 1031 (1999); Williams v. Giant Food, Inc. 370 F.3d 423, 429 (4th Cir. 2004.

In short, both because the plaintiff did not designate an appropriate expert, and because had he done so he is in possession of the information needed by such an expert to conduct an analysis relevant to the plaintiff's claim, the plaintiff's motion to compel disclosure of additional

statistical information, or to designate a 30(b)(6) witness on statistical information DEA may collect or prepare, his motions to compel such information should be denied.

> 2. The Court Should Not Require Further Disclosure Regarding DEA's Hard-Copy Document Maintenance and Retention Practices

As discussed during the meet and confer on March 19, 2014, where the DEA has written or memorialized its hard-copy policies and practices, it produced those policies. As a result, DEA has produced over 300 pages of written policies and practices regarding its hard copy document record and retention schedule. DEA opposed producing witnesses to testify or to interpret those written policies in the interest of efficiency, and of avoiding testimony that, inadvertently or otherwise, might be used to contend that a published policy was somehow other than what had been duly adopted.  See Exhibit 2, Defendant's Letter of April 2, 2014.  The plaintiff has also had the opportunity to, and did, inquire of the DEA's present and former Administrators, as well as of the Assistant Administrator of the DEA's HR staff at the relevant time and its HR staff's official in charge of SES personnel as well as the plaintiff's supervisors regarding the document and record practices.  They can compare that testimony to the DEA's published policies and make what arguments they choose.  Any further testimony regarding hard-copy record practices would impose a significant burden on the DEA, and would require DEA to designate an official to read and repeat the testimony already in the plaintiff's possession in order to respond to questions about record-keeping practices.  That would produce no net gain.

In this case, DEA has produced the all documents which contain information considered by the Administrator in making her selection for the new SES position which the plaintiff sought, including notes of the Deputy Administrator's discussions with both the plaintiff's supervisors, neither of whom recommended him for the new position.  In addition DEA produced the

information before the Career Board when it made its selections for the two GS-15 positions which the plaintiff sought. Included in that production were the portions of the recording of that meeting in which the Career Board members discussed the candidates for those positions – material so sensitive that it was produced pursuant to the parties' protective order as "attorneys' Eyes Only." Moreover, at the plaintiff's request, the DEA will shortly produce the portion of the recording of the August, 2005 Career Board meeting at which the plaintiff was selected for the GS-15 Deputy Chief Inspector position, again under that same protective order. DEA also produced emails regarding the performance of the Office of Security Programs while the plaintiff was its Deputy Chief Inspector, and provided the testimony of both the Administrator and the Deputy Administrator regarding their conclusions regarding his stewardship. As noted above DEA has also provided for deposition the plaintiff's former supervisors, and of the former Assistant Administrator in charge of DEA's HR staff, as well as that of the former Special Agent in Charge of the Chicago Division, who explained the basis for their recommendations to the Career Board. Discovery has been more than robust, it has provided the plaintiff with all the documentary evidence that exists relating to the decisions at issue in this case and the testimonial evidence the plaintiff sought.[7]

Moreover, the plaintiff has yet to point to any evidence supporting an assertion that there exists some trove of documentary evidence which has not been searched and from which any responsive documents have not been produced. To be sure, Stephanie Smith, the former DEA EEO Counselor who met with the plaintiff testified that she had not received a document

---

[7] Plaintiff's contention that his production is roughly equal to the defendant's, April 7, 2014 Memorandum at p. 5, is a red herring. The largest single document plaintiff produced was a copy of the Report of Investigation compiled by the investigator contracted by the Marshals Service's EEO staff after the Department of Justice recused DEA's EEO staff (at its request). That document was provided to both parties in the EEO process; its production was unnecessary and gratuitous. That there were relatively few documents generated during the process of filling the positions plaintiff sought is a fact; it says nothing about the defendant's conduct in discovery.

retention notice, and that on her departure from DEA to accept another position, she had destroyed a monthly calendar pad on which she had noted some telephone calls she received. But she also testified that any information found on the pad had first been transferred to a report of her accomplishments she submitted to her supervisor periodically, and that report was in the plaintiff's counsel's hands at her deposition. *See* Deposition of Stephanie Smith, March 26, 2014, at 41:9-19. Exhibit 3. That information relevant to the date that the plaintiff first contacted DEA' EEO staff was preserved is found at p. 78 of Ms. Smith's deposition, at lines 7-10. There, in response to a question by one of plaintiff's attorneys, Ms. Smith testified that a document in the plaintiff's EEO file disclosed that the plaintiff "first met with the EEO counselor on December 11th, 2007. And on December 13th, 2007 he had his initial interview with the EEO Counselor." Exhibit 4. Thus, despite the destruction of her calendar pad, the information it contained was preserved.[8]

Beyond one instance in which no information was lost, plaintiff points to nothing which would support an inference that documents relevant to his claims were not located, or were destroyed. But a plaintiff's speculation that other documents might exist is not a foundation for a motion to compel. "[T]he moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld.*" Susko v. City of Weirton*, 5:09–CV–1, 2011 WL 98557, at *4 (N.D.W.Va. 2011) (*citing Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 252 (M.D.N.C.2010) (finding that "even an informed suspicion that additional non-privileged documents exist ... cannot alone support an order compelling production of

---

[8] The plaintiff confirms that he called the EEO Office for an appointment, and met with the counselor two days later. Deposition of Edward Gilmore, 84:15 – 85:10.

documents")). Plaintiff has not identified even an "informed suspicion" that documents exist which have not been produced or accounted for.

For all these reasons, plaintiff's request for an additional witness on DEA's hard-copy document retention practices should be denied.

    3. The Court Should Not Compel a Witness to Testify About DEA's Search for, Identification of, and Collection of Documents Responsive to Plaintiff's Requests

Despite having received from defense counsel a full description of how DEA searched for and identified documents responsive to his document request, *see* the letter of March 7, 2014, from AUSA Ayana Free to Mr. Butler, referenced in plaintiff's Exhibit I in support of his motion at p. 3, plaintiff now seeks a witness to repeat the content of that letter. Plaintiff has nowhere indicated that they found the methods of search and collection inadequate. Here, the plaintiff has already received the information sought and is instead moving to compel unnecessary testimony. A motion to compel can be denied if the circumstances render compelling an answer to the question "otherwise unnecessary." *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 98 (D. Md. 2012) (citing *Cabana v. Forcier,* 200 F.R.D. 9, 17 (D. Mass. 2001). The Court should not countenance such exaltation of form over substance.

Plaintiff bases his request for this testimony on the unsubstantiated belief that the document production was inadequate. The notion that a document production is insufficient based on a belief that additional documents must exist simply is not enough to grant a motion to compel that would require the producing party to undergo burdensome or costly lengths "in the face of mere accusation to rebut a claim of withholding." *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) (denying motion to compel where moving party had not made a colorable showing that the producing party is purposefully or even

negligently withholding documents). If the moving party has concerns about specific documents, a motion to compel may be unnecessary where it can inquire about the discovery requested during the fact depositions with witnesses who have knowledge in these areas. *See id.*

Conclusion

For all the foregoing reasons, the Court should deny the plaintiff's Motions to Compel filed on April 7 and April 11, 2014.

Dated: April 16, 2014

          Respectfully submitted,

          DANA J. BOENTE
          ACTING UNITED STATES ATTORNEY

*By*:    /s/
          R. Joseph Sher
          Assistant United States Attorney
          Office of the United States Attorney
          Justin W. Williams Building
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Telephone:   (703) 299-3747
          Fax:   (703) 299-3983
          Email: joe.sher@usdoj.gov
          *Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2014, I will file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Bradford Hardin (#76812)<br>
WILMER CUTLER PICKERING HALE AND DORR LLP<br>
1899 Pennsylvania Avenue NW<br>
Washington, DC 20006<br>
Telephone: (202) 663-6000<br>
Facsimile: (202) 663-6363<br>
bradford.hardin@wilmerhale.com<br>
*Counsel for the Plaintiff*

                                          /s/
_____
R. Joseph Sher
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone:     (703) 299-3747
Fax:           (703) 299-3983
Email: joe.sher@usdoj.gov
*Counsel for the Defendant*