Exhibit 3

Page 1

```
 1   IN THE UNITED STATES DISTRICT COURT
 2   FOR THE EASTERN DISTRICT OF VIRGINIA
 3            Alexandria Division
 4   ----------------x
 5   EDWARD L. GILMORE,         :
 6        Plaintiff,            :
 7        v.                    : Civil Action No.
 8   ERIC HOLDER, in his official : 1:13-cv-789
 9   capacity as Attorney General :
10   of the United States,      :
11        Defendant.            :
12   ----------------x
13
14   CONTAINS CONFIDENTIAL ATTORNEYS' EYES ONLY PORTIONS
15
16      Deposition of STEPHANIE RENEE SMITH
17            Alexandria, Virginia
18         Wednesday, March 26, 2014
19              10:13 a.m.
20   Job No.: 55436
21   Pages: 1 - 113
22   Reported By: Lee Bursten, RMR, CRR
```

Page 2

```
 1        Deposition of STEPHANIE RENEE SMITH, held
 2   at the offices of:
 3
 4
 5        UNITED STATES ATTORNEY'S OFFICE
 6        2100 Jamieson Avenue
 7        Alexandria, Virginia 22314
 8        (703) 299-3700
 9
10
11
12
13        Pursuant to Notice, before Lee Bursten,
14   Registered Merit Reporter, Certified Realtime
15   Reporter, and Notary Public in and for the District
16   of Columbia, who officiated in administering the oath
17   to the witness.
```

Page 3

```
 1            A P P E A R A N C E S
 2   ON BEHALF OF PLAINTIFF:
 3      JEFFREY T. HANTSON, ESQUIRE
 4      J. GREGORY BUTLER, ESQUIRE
 5      WILMER CUTLER PICKERING HALE
 6        AND DORR LLP
 7      1875 Pennsylvania Avenue, NW
 8      Washington, DC 20006
 9      (202) 663-6000
10
11   ON BEHALF OF DEFENDANT:
12      AYANA N. FREE, ESQUIRE
13      UNITED STATES ATTORNEY'S OFFICE
14      2100 Jamieson Avenue
15      Alexandria, Virginia 22314
16      (703) 299-3700
17
18   ALSO PRESENT:
19      JASON LAESER, ESQUIRE
20      Drug Enforcement Administration
```

Page 4

```
 1            C O N T E N T S
 2   EXAMINATION OF STEPHANIE RENEE SMITH       PAGE
 3   By Mr. Hantson                    5
 4   By Ms. Free                     102
 5
 6
 7            E X H I B I T S
 8        (Attached to transcript.)
 9   SMITH DEPOSITION EXHIBITS              PAGE
10   Exhibit 1  Edward L. Gilmore, Aggrieved    76
11           Party (AP)
12   Exhibit 2  Accomplishments - October 1,    79
13           2007, through September 31, 2008
14           (Confidential Attorneys' Eyes
15           Only)
16   Exhibit 3  Declaration of Stephanie R.     86
17           Smith
```

Page 37

1 understand the question, you may answer.
2  A  I would find out what they needed. If they
3 were calling for guidance, I would answer whatever
4 question they had as it relates to my duties. If
5 they were interested in entering the process, then I
6 would schedule an appointment for them to come in to
7 see me. That's if I was available to take a case.
8     If I was not available to take a case, then
9 I would have them contact Lynn Coffman to get
10 assigned a counselor, or go on our website.
11 BY MR. HANTSON:
12  Q  Did you provide any counseling during this
13 initial phone call?
14  A  No.
15  Q  Did you make any determination if the
16 contact was timely?
17  A  No.
18  Q  Would you inform the person of any
19 deadlines related to timeliness?
20  A  Only if they ask.
21  Q  You mentioned that if the person was
22 interested in entering the process and you were

Page 38

1 available, that you would schedule an appointment.
2  A  Yes.
3  Q  Approximately how long did it take, how
4 long was it between that phone call and the
5 appointment?
6     MS. FREE: Objection, form. If you
7 understand that question, you may answer.
8  A  I try to schedule it within that same --
9 within that same week, generally within a five-day
10 time frame.
11 BY MR. HANTSON:
12  Q  Were there instances where it took longer
13 than within that five-day period?
14  A  Yes.
15  Q  And what would have caused it to be more
16 than five days?
17  A  If I was going to be on leave or if I was
18 going on travel, or training or something that would
19 take me out of the office.
20  Q  Any other reasons?
21  A  If my workload -- if I'm tied up with doing
22 stuff at work and I cannot -- and I have a deadline,

Page 39

1 then yes.
2  Q  Would you have to coordinate with that
3 person's schedule as well?
4  A  Yes.
5  Q  Sometimes?
6  A  Yes. That was also a factor.
7  Q  And getting back to something you mentioned
8 earlier, if this person called to set up an
9 appointment, would you have considered that initial
10 phone call to be making contact with the EEO
11 counselor?
12     MS. FREE: Objection, form.
13  A  It can be.
14 BY MR. HANTSON:
15  Q  And what factors would lead you to
16 determine that it was making contact?
17  A  If they told me at that time, "I'm ready to
18 enter the process."
19  Q  Now, you had mentioned that you would only
20 schedule an appointment if the person was interested
21 in entering the process.
22     MS. FREE: Objection, characterization of

Page 40

1 testimony.
2  A  No.
3 BY MR. HANTSON:
4  Q  I'm sorry. Please correct me. I was just
5 trying to make sure I understood. Under what
6 circumstances would someone be scheduling an
7 appointment if they weren't interested in entering
8 the process?
9  A  To vent. Which we get a lot of.
10  Q  And God bless you for it.
11  A  Oftentimes, to just know what their rights
12 are, if they had any rights.
13  Q  After scheduling that interview, what
14 happens next?
15  A  After deciding on a date?
16  Q  Yes.
17  A  The person would show up at the time of the
18 interview. But what I always do, I have documents,
19 if they are entering the process and if I know
20 they're entering the process, because oftentimes they
21 will tell you on the phone, you know, if I know that
22 this is going to be a complaint, then I will prepare

Page 41

1 the forms that they would need to sign, forms that
2 have to be signed prior to having the actual
3 interview.
4     The forms put them in the process.
5  Q   And stepping back to the phone call to
6 schedule the interview, would you note the date of
7 that phone call anywhere?
8     MS. FREE: Objection, form.
9  A   I would note on my calendar the date that
10 they want the appointment. That's if they are going
11 to -- if we're going to meet. If someone calls and
12 they're just venting or they're just asking about
13 guidance, I would make a notification that I
14 received, because it's me spending time with them on
15 the phone.
16     And all of that is part of my duties and my
17 accomplishments. So I would record, especially if
18 I've spent a significant amount of time on the phone
19 with them, I would record it on a calendar pad.
20 BY MR. HANTSON:
21  Q   Okay. This calendar pad that you just
22 mentioned, this was a hard copy calendar?

Page 42

1  A   Yes.
2  Q   Was it a daily calendar, a weekly calendar,
3 a monthly calendar?
4  A   Monthly.
5  Q   What would you do with the calendar at the
6 end of the month?
7  A   Flip it over.
8  Q   But you would keep that, the prior month's
9 calendar?
10  A   Yes.
11  Q   For how long would you keep that?
12  A   Until the end of the year.
13  Q   What would you do with the calendar at the
14 end of the year?
15  A   Actually, I would just store it, just hold
16 onto it.
17  Q   Storing that calendar, was that just your
18 personal process, or were there any protocols or
19 procedures in the EEO office about saving that type
20 of information?
21  A   It was my personal process.
22  Q   Were there any procedures in the EEO office

Page 43

1 about storing hard copy or electronic documents?
2     MS. FREE: Objection, compound. Objection,
3 form.
4 BY MR. HANTSON:
5  Q   Let's take it one at a time. Were there
6 any procedures in the EEO office related to saving
7 hard copy documents?
8  A   Hard copy documents that relate to
9 documents in the EEO case, but not stuff that I
10 scribble on a notepad.
11  Q   So documents related to the actual case
12 were saved?
13  A   Yes.
14  Q   And that was according to a set of
15 procedures?
16  A   Yes.
17  Q   You mentioned that there were certain forms
18 you might prepare before the initial interview.
19  A   Yes.
20  Q   Am I right those forms would be the type of
21 documents you would save?
22  A   Yes.

Page 44

1  Q   But your calendar wouldn't necessarily be
2 one of those type of documents that you would have to
3 save?
4  A   No.
5  Q   How about electronic files? Were there any
6 procedures or protocols in place in the EEO office
7 about preserving electronic files?
8     MS. FREE: Objection, form. If you
9 understand the question, you may answer.
10  A   If there was a litigation hold that has
11 been released from chief counsel instructing to
12 preserve files, then yes, that's the process,
13 something we would make sure we -- you know, don't
14 delete emails and, you know, save copies of records.
15     As far as letters and memos, that is a part
16 of a hard file, a complaint file that becomes a part
17 of the investigative report, so that is preserved,
18 that type of information is already preserved.
19 BY MR. HANTSON:
20  Q   So if there was a litigation hold in place,
21 would you preserve any extra hard copy documents that
22 you weren't preserving or that you weren't required