IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EDWARD L. GILMORE, )<br>)<br>  Plaintiff, )<br>)<br>  v. )<br>)<br>ERIC HOLDER, )<br>in his official capacity as )<br>Attorney General of the United States, )<br>)<br>  Defendant. )<br>_____) | Civil Action No. 1:13-cv-789<br>(LMB/IDD) |

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE
THE TESTIMONY OF DEFENDANT'S DAMAGES EXPERT

Introduction

The plaintiff seeks to exclude the testimony of the defendant's expert on damages, Joel Lesch, asserting two bases: First, the plaintiff argues that he was disclosed only after the time for disclosure of experts in the parties Joint Discovery Plan. Second, the plaintiff contends that his methodology has been rejected by some courts and should not be admitted for that reason as well. Plaintiff's Memorandum in Support of His Motion to Exclude ("Pls Mem") at 1-2. Of course, the question of back pay (if any) is to be determined by the Court, not the jury, as back pay in Title VII cases is an equitable remedy. *See* 42 U.S.C. § 2000e-5(g); *see also Hylind v. Xerox Corp,.* 481 Fed.Appx. 819, 824 (4th Cir, 2012); *Brinkley-Obu v. Hughes Training, Inc.* 36 F.3d 336, 356 (4th Cir, 1996) (*citing and relying on Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763–64 (1976)); *Smith v. Hampton Training Sch. for Nurses*, 360 F.2d 577, 581 n. 8 (4th Cir.1966). Consequently, the issue is not whether the testimony of Mr. Lesch (or of the

plaintiff's expert, Mr. Ackel) would be admissible before the jury, but rather, whether it would assist the Court in rendering an equitable decision, should that become necessary.

As we will show in the following sections, plaintiff's arguments miss the mark because they ignore the context of this case. As to his timeliness argument, the plaintiff fails to acknowledge that the Court expressly permitted the plaintiff to amend his expert report after the expert report disclosure period specified in the parties Joint Discovery Plan had ended, and permitted the defendant to respond. Mr. Lesch's criticism of the plaintiff's amended report included his criticism of the plaintiff's original expert report because the defects in the amended report were the result of the methodology the plaintiff's expert had used in his original report and incorporated as the basis of the amended version. As to the plaintiff's claim that Mr. Lesch's methodology has been disapproved, his approach follows the Fourth Circuit's description of how back pay awards should be determined. Moreover, his criticism of the plaintiff's treatment of Mr. Gilmore's claimed loss of retirement benefits is based on considerations specific to this case, and has been directly approved by the Fourth Circuit.

Discussion

Plaintiff has abandoned any claim based on alleged retaliation or on his assignment to the Office of Professional Responsibility after the agent selected to be the new SES Deputy Chief Inspector for Security Programs reported to Headquarters from her former assignment as an ASAC in the Philadelphia Division. Accordingly, the only issue remaining before the Court in this case is whether the plaintiff was the victim of unlawful race discrimination when he was not selected for the SES position as Deputy Chief Inspector for Security Programs. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at p. 1 n. 1. Accordingly, the portions of both Mr. Lesch's report and Mr. Ackel's which deal with damages for alleged retaliation are

no longer relevant to this case. For that reason, we will not offer either those portions of Ms. Lesch's Report or any testimony on them should the Court wish to hear testimony on the back pay issue, and we will object to the plaintiff's offer of their expert's report or testimony on those issues should they offer such. *See* Rule 402 of the Federal Rules of Evidence.

    1)    The Defendant's Expert Report Is Not Untimely Nor Does It Exceed The Scope of the Plaintiff's Supplemental Report

As the plaintiff notes, Pls Mem at 3, on April 17, 2014 the parties jointly requested the Court to allow expert reports to be supplemented until April 15, 2014, and responses to supplemental expert reports to be submitted by April 22, 2014. By Order of May 1, 2014 the Court granted the parties request *nunc pro tunc*. The plaintiff does not contest that the defendant's response to the plaintiff's expert report was filed within the time allowed in the amended discovery plan. Instead, the plaintiff complains about the content of the defendant's rebuttal report, specifically that it included a critique which laid bare the defects of the approach of the plaintiff's expert to his estimate of the plaintiff's damages that underlay both his original and supplemental reports. Pls Mem at 2-4.

Plaintiff's argument ignores both his counsel's admission that the supplement was not intended to replace the original report (though the plaintiff entirely abandoned his original report's "high" scenario, which his expert admitted in his deposition was based on the highest possible salary that could be paid to a member of the DEA's SES, without regard to what the plaintiff might actually have been paid[1]), *see* the plaintiff's exhibit D, Dckt 114-4, Mr. Hantson's

---

[1] *See* Mr. Ackel's original report, plaintiff's Exhibit A, at p. 4 (in computing the high value "we used the high value in the Office of Personnel Management's ("OPM") SES Salary Tables.")). The "low" scenario plaintiff employed to estimate plaintiff's economic loss suffered from a basic flaw – in using Ms. Roach's 2008 SES salary as a benchmark for Mr. Gilmore's hypothetical salary as a member of the SES in 2007, it may have exceeded the limit payable to SES members

email of April 16, 2014. Plaintiff's Supplement, Exhibit C to his Motion to Exclude, does not itself describe the methodology by which his expert reached the conclusions set out in the report, rather plaintiff's expert notes at p. 1 that his supplemental report used "the same methodology prescribed in the 'Denial of Promotion Claim' damages calculation outlined in paragraphs 14-21 of [the plaintiff's] original report." Since to be a proper expert report under Rule 26(a)(2)(B)(1) the Supplement must include not only a statement of the expert's conclusions, but also "the basis and reasons" for those conclusions, this must be treated as an incorporation by reference.[2] Plaintiff nowhere explains why a criticism of the methodology by which the supplemental reports conclusions were reached should be out of bounds simply because the supplemental report adopted the methodology of a prior report. No such limitation appeared in the parties' request to the Court, nor did it appear in the Court's May 1, 2014 Order.[3]

Accordingly, because Mr. Lesch's report was timely under the parties stipulation as approved by the Court, the plaintiff's motion to exclude Mr. Lesch's report, and his testimony as a witness in the event the Court requires evidence on back pay, should be denied.

---

by law in 2007. These flaws (and other flaws revealed in Mr. Ackel's deposition) rendered the plaintiff's expert report vulnerable without need for a competing expert. It was not until the plaintiff's supplemental report that it became appropriate for the defendant to come forward with his own expert report.

[2] If plaintiff now contends that his supplemental report does not incorporate by reference the basis and reasons set out in his initial report, and in Mr. Ackel's deposition, it should be stricken as in violation of Rule 26(a)(2)(B)(i).

[3] Plaintiff's new-found complaint that Mr. Lesch's report is based in part on information not provided to them in discovery should be disregarded because at no point after receipt of the report did the plaintiff request the agreement of the defendant to allow them focused discovery about such information, nor, even in the brief meet-and confer telephone conversation that took place late in the afternoon of the day the plaintiff's motion was filed did the plaintiff request the defendant's agreement to any further discovery. Indeedhe did not even request an agreement that the plaintiff be allowed to depose Mr. Lesch, so the Court should disregard that alternative request. See Local Civil Rules 7(E) and 37(E).

2) Mr. Lesch's Methodology Was Appropriate For This Case

The plaintiff contends, Memorandum at 7-8, that Mr. Lesch's testimony should not be permitted at trial[4] because he claims Mr. Lesch used a flawed methodology – allegedly that he used an approach that totaled Mr. Gilmore's earnings over the entire recovery period and compared them to what he might have earned had he been selected for the SES position. Notably absent from his criticism of Mr. Lesch's methodology is any citation to the Fourth Circuit's approach to back pay claims. The Fourth Circuit explained its approach to back pay claims in *United Transportation Union Local 974 v. Norfolk & Western R. Co.*, 532 F.2d 336, 341 (4th Cir. 1976)

> The objective of an award of back pay is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co.* [*v. Moody*], 422 U.S. [405] at 418 [1975], (parallel citation omitted). In the case at bar, therefore, the district court must calculate the economic consequences of hypothetical employment at the CT Yard, compare it with the economic consequences of actual employment at the Barney Yard and, if the economic consequences of hypothetical employment are larger than the economic consequences of actual employment, award the difference to the affected class member.

This is the methodology that the plaintiff claims Mr. Lesch erroneously employed, but the plaintiff nowhere refers to the Fourth Circuit's decision, or shows that it has been overruled.

Mr. Gilmore claims that this methodology is foreclosed by a line of cases which, he claims, calculate back pay damages based on a periodic mitigation method. Pls Mem at 7-8. While plaintiff refers to the 10th Circuit's unpublished decision in *Godinet v. Management and*

---

[4] Because the question of back pay in a Title VII case is for the Court, not the jury, *see* pp. 1-2 above, the Court should postpone any submissions, whether testimonial or documentary, on that question until after trial, if any. In light of the result of a trial, the Court can determine whether any such submissions are required, and, if they are, in what form such submissions should be made.

*Training Corp.*, 56 Fed.Appx. 865 (10th Cir. 2003), he passes over in silence that Court's observation that

> 42 U.S.C.A. § 2000e-5(g) endorses neither the periodic nor aggregate approach, providing only that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." The goal of the statute is to make the plaintiff whole.

56 Fed.Appx. at 871 n.2. The doctrine of mitigation of damages exists "to prevent the wage earner from obtaining a windfall, i.e. a double recovery." *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005–06 (3d Cir. 1988). A number of courts have agreed with the Third Circuit that an employee's back pay award should be offset by the employee's aggregate economic gain. *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439 (7th Cir. 1992) (fact-finders should deduct actual earnings from the lost compensation award); *Ford v. Rigidply Rafters, Inc.*, 984 F.Supp. 386, 389 (D.Md.1997) ( in a title VII case "[t]o make the plaintiff whole, the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the period of termination to judgment, and the actual earnings during that period.").

Moreover, none of the cases the plaintiff relies on involve payments from the defendant employer as is the issue with respect to the claim regarding plaintiff's retirement income in this case; rather in each case, the employee had secured alternate employment from another employer at higher pay, and the defendant was seeking to use that additional pay to reduce the amount of back pay owed by the defendant. In *Hartman v. Duffey*, 8 F.Supp.2d 1 (D.D.C. 1998), for example, the employing agency was the United States Information Agency. Similarly in *Schroer v. Billington*, 2009 WL 1543686 (D.D.C. 2009), the defendant was the Congressional Research

Service of the Library of Congress. In both cases, Judge Robertson held that the periodic method was the proper approach in order to prevent the employer from benefiting from the employee's diligence in mitigating damages by finding work with a different employer.

In this case, by contrast, Mr. Lesch's primary criticism of the plaintiff's expert report is based on the fact that the plaintiff, by retiring when he did – to accept the Chief of Police position in Calumet, IL. – actually received more from his pension than he would have received had he served in an SES position until mandatory retirement. Using plaintiff's expert's numbers for the denial of promotion claim, Gilmore received $164,998 in retirement payments during the period he claims he would have been working at DEA had he been promoted (*see* table 8.0 of the plaintiff's Supplemental Report). In his supplemental report's low scenario[5], Mr. Ackel estimates the present value of Mr. Gilmore's economic loss as $154,755 (table 9.0), which is what is claimed as damages. Plaintiff's own report discloses that, because Mr. Gilmore retired when he did, the present value of Mr. Gilmore's actual pension payout is *greater* than the present value of the pension he would have received had he retired as a member of the SES at his mandatory retirement date in 2011.

In *Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir.1985), the Fourth Circuit, citing the equitable nature of a back pay award, offset benefits from a back pay award in an Age Discrimination in Employment Act case. The *Fariss* Court noted that "if an employer's payment would not have been made had the employee continued working, it exceeds the damages necessary to make the plaintiff whole." *Id*. at 966 (*citing Cline v. Roadway Express, Inc.*, 689 F.2d 481, 490 (4th Cir.1982)). In other words, in the absence of a benefits offset, "plaintiff

---

[5] As noted, the plaintiff has abandoned Mr. Ackel's "high" scenario.

would enjoy the rewards from the employer both of working and not working." *Fariss*, 769 F.2d at 967.

The Fourth Circuit is not alone in carefully enforcing Title VII's goal to make a victim of discrimination or retaliation whole, but not better off than he would have been but for the unlawful employment action. *See* 42 U.S.C. § 1981a(b)(2).[6] *See, e.g., Smith v. OPM*, 778 F.2d 258, 263 (5th Cir. 1985) (court upheld offset to back pay based on plaintiff's receipt of disability benefits), *cert. denied*, 476 U.S. 1105 (1986); *McLean v. Runyon*, 222 F.3d 1150, 1156 (9th Cir. 2000) (because agency pays FECA benefits, collateral source rule does not apply; offset to back pay award upheld); cf. *Lussier v. Runyon*, 50 F.3d 1103, 1111-12 (1st Cir. 1995) (upholding reduction to front pay award by amount paid in retirement benefits by OPM and increased disability benefits by the VA), *cert. denied*, 516 U.S. 815 (1995).

In this case, as in *Fariss*, equitable principles require an appropriate offset to ensure that plaintiff is only made whole and is not awarded a windfall. Contrary to the plaintiff's claim, Mr. Lesch's methodology gives effect to the Fourth Circuit's caution in *Farris* to avoid double recovery, while following the Fourth Circuit's description of how to calculate a back pay award in *United Transportation Union Local 974* is not contrary to the law and does further the goals of Title VII – to compensate the a victim of discrimination while at the same time avoiding unjust enrichment or amount to the punitive damages unavailable against the federal government. Accordingly, the plaintiff's criticism of Mr. Lesch's methodology is without merit and his motion should be denied for that reason as well.

/ / /

---

[6] Such a double recovery also is essentially punitive and, as such, is prohibited with respect to Title VII claims against the federal government. 42 U.S.C. § 1981a(b)(1).

Conclusion

For all the foregoing reasons, plaintiff's motion to exclude should be denied.

Dated: May 9, 2014

          Respectfully submitted,

          DANA J. BOENTE
          UNITED STATES ATTORNEY

*By*:      /s/
          R. Joseph Sher
          Ayana N. Free
          Assistant United States Attorneys
          Office of the United States Attorney
          Justin W. Williams Building
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Telephone: (703) 299-3747
          Fax: (703) 299-3983
          Email: joe.sher@usdoj.gov
          *Counsel for the Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 9, 2014, I will file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Bradford Hardin (#76812)
WILMER CUTLER PICKERING HALE AND DORR LLP
1899 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
bradford.hardin@wilmerhale.com
*Counsel for the Plaintiff*

/s/
R. Joseph Sher
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3747
Fax: (703) 299-3983
Email: joe.sher@usdoj.gov
*Counsel for the Defendant*