**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| EDWARD L. GILMORE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) <br>ERIC HOLDER, )<br>in his official capacity as )<br>Attorney General of the United States, )<br>)<br>Defendant. )<br>) | Civil Action No. 1:13-cv-789 (LMB/IDD) |

**PLAINTIFF EDWARD L. GILMORE'S REPLY IN SUPPORT OF HIS MOTION FOR
SUMMARY JUDGMENT THAT HE EXHAUSTED HIS
ADMINISTRATIVE REMEDIES AS REQUIRED BY 29 C.F.R. § 1614.105(a)**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I.   MR. GILMORE'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.............. 1

  A.  There Is No Dispute That Mr. Gilmore First Contacted The EEO Office Sometime Prior To The December 11, 2007 Meeting (Statement of Material Facts Not In Dispute at ¶ 5) ........................................................................................ 2

  B.  The DEA Has No Evidentiary Support To Dispute That Ms. Smith Completed Paperwork Describing Mr. Gilmore's Claim Based On Information She Learned During Their Initial Telephone Conversation (Statement of Material Facts Not In Dispute at ¶ 6) ........................................................................................ 4

  C.  The DEA Cannot Dispute The Plain Text Of The EEO Counseling Report (Statement of Material Facts Not In Dispute at ¶ 7) ............................................. 5

II.  THE DEA'S STATEMENT OF ADDITIONAL FACTS IS IMMATERIAL.................... 5

III. ARGUMENT ........................................................................................................................ 8

  A.  Summary Judgment On the DEA's Untimeliness Defense Is A Proper Sanction For The DEA's Failure To Preserve Ms. Smith's Detailed Appointment Schedule 8

    1. Ms. Smith's Detailed Appointment Schedule Likely Contained Evidence Critical To The DEA's Untimeliness Defense ............................................. 8

    2. Ms. Smith's "List Of Accomplishments" Does Not Capture All Of The Information On Her Detailed Appointment Schedule ............................... 12

    3. "Bad Faith" Is Not An Element of Spoliation ........................................... 13

  B.  The DEA Fails To Address Mr. Gilmore's Right To An Extension Of The 45-Day Time Limit Under § 1614.105(a)(2) ...................................................................... 13

CONCLUSION .......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*All Computers, Inc. v. Intel Corporation*,
  No. 1:04-cv-00586, 2005 WL 4904818 (E.D. Va. Feb. 9, 2005) ..............................1

*Craig v. Colonial Penn Insurance Company*,
  335 F. Supp. 2d 296 (D. Conn. 2004)..........................................................................4

*Dimitrelos v. Chertoff*,
  EEOC Dec. 01A54843, 2005 WL 3090854 (Nov. 10, 2005)....................................14

*E.I. du Pont de Nemours & Company v. Kolon Industries, Inc.*,
  803 F. Supp. 2d 469 (E.D. Va. 2011) .......................................................................12

*Trigon Insurance Company v. United States*,
  204 F.R.D. 277 (E.D. Va. 2001) ...............................................................................13

*Vodusek v. Bayliner Marine Corporation*,
  71 F.3d 148 (4th Cir. 1995) ......................................................................................13

**REGULATIONS**

29 C.F.R. § 1614.105(a)....................................................................................8, 9, 13, 14

29 C.F.R. § 1614.604(d) ...............................................................................................9

In his Motion for Summary Judgment, Plaintiff Edward Gilmore ("Mr. Gilmore" or "Plaintiff") established two separate bases upon which he is entitled to summary judgment on defendant's ("Defendant's" or "DEA's") untimeliness defense:

> (1) the DEA failed to preserve EEO Counselor Stephanie Smith's detailed appointment schedule[1]—the only documentary evidence that could prove Mr. Gilmore initiated contact with an EEO counselor within 45 days of his denial of promotion; and
>
> (2) Mr. Gilmore is entitled to an extension of the 45-day time limit for initiating contact with an EEO counselor because he was unaware that he had been discriminated against on the date he was informed of the denial of promotion.

The DEA fails to establish that any genuine issue of material fact remains with respect to either basis for summary judgment. It misstates the law and the evidentiary record in an effort to avoid sanctions for spoliation. And, it ignores Mr. Gilmore's request for an extension of the 45-day time limit. Therefore, the Court should enter summary judgment in favor of Mr. Gilmore.

**I.     MR. GILMORE'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

In its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, the DEA purportedly disputes three of the fourteen facts laid out by Mr. Gilmore as undisputed. (Dkt. No. 112 at 3-4 (¶¶ 5-7) ((hereinafter, "Opposition").) However, a review of the DEA's bases for disputing these facts shows that the DEA either (1) does not dispute the fact at all, or (2) disputes only a non-material aspect of that fact. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; *the requirement is that there be no genuine issue of material fact*." *All Computers, Inc. v. Intel Corp.*, No. 1:04-cv-00586, 2005 WL 4904818, at *12 (E.D. Va. Feb. 9, 2005)

---

[1] Mr. Gilmore characterizes Ms. Smith's "detailed appointment schedule" as she described it in her declaration submitted in this case. (Dkt. No. 27-2 at ¶ 7.)

(emphasis added).  Because the DEA raises no genuine dispute as to a material fact, the Court should grant Mr. Gilmore's "properly supported motion for summary judgment."

> A.  **There Is No Dispute That Mr. Gilmore First Contacted The EEO Office Sometime Prior To The December 11, 2007 Meeting (Statement of Material Facts Not In Dispute at ¶ 5)**

The DEA purports to dispute that "Mr. Gilmore first contacted the EEO office sometime prior to the December 1[1], 2007 meeting"[2] by alleging that "Mr. Gilmore's first alleged material contact" with the EEO office occurred on December 11, 2007.  (Opposition at 3.)  However, the DEA mistakes Mr. Gilmore's initial meeting with Mr. Allen on December 11, 2007 for the date he initiated contact with an EEO counselor.  It is undisputed that Mr. Gilmore contacted EEO Counselor Stephanie Smith prior to December 11. (ELG00001347-48 at ¶ 5 (Exh. A) ("I scheduled an appointment with the EEOC counselor by telephone.  Although I do not recall the exact date, this was at least 5 or 10 days before my meeting with the EEOC Counselor on December 13, 2007."); Dep. of Edward Gilmore at 83:15-84:10 (Exh. B) (testifying that he called the EEO office at least "five to seven days" before the first available appointment); Dep. of Stephanie Smith at 74:8-12 (Exh. C) (testifying that Mr. Gilmore contacted her by either phone or e-mail "prior to him just showing up").)

While Mr. Gilmore did testify during his deposition that he "asked for an appointment to see an EEO Counselor" during that earlier call, (Dep. of Edward Gilmore at 83:15-22 (Exh. B)), he never testified that this simple request was the full extent of the conversation.  In fact, once Mr. Gilmore testified that he "asked for an appointment to see an EEO Counselor" during the call, counsel for the DEA simply moved on to the details of Mr. Gilmore's in-person meeting with Mr. Allen, failing to probe as to the contents of that initial telephone contact.  (*See id.* at

---

[2] In its Opposition, the DEA misstates paragraph 5 of Mr. Gilmore's Statement of Material Facts Not in Dispute.  The statement correctly reads:  "Mr. Gilmore first contacted the EEO office sometime prior to the December *11*, 2007 meeting."  (Dkt. No. 97 at 4 (emphasis added).)

83:23-85:7.) More importantly, counsel elicited no additional testimony concerning Mr. Gilmore's telephone conversation with Ms. Smith. If the DEA sought to establish that nothing further was discussed during the call, it was the DEA's responsibility to develop that record. Because it did not, the DEA has no evidentiary basis for its contention that Mr. Gilmore failed to initiate contact with an EEO counselor at that time.

Despite the DEA's attempt to avoid any details concerning this early contact, Ms. Smith's later deposition testimony establishes that Mr. Gilmore did, indeed, initiate contact with an EEO counselor prior to December 11, 2007. Ms. Smith testified that she completed the paperwork for Mr. Gilmore's initial interview in advance of the December 13 interview. (Dep. of Stephanie Smith at 74:16-19, 89:17-21 (Exh. C).) This paperwork included an "Alternative Dispute Resolution (ADR) Election Form," (*id.* at 87:16-89:16), which describes Mr. Gilmore's discrimination claim ("Non-promotion to the SES level since 2003, and being rotated out of his current position which has been upgraded to the SES level") and the basis of the discrimination ("Race (African American) . . ."). (Decl. of Stephanie R. Smith at p. 7 (Exh. D).) The fact that Ms. Smith was able to complete this paperwork based on her prior conversation with Mr. Gilmore makes clear that, at a minimum, Mr. Gilmore had "exhibit[ed] an intent to begin the EEO process" and "allege[d] that an incident in question is based on race." (Opposition at 12). There is thus no genuine dispute that Mr. Gilmore's pre-December 11 telephone conversation with Ms. Smith—not the in-person meeting with Mr. Allen that occurred on December 11— constitutes his initiation of contact with an EEO counselor.

### B. The DEA Has No Evidentiary Support To Dispute That Ms. Smith Completed Paperwork Describing Mr. Gilmore's Claim Based On Information She Learned During Their Initial Telephone Conversation (Statement of Material Facts Not In Dispute at ¶ 6)

The DEA purportedly disputes that Ms. Smith completed the paperwork for Mr. Gilmore's December 13, 2007 interview based on information she learned during their prior telephone conversation. (Opposition at 3-4.) However, the DEA does not dispute that Ms. Smith completed the paperwork for Mr. Gilmore's December 13 interview in advance of the interview. (*See* Opposition at 4 ("Prior to his December 13, 2007 appointment, Gilmore provided the information which was then transferred to his Alternative Dispute Resolution (ADR) Election Form.").) Therefore, the only potential dispute is how Ms. Smith learned the information she included on the paperwork.

However, no such dispute exists in the evidentiary record. Both Mr. Gilmore and Ms. Smith testified that Mr. Gilmore contacted the EEO office to schedule an appointment prior to their December 13, 2007 meeting. (Dep. of Edward Gilmore at 83:15-84:10 (Exh. B); Dep. of Stephanie Smith at 74:8-12 (Exh. C).) While Mr. Gilmore could not remember the exact individual he contacted (Dep. of Edward Gilmore at 83:18-19 (Exh. B)), Ms. Smith testified that Mr. Gilmore contacted her (Dep. of Stephanie Smith at 74:8-12 (Exh. C)). Similarly, while Ms. Smith could not remember whether the initial contact was by telephone or e-mail (*id.*), Mr. Gilmore testified that his initial contact was by telephone (Dep. of Edward Gilmore at 83:15-17 (Exh. B)). Together, Mr. Gilmore's testimony and Ms. Smith's testimony establish an evidentiary record that Mr. Gilmore spoke with Ms. Smith via telephone prior to the December 13, 2007 interview. Their individual failures to recall particular details of a conversation over six-years-old is not surprising and, importantly, does not create a genuine issue of material fact. *See Craig v. Colonial Penn Ins. Co.*, 335 F. Supp. 2d 296, 305 (D. Conn. 2004) (finding that "a

witness's non-denial does not create a genuine issue of material fact when the witness has testified to a lack of memory and no affirmative evidence has been introduced").

### C. The DEA Cannot Dispute The Plain Text Of The EEO Counseling Report (Statement of Material Facts Not In Dispute at ¶ 7)

The DEA purports to dispute that the March 11, 2008 EEO Counseling Report related to Mr. Gilmore's claim states:

> If complaint appears to be untimely, what explanation is offered by Complainant to explain why contact was not made within the statutory 45 (forty-five)-day requirement? N/A

However, the DEA's introduction of superfluous facts—who prepared the report, additional information in the report, and Ms. Smith's involvement in generating the report (*see* Opposition at 4)—in no way places in dispute what the report states on its face.

## II. THE DEA'S STATEMENT OF ADDITIONAL FACTS IS IMMATERIAL

The DEA's Statement of Additional Material Facts Which Are Not in Dispute ("SOAF") is not material to the motion and does not identify a genuine dispute of material fact.

> 15. Gilmore testified that he does not remember exactly when he learned that Ms. Roach was placed on the Qualified List or from whom. However, he recalls that the conversation about her qualifications "probably happened" after he learned that [the] Career Board did not select him for either the ASAC Chicago or Executive Secretary positions. Gilmore recalls that at the time of the conversation he "was waiting for the outcome of the Career Board announcements for the other jobs [he] applied for."

**Mr. Gilmore's Response:** The statement in paragraph 15 of the DEA's SOAF is neither accurate in view of the evidence, nor material to resolution of Mr. Gilmore's summary judgment motion. Mr. Gilmore learned that Ms. Roach was on the Qualified List prior to the December 12, 2007 Career Board meeting at which the Career Board did not select Mr. Gilmore for the ASAC Chicago or Executive Secretary positions. During the administrative proceeding, Mr. Gilmore testified that "[a]t some point after I was notified that I had been passed over in favor of

- 5 -

Ms. Roach, *but before I scheduled my appointment with the EEOC counselor*, I heard a rumor that Ms. Roach had not been on the best-qualified list for an SES position." (ELG00001347-48 at ¶ 3 (Exh. A) (emphasis added).) Mr. Gilmore first met with an EEO counselor on December 11, 2007, one day prior to the Career Board meeting. (*See* ELG00000297-98 at ELG00000297 (Exh. E).) He called to schedule this appointment sometime prior to December 11. (ELG00001347-48 at ¶ 5 (Exh. A); Dep. of Edward Gilmore at 83:15-84:10 (Exh. B).) While Mr. Gilmore does not remember the exact date that he learned Ms. Roach was on the Qualified List (Dep. of Edward Gilmore at 89:13-90:9 (Exh. B)), that date was prior to the December 12, 2007 Career Board meeting. Accordingly, paragraph 15 of the DEA's SOAF does not identify a genuine dispute of material fact that precludes summary judgment.

> 16. The Career Board met on December 12, 2007 to vote on candidates for numerous GS-14 and GS-15 positions, including the ASAC Chicago or Executive Secretary to which Gilmore applied. The results of those selections were made via cable afterward.

**Mr. Gilmore's Response:** This statement is not material to Mr. Gilmore's motion for summary judgment. As discussed above, the evidence conclusively establishes that Mr. Gilmore initiated contact with an EEO counselor prior to the December 12, 2007 Career Board meeting.

> 17. Prior to his first meeting with a member of the DEA's EEO Staff, Mr. Gilmore telephoned for an appointment. Neither Mr. Gilmore nor Ms. Smith testified that the EEO staff member Mr. Gilmore initially spoke with on the telephone call requesting an appointment was Ms. Smith. He testified that he met with Oliver Allen, the DEA's EEO Officer on December 11, 2007, at which time he described his grievance as having not been selected for the SES because of his race. Mr. Allen assigned Mr. Gilmore to another EEO counselor, and two days later, he met with Ms. Smith. Ms. Smith met with Mr. Gilmore twice, once for his EEO counseling session on December 13, 2007, and a second time after that date simply to give her a souvenir from his trip to Chicago—Garrett's popcorn.

**Mr. Gilmore's Response:** Paragraph 17 of the DEA's SOAF is, in part, inaccurate in view of the evidence in the record. As detailed above (*see supra* Sec. I.B), Mr. Gilmore's testimony and Ms. Smith's testimony establish an evidentiary record that Mr. Gilmore spoke with Ms. Smith

- 6 -

via telephone prior to the December 13, 2007 initial interview. Accordingly, paragraph 17 of the DEA's SOAF does not identify a genuine dispute of material fact that precludes summary judgment.

> 18. If contacted by a person seeking EEO counseling, and that person sought an appointment, Ms. Smith would note the appointment date on her desk calendar, not the date of the telephone call requesting an appointment.

**Mr. Gilmore's Response:** Paragraph 18 of the DEA's SOAF is incomplete. Ms. Smith testified that she *would* record on her detailed appointment schedule any EEO-related conversation that involved "a significant amount of time on the phone," in addition to appointment dates. (Dep. of Stephanie Smith at 41:5-19 (Exh. C) ("So I would record, especially if I've spent a significant amount of time on the phone with them, I would record it on a calendar pad.").) And, as discussed above (*see supra* at Sec. I.B), there is no genuine dispute that Ms. Smith completed paperwork describing Mr. Gilmore's claim based on their initial telephone conversation. Accordingly, paragraph 18 of the DEA's SOAF does not identify a genuine dispute of material fact that precludes summary judgment.

> 19. At the end of each year, Ms. Smith prepared a List of Accomplishments for her supervisor's information during the annual rating process. Ms. Smith prepares [sic] the document by transferring the information from her desk calendar into list form. The List of Accomplishments identifies her counseling sessions for the rating season by date and indicates the type of contact. Where individuals have had substantive discussions prior to counseling, that is so indicated as "Contact and Counseling" in the accomplishments document. Ms. Smith's list of accomplishments only shows her having a "Counseling" meeting with Mr. Gilmore on December 13, 2007.

**Mr. Gilmore's Response:** The statement in paragraph 19 of the DEA's SOAF is neither accurate in view of the evidence, nor material to resolution of Mr. Gilmore's summary judgment motion. Ms. Smith testified that she used her "notepad" to create her List of Accomplishments. (Dep. of Stephanie Smith at 105:20-106:12 (Exh. C).) It is unclear if the "notepad" Ms. Smith referred to during her deposition is the same as the "detailed appointment schedule" she

referenced in her earlier declaration. (Decl. of Stephanie R. Smith at ¶ 7 (Exh. D).) In any event, Ms. Smith's list of accomplishments does "[n]ot hardly" represent all the calls she received as an EEO counselor. (Dep. of Stephanie Smith at 84:22-85:2 (Exh. C).) Accordingly, Ms. Smith's List of Accomplishments is not relevant to whether summary judgment that Mr. Gilmore initiated the administrative process within the time period prescribed by 29 C.F.R. § 1614.105(a) is an appropriate sanction for the DEA's spoliation of evidence—namely, Ms. Smith's detailed appointment schedule.

### III. ARGUMENT

#### A. Summary Judgment On the DEA's Untimeliness Defense Is A Proper Sanction For The DEA's Failure To Preserve Ms. Smith's Detailed Appointment Schedule

The DEA does not dispute that (1) it was under an obligation to preserve relevant documents beginning March 24, 2008; (2) it failed to issue any litigation hold until September 2010 and never issued a litigation hold to Ms. Smith; and (3) as a result, Ms. Smith destroyed her detailed appointment schedule in May 2013. Because Ms. Smith's detailed appointment schedule likely included key evidence related to the DEA's timeliness defense, the Court should grant Mr. Gilmore's motion for summary judgment.

##### 1. Ms. Smith's Detailed Appointment Schedule Likely Contained Evidence Critical To The DEA's Untimeliness Defense

In an effort to avoid sanctions for its spoliation of evidence, the DEA argues that no relevant evidence was destroyed because: (1) Mr. Gilmore did not contact Ms. Smith within 45 days of learning that he had been passed over for promotion to the SES; (2) Mr. Gilmore's early-December telephone conversation with Ms. Smith did not initiate material contact with an EEO counselor under § 1614.105(a)(1); and (3) Ms. Smith did not record her telephone conversation with Mr. Gilmore on her detailed appointment schedule. Each of the DEA's arguments fail.

First, evidence from the administrative record establishes that Mr. Gilmore contacted the DEA's EEO office by telephone as early as December 3, 2007—the purported deadline to initiate contact with an EEO counselor under § 1614.105(a)(1).[3] (ELG00001347-48 at ¶ 5 (Exh. A) ("I scheduled an appointment with the EEOC counselor by telephone. Although I do not recall the exact date, this was at least 5 or 10 days before my meeting with the EEOC counselor on December 13, 2007.").) Discovery in this case supports that evidence. For example, during his deposition, Mr. Gilmore estimated that he contacted the EEO office by telephone seven to nine days prior to his initial interview with Ms. Smith. He testified as follows:

> Q. At some point, you made a phone call, is that right, to the EEO office?
> A. Yes.
> Q. Who'd you speak to?
> A. I don't recall specifically who I spoke to.
> Q. What'd you say?
> A. I asked for an appointment to see an EEO counselor.
> Q. Did you receive an appointment?
> A. I think I did, yes.
> Q. How much time between the telephone call and the appointment?
> A. There was one point where I was told there was [sic] no appointments available for five to seven days, and then there was another time where I think I saw somebody two days later. My time line on that is confused. I don't remember that.
> 　I know initially there was a long wait. I called them, like, a Wednesday night and didn't see anybody till the following Friday or something. Something of that nature.
> Q. And who did you see?

---

[3] In its Opposition, the DEA inconsistently sets the deadline for Mr. Gilmore to have initiated contact with an EEO counselor at December 3 (Opposition at 12), December 4 (Opposition at 14), and December 2 (Opposition at 15). 45 days from October 18, 2007—the date Mr. Gilmore learned that he would not be promoted to the SES—was December 2, 2007. However, December 2 was a Sunday. Therefore, Mr. Gilmore had until December 3, 2007 to initiate contact with an EEO counselor. *See* 29 C.F.R. § 1614.604(d) ("The first day counted shall be the day after the event from which the time period begins to run and the last day of the period shall be included, unless it falls on a Saturday, Sunday or Federal holiday, in which case the period shall be extended to include the next business day."); *see also* Memo. in Supp. of Def.'s Partial Mot. to Dismiss and for Partial Summ. J. at 17 (Dkt. No. 14) ("Gilmore was required to initiate EEO counseling regarding the alleged discrimination not later than Sunday, December 2, 2007, or the subsequent business day, December 3. 2007.").

>A.   I think the first person I saw was Mr. Oliver, and he had to recuse himself or he assigned it to somebody else. And then I didn't see that person for another two days . . . .
>Q.   After you spoke with Mr. Oliver, a day or two later you spoke with someone else?
>A.   Yes.
>Q.   Do you recall who that was?
>A.   Her name was Smith, I believe.
>Q.   It was a woman?
>A.   Yes.
>Q.   Stephanie Smith?
>A.   That probably sounds correct.

(Dep. of Edward Gilmore at 83:15-86:15 (Exh. B).) Likewise, Ms. Smith testified that Mr. Gilmore contacted her before he "just show[ed] up" on December 13:

>Q.   Do you remember if Mr. Gilmore called you on the phone to schedule an appointment?
>A.   It was either a phone call or an email message. I'm not sure which. But there was contact prior to him just showing up.

(Dep. of Stephanie Smith at 74:8-12 (Exh. C).) That neither Mr. Gilmore nor Ms. Smith remembers the exact date that Mr. Gilmore called the EEO office is not surprising after the passage of so much time. It is for this very reason that the DEA's failure to preserve Ms. Smith's detailed appointment calendar is so critical.

Second, Mr. Gilmore's initial telephone conversation with Ms. Smith was sufficient to initiate contact with an EEO counselor as contemplated by § 1614.105(a)(1). The EEOC has provided guidance that an aggrieved party initiates contact with an EEO counselor simply by (1) contacting an agency official logically connected with the EEO process; and (2) exhibiting an

intent to begin the EEO process.[4] E.E.O.C. Management Directive 110, at ch. 2, § I.A, n.1 (Nov. 9, 1999). Mr. Gilmore contacted Ms. Smith—"the only full-time EEO counselor at the DEA's EEO office in Washington, D.C." (Decl. of Stephanie R. Smith at ¶ 5 (Exh. D))—in early-December 2007 to schedule a formal interview. (*See, e.g.*, ELG00001347-48 at ¶ 5 (Exh. A).) Subsequent to this call—but before the December 13 interview—Ms. Smith completed certain paperwork related to Mr. Gilmore's claim. (Dep. of Stephanie Smith at 74:16-19, 89:17-21 (Exh. C).) Ms. Smith only completed this paperwork in advance of an interview when she knew the aggrieved party planned on entering the EEO process. As she testified:

> The person would show up at the time of the interview. But what I always do, I have documents, if they are entering the process and if I know they're entering the process, because oftentimes they will tell you on the phone, you know, if I know that this is going to be a complaint, then I will prepare the forms that they would need to sign, forms that have to be signed prior to having the actual interview.

(*Id.* at 40:17-41:3 (Exh. C).) At minimum, the information provided by Mr. Gilmore included a brief description of his discrimination claim ("Non-promotion to the SES level since 2003, and being rotated out of his current position which has been upgraded to the SES level") and the basis of the alleged discrimination ("Race (African American) . . ."). (Decl. of Stephanie R. Smith at p. 7 (Exh. D).) These facts alone demonstrate that Mr. Gilmore initiated material contact with an EEO counselor during his initial call.

Third, Ms. Smith likely recorded her conversation with Mr. Gilmore on her detailed appointment schedule. Ms. Smith recorded all conversations in which she "spent a significant amount of time on the phone" with an aggrieved party on her detailed appointment schedule.

---

[4] Contrary to the DEA's argument, the EEOC did not require that an aggrieved party "allege that an incident in question is based on discrimination" in November 1999, E.E.O.C. Management Directive 110, at ch. 2, § I.A, n.1 (Nov. 9, 1999), *available at* http://www.va.gov/ORM/docs/EEO-Management-Directive110.pdf., and does not today, E.E.O.C. Management Directive 110, at ch. 2, § I.A, n.1, *available at* http://www.eeoc.gov/federal/directives/md110/chapter2.html. Nonetheless, for the same reasons Mr. Gilmore initiated contact with an EEO counselor under the proper standard, he also did so under the DEA's more restrictive standard.

(Dep. of Stephanie Smith at 41:5-19 (Exh. C).) Mr. Gilmore's initial call likely involved a "significant amount of time." He both requested an appointment to initiate the EEO process and explained the basis of his discrimination claim in sufficient detail to allow Ms. Smith to complete all relevant paperwork prior to their in-person meeting. (*Id.* at 74:16-19, 89:17-21 (Exh. C).) While Mr. Gilmore cannot prove that Ms. Smith did, in fact, record the call on her detailed appointment schedule, it is not his burden to do so. It is the DEA that failed to preserve this critical evidence. Therefore, it is the DEA's burden to "demonstrate with certainty the content of destroyed documents." *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 499 (E.D. Va. 2011). It has not.

### 2. Ms. Smith's "List Of Accomplishments" Does Not Capture All Of The Information On Her Detailed Appointment Schedule

The DEA mischaracterizes Ms. Smith's "List of Accomplishments." During examination by the DEA's counsel, Ms. Smith testified that the document reflects the information on her "notepad." (Dep. of Stephanie Smith at 106:6-12 (Exh. C).) It is unclear if Ms. Smith meant her detailed appointment schedule when she referred to her "notepad." Even if she did, Ms. Smith never testified that she transferred *all* of the information from her detailed appointment schedule to her List of Accomplishments as the DEA must prove to avoid a sanction for spoliation. *See E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 499 (stating that the responsibility to "demonstrate with certainty the content of destroyed documents . . . falls on the party charged with spoliation" (internal quotation and citation omitted)). Of particular relevance, Ms. Smith testified that her List of Accomplishments does "[n]ot hardly" represent all the calls she received as an EEO counselor. (Dep. of Stephanie Smith at 84:22-85:2 (Exh. C).) Therefore, it remains unknown whether Ms. Smith would have transferred the date of Mr. Gilmore's initial call from her detailed appointment schedule to her List of Accomplishments.

### 3. "Bad Faith" Is Not An Element of Spoliation

Lastly, the DEA misstates the standard for spoliation by injecting a requirement that the destruction of Ms. Smith's detailed appointment schedule be in "bad faith" or accompanied by a "culpable state of mind." (Opposition at 17-19.) The Fourth Circuit has made clear that "bad faith" is not a necessary element of spoliation. In *Buckley v. Mukasey*—another case involving alleged discrimination and failure to preserve documents by the DEA—the court reviewed the district court's denial of plaintiff's request for an adverse inference instruction against the DEA for spoliation of evidence. 538 F.3d 306, 322 (4th Cir. 2008). The court held that the district court "committed an error of law by equating the intentional conduct necessary for an [adverse inference] instruction with bad faith." *Id.* at 323; *see also Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 286 (E.D. Va. 2001) ("[P]roof of bad faith is not necessary to obtain relief from spoliation." (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995))). The DEA now recycles the same argument that failed in *Buckley*. It should likewise fail here.

### B. The DEA Fails To Address Mr. Gilmore's Right To An Extension Of The 45-Day Time Limit Under § 1614.105(a)(2)

Mr. Gilmore does not dispute the date that the "limitations period for contacting an EEO counselor beg[an] to run" under § 1614.105(a)(1). (Opposition at 7; *see also* Dkt. No. 97 at 13 n.4.) Rather, Mr. Gilmore disputes when that limitations period ended under § 1614.105(a)(2). (Dkt. No. 97 at 12-14.) The DEA offers no authority to dispute that Mr. Gilmore is entitled to an extension of the 45-day limitations period under § 1614.105(a)(2).

29 C.F.R. § 1614.105(a)(2) states that:

> The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows . . . that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred . . . or for other reasons considered sufficient by the agency or the Commission.

The EEOC has held that an aggrieved party is entitled to an extension under this provision where he "could not have reasonably suspected that he had been discriminated against." *Dimitrelos v. Chertoff*, EEOC Dec. 01A54843, 2005 WL 3090854, at *1 (Nov. 10, 2005). Here, Mr. Gilmore "could not have reasonably suspected that he had been discriminated against" until he learned that Ms. Roach was not on the "Best Qualified List" for SES promotion. (ELG00001347-48 at ¶¶ 3-4 (Exh. A).) Mr. Gilmore testified that he learned the denial of promotion was discriminatory "closer in time to the call to the EEO office" than it was to the announcement of Ms. Roach's promotion to DCI-SES. (Dep. of Edward Gilmore at 87:21-90:9 (Exh. B).) Because an extension would require "ten days here at the most," (11/22/2013 Hearing Tr. at 13:17 (Dkt. No. 38) (Brinkema, J.)), this sequence of events puts Mr. Gilmore's initial contact with an EEO counselor squarely within the scope of § 1614.105(a)(2). The Court should thus find that Mr. Gilmore made timely contact with an EEO counselor.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court enter summary judgment that Mr. Gilmore initiated the administrative exhaustion process within the time period prescribed by 29 C.F.R. § 1614.105(a).

- 15 -

        Respectfully Submitted,


        <u>/s/ D. Bradford Hardin, Jr.</u>
        Don Bradford Hardin, Jr. (Va. Bar No. 76812)
        Amy Kaplan (Va. Bar No. 80789)
        Eric Mahr (*pro hac vice*)
        Greg Butler (*pro hac vice*)
        Nicole Lindquist *(pro hac vice)*
        Wilmer Cutler Pickering Hale and Dorr LLP
        1875 Pennsylvania Ave., N.W.
        Washington, D.C. 20006
        Telephone: (202) 663-6000
        Facsimile:  (202) 663-6363
        Email:     Bradford.Hardin@WilmerHale.com

Dated: May 9, 2014        *Counsel for Plaintiff Edward L. Gilmore*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 9th day of May 2014, I sent copies of the foregoing PLAINTIFF EDWARD L. GILMORE'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT THAT HE EXHAUSTED HIS ADMINISTRATIVE REMEDIES AS REQUIRED BY 29 C.F.R. § 1614.105(a) with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

R. Joseph Sher
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3747
(703) 299-3983 (facsimile)
joe.sher@usdoj.gov
*Counsel for the Defendant*

Ayana N. Free
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3785
(703) 299-3983 (facsimile)
ayana.free@usdoj.gov
*Counsel for the Defendant*

                                                      /s/D. Bradford Hardin, Jr.
                                                      Don Bradford Hardin, Jr. (Va. Bar No. 76812)