Exhibit C



# Transcript of **STEPHANIE RENEE SMITH**

**Date:** March 26, 2014

**Case:** GILMORE v. HOLDER

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: www.planetdepos.com

Court Reporting | Videography | Videoconferencing | Interpretation | Transcription

```
                                                                    1
 1                IN THE UNITED STATES DISTRICT COURT
 2               FOR THE EASTERN DISTRICT OF VIRGINIA
 3                        Alexandria Division
 4    - - - - - - - - - - - - - - - -x
 5     EDWARD L. GILMORE,                :
 6                Plaintiff,             :
 7          v.                           :   Civil Action No.
 8     ERIC HOLDER, in his official      :   1:13-cv-789
 9     capacity as Attorney General      :
10     of the United States,             :
11                Defendant.             :
12    - - - - - - - - - - - - - - - -x
13
14      CONTAINS CONFIDENTIAL ATTORNEYS' EYES ONLY PORTIONS
15
16              Deposition of STEPHANIE RENEE SMITH
17                        Alexandria, Virginia
18                     Wednesday, March 26, 2014
19                            10:13 a.m.
20    Job No.:  55436
21    Pages:  1 - 113
22    Reported By:  Lee Bursten, RMR, CRR
```

CONFIDENTIAL DEPOSITION OF STEPHANIE RENEE SMITH
CONDUCTED ON WEDNESDAY, MARCH 26, 2014

2

1     Deposition of STEPHANIE RENEE SMITH, held

2  at the offices of:

3

4

5                 UNITED STATES ATTORNEY'S OFFICE

6                 2100 Jamieson Avenue

7                 Alexandria, Virginia 22314

8                 (703) 299-3700

9

10

11

12

13       Pursuant to Notice, before Lee Bursten,

14  Registered Merit Reporter, Certified Realtime

15  Reporter, and Notary Public in and for the District

16  of Columbia, who officiated in administering the oath

17  to the witness.

18

19

20

21

22

```
                                                        3
 1                  A P P E A R A N C E S
 2   ON BEHALF OF PLAINTIFF:
 3            JEFFREY T. HANTSON, ESQUIRE
 4            J. GREGORY BUTLER, ESQUIRE
 5            WILMER CUTLER PICKERING HALE
 6              AND DORR LLP
 7            1875 Pennsylvania Avenue, NW
 8            Washington, DC 20006
 9            (202) 663-6000
10
11   ON BEHALF OF DEFENDANT:
12            AYANA N. FREE, ESQUIRE
13            UNITED STATES ATTORNEY'S OFFICE
14            2100 Jamieson Avenue
15            Alexandria, Virginia 22314
16            (703) 299-3700
17
18   ALSO PRESENT:
19         JASON LAESER, ESQUIRE
20         Drug Enforcement Administration
21
22
```

```
                                                              4
 1                    C O N T E N T S

 2    EXAMINATION OF STEPHANIE RENEE SMITH            PAGE

 3     By Mr. Hantson                                   5

 4     By Ms. Free                                    102

 5

 6

 7                     E X H I B I T S

 8              (Attached to transcript.)

 9    SMITH DEPOSITION EXHIBITS                       PAGE

10      Exhibit 1    Edward L. Gilmore, Aggrieved      76

11                   Party (AP)

12      Exhibit 2    Accomplishments - October 1,      79

13                   2007, through September 31, 2008

14                   (Confidential Attorneys' Eyes

15                   Only)

16      Exhibit 3    Declaration of Stephanie R.       86

17                   Smith

18

19

20

21

22
```

5

1     P R O C E E D I N G S

2     STEPHANIE RENEE SMITH

3     having been duly sworn, testified as follows:

4     EXAMINATION BY COUNSEL FOR PLAINTIFF

5  BY MR. HANTSON:

6        Q    Would you please state and spell your name

7  for the record.

8        A    Stephanie Renee Smith.  S-T-E-P-H-A-N-I-E,

9  R-E-N-E-E, S-M-I-T-H.

10       Q    And Ms. Smith, again, thank you very much

11 for taking the time to come here today on this cold

12 spring, I'm told, day.  My name is Jeff Hantson.  I'm

13 an attorney for Mr. Gilmore, who is the plaintiff in

14 this case.  And with me is Greg Butler, one of my

15 colleagues.  He's also an attorney for Mr. Gilmore.

16            Have you ever been deposed before?

17       A    No.

18       Q    Have you ever testified in a trial before?

19       A    No.  I had to think about it.  I served on

20 jury duty, but I didn't have to speak.

21       Q    Sure.  Well, thank you very much for your

22 service then.  Jury duty is not always the most

40

1  testimony.
2       A    No.
3  BY MR. HANTSON:
4       Q    I'm sorry.  Please correct me.  I was just
5  trying to make sure I understood.  Under what
6  circumstances would someone be scheduling an
7  appointment if they weren't interested in entering
8  the process?
9       A    To vent.  Which we get a lot of.
10      Q    And God bless you for it.
11      A    Oftentimes, to just know what their rights
12 are, if they had any rights.
13      Q    After scheduling that interview, what
14 happens next?
15      A    After deciding on a date?
16      Q    Yes.
17      A    The person would show up at the time of the
18 interview.  But what I always do, I have documents,
19 if they are entering the process and if I know
20 they're entering the process, because oftentimes they
21 will tell you on the phone, you know, if I know that
22 this is going to be a complaint, then I will prepare

41

1  the forms that they would need to sign, forms that
2  have to be signed prior to having the actual
3  interview.
4         The forms put them in the process.
5     Q   And stepping back to the phone call to
6  schedule the interview, would you note the date of
7  that phone call anywhere?
8         MS. FREE:  Objection, form.
9     A   I would note on my calendar the date that
10 they want the appointment.  That's if they are going
11 to -- if we're going to meet.  If someone calls and
12 they're just venting or they're just asking about
13 guidance, I would make a notification that I
14 received, because it's me spending time with them on
15 the phone.
16        And all of that is part of my duties and my
17 accomplishments.  So I would record, especially if
18 I've spent a significant amount of time on the phone
19 with them, I would record it on a calendar pad.
20 BY MR. HANTSON:
21    Q   Okay.  This calendar pad that you just
22 mentioned, this was a hard copy calendar?

74

1  I remember that.  Not -- I don't remember any
2  particulars.
3      Q    Do you remember how Mr. Gilmore's claim
4  initially came to you?
5           MS. FREE:  Objection, form.
6      A    No.  No.
7  BY MR. HANTSON:
8      Q    Do you remember if Mr. Gilmore called you
9  on the phone to schedule an appointment?
10     A    It was either a phone call or an email
11 message.  I'm not sure which.  But there was contact
12 prior to him just showing up.
13     Q    Do you remember approximately how long
14 before the appointment he contacted you?
15     A    No, I don't.
16     Q    Do you remember if you prepared any of the
17 forms prior to Mr. Gilmore's initial appointment?
18     A    I prepared the forms -- I prepared the
19 counseling forms prior to him coming to the office.
20     Q    Do you remember when you reported the
21 conflict?
22     A    The same day.  The same day I had the

84

1   vent, there's no need for me to seek their names.  So
2   that's pretty much just a way of capturing -- just
3   capturing the fact that I spoke with a lot of people
4   throughout the year, I cannot tell you the name of
5   every person who I spoke with, but it was daily
6   contact with many people.
7        Q    And in the following sentence you said, "I
8   did capture my time speaking with them at the end of
9   my list."  Do you see that?
10       A    Yes.
11       Q    And if you look at the last line of your
12  list, it says "Provided guidance to several other HR
13  and DEA" -- it's on the same page, I'm sorry, it goes
14  over.  Do you see where it says, "Provided guidance
15  to several other HR and DEA employees through fiscal
16  year 2008"?
17       A    Yes.
18       Q    Is that what you referred to when you said
19  that you captured your time "speaking with them at
20  the end of my list"?
21       A    Yes.
22       Q    So is it correct this list doesn't

85

1  represent all the calls you received?
2       A    Not hardly.
3       Q    But is it correct that it does capture the
4  appointments you had?
5       A    Yes.  Or people who I spent a significant
6  amount of time with, even on the phone.  It may not
7  have been an appointment where they actually came
8  into the office or I made an appointment for them to
9  call me at another time, but if I -- like for
10 instance, a counseling contact could last for three
11 hours.
12           Somebody is so distraught about something
13 that they want to vent, and they're just -- so that's
14 a contact.  That's not counseling, because they
15 haven't entered the process.  So yes, so I would
16 definitely have to capture that, because I had to
17 spend a great portion of my day speaking to somebody.
18      Q    In looking at the first page, just a few
19 lines above where we had seen the "Served as
20 counseling coordinator," it says "EEO counseling,
21 Edward L. Gilmore, Security Programs, December 13th
22 2007."

87

1  BY MR. HANTSON:
2      Q    The court reporter has just handed you
3  what's been marked as Exhibit 3.  If you can see, on
4  the first page it says "Declaration of Stephanie
5  Smith" below a caption for this case.
6      A    Mm-hmm.
7      Q    Is this the declaration you spoke about
8  earlier?
9      A    Yes.
10     Q    This time we'll use the page numbers on the
11 top of the page.  You see it says page 1 of 12.
12     A    Yes.
13     Q    So if you could turn to page 4, is that
14 your signature on that page?
15     A    Yes.
16     Q    And in paragraph 16, it says, "The Exhibit
17 1 documents were included in Mr. Gilmore's EEO
18 counselor's report and would have been part of the
19 file transferred to the agency handling this
20 complaint."
21          Do you see that?
22     A    I see that.

88

1   Q    And what do you mean by that?
2   A    The files -- the documents he signed when I
3   had my interview with him, the rights and
4   responsibilities, the ADR election, all of the stuff
5   that he signed when I had the initial interview with
6   him, all of those documents are a part of -- they
7   become a part of the case file.
8         He gets a copy, but they also go in the
9   report of counseling at some point -- not report of
10  counseling -- report of investigation, once an
11  investigative file has been made.  So documents such
12  as this would have at some point been put in in a
13  correspondence file.
14        Everything that's in a correspondence file
15  is sent to the investigator once the case has been
16  assigned.  So everything that we have in our
17  correspondence file is sent to the investigator, and
18  all of that becomes part of the investigative report,
19  along with, you know, other documentation that's
20  gathered during the course of the investigation.
21        So yes, the documents he signed during the
22  informal stage, yes, they would be a part of a report

89

1  of counseling.
2      Q    Let's turn to page 7.  Page 7 of 12 on the
3  top.  And the title says, "Alternative Dispute
4  Resolution (ADR) Election Form."  Do you see that?
5      A    Yes.
6      Q    Is this the ADR form you were describing
7  earlier?
8      A    Yes.
9      Q    On the bottom half of the page is a section
10 that says "Brief description of claims of
11 discrimination."  Do you see that?
12     A    Yes.
13     Q    And is that the summary of Mr. Gilmore's
14 claims that you mentioned earlier you included on
15 this form?
16     A    Yes.
17     Q    Now, did you fill this information out in
18 advance of the meeting or at the meeting?
19     A    This information was filled out prior to
20 him coming into the office, so it would have been
21 filled out before the meeting took place.
22     Q    And would you have filled it out

105

1   person?
2       A    Right.
3       Q    How do you get the dates for this
4   accomplishments list?
5       A    As far as the actual entries for each?
6       Q    Yes.
7       A    When individuals call, my notepad -- I use
8   my notepad as like a scribble board.  And I just jot
9   down -- you know, it's easy if it's somebody calling
10  within DEA because I can just see their names.
11           I'll jot down their names and sometimes
12  record the time that they called, but certainly their
13  names and the date they call, because that's the
14  only -- because I get so many calls throughout the
15  day that I have to have something, and I don't want
16  to use a whole bunch of yellow stickies because they
17  can actually get away from me.
18           So I use my notepad as a scribble pad to
19  record my work, when I'm accomplishing stuff.
20      Q    What if any correlation is there between
21  your notepad and this list of accomplishments?
22      A    I take the information from my notepad to

106

1  create this.  That's why I keep -- that's why I
2  keep -- you know, I don't just tear it off and rip it
3  up after each one is over, because I want to be able
4  to go back each month and record what has happened
5  throughout the year.
6      Q   So this list of accomplishments reflects
7  the information that was on your notepad?
8      A   Exactly.  And I don't know if you can tell,
9  it's also in -- what do you call it, chronological
10 order, because I usually start from January or
11 whatever, the end of the fiscal year, and flip back.
12 So yes.
13          (This concludes the Confidential Attorneys'
14 Eyes Only portion.)
15     Q   Ms. Smith, you testified earlier about
16 remembering that Mr. Gilmore was a conflict case,
17 correct?
18     A   Yes.
19     Q   And you testified earlier that in a
20 conflict case, cases are transferred from the DEA's
21 EEO office to the Department of Justice, who then
22 reassigns the case, correct?

CONFIDENTIAL DEPOSITION OF STEPHANIE RENEE SMITH
CONDUCTED ON WEDNESDAY, MARCH 26, 2014

109

1  Q    But you've never spoken with her about this
2  case?
3  A    I've never spoken with her at all.
4  Q    About any of your EEO complaints?
5  A    About anything. I've never even exchanged
6  pleasantries, hello or anything.
7       MS. FREE: No further questions.
8       MR. HANTSON: We don't have any further
9  questions.
10      MS. FREE: She's going to read and sign.
11      THE REPORTER: Ms. Free, you're going to
12 order a copy of the transcript?
13      MS. FREE: Yes, please, electronic.
14      (Signature having not been waived, the
15 deposition of STEPHANIE RENEE SMITH was concluded at
16 1:13 p.m.)

CONFIDENTIAL DEPOSITION OF STEPHANIE RENEE SMITH
CONDUCTED ON WEDNESDAY, MARCH 26, 2014

110

1  ACKNOWLEDGEMENT OF DEPONENT

2  I, STEPHANIE RENEE SMITH, do hereby

3  acknowledge that I have read and examined the

4  foregoing testimony, and the same is a true, correct

5  and complete transcription of the testimony given by

6  me, and any corrections appear on the attached Errata

7  sheet signed by me.

8

9  _____  _____

10       (DATE)              (SIGNATURE)

111

1     CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2          I, Lee Bursten, the officer before whom the

3 foregoing deposition was taken, do hereby certify

4 that the foregoing transcript is a true and correct

5 record of the testimony given; that said testimony

6 was taken by me stenographically and thereafter

7 reduced to typewriting under my direction; and that I

8 am neither counsel for, related to, nor employed by

9 any of the parties to this case and have no interest,

10 financial or otherwise, in its outcome.

11          IN WITNESS WHEREOF, I have hereunto set my

12 hand and affixed my notarial seal this 7th day of

13 April, 2014.

14 My commission expires September 30, 2017.

18 LEE BURSTEN

19 NOTARY PUBLIC IN AND FOR

20 THE COMMONWEALTH OF VIRGINIA

21 Notary Registration Number 7255135