# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| EDWARD L. GILMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:13-cv-789 (LMB/IDD) |
| ERIC HOLDER, ) | |
| in his official capacity as ) | |
| Attorney General of the United States, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN OF PLAINTIFF'S EVIDENCE

Pursuant to Local Rule 7(F)(1), Defendant Eric H. Holder, Attorney General of the United States, through his undersigned counsel, hereby respectfully submits this Memorandum of Law in support of Defendant's motion *in limine* to exclude the following evidence as irrelevant or more prejudicial than probative in the above-captioned action: (1) evidence regarding the *Segar* litigation; (2) evidence regarding selections for Senior Executive Service ("SES") positions located in foreign countries; and (3) evidence regarding Plaintiff's Special Agent Promotion Program ("SAPP") score utilized for GS-15 promotion consideration. In addition, Defendant moves *in limine* to postpone any testimony regarding the amount of back pay, if any, to which Plaintiff may be entitled until after the jury returns a verdict in this case. At that time, the Court can determine whether, and to what extent, such testimony would assist it in reaching a judgment on that equitable remedy.

## MOTIONS IN LIMINE AND EVIDENTIARY STANDARDS

District courts have the authority to make *in limine* rulings pursuant to their authority to manage the course of trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Cougill v. Prospect Mortgage, LLC*, No. 1:13CV1433 JCC/TRJ, 2014 WL 348539, at *1 (E.D. Va. Jan. 31, 2014) (Cacheris, J.); *see also Rolls-Royce PLC v. United Techs. Corp.*, No. 1:10cv457 LMB/JFA, 2011 WL 1740143, at *2 (E.D. Va. May 4, 2011) (Brinkema, J.) (noting that courts exercise the power to prevent inadmissible evidence from being revealed to the jury "by reviewing motions in limine before or during trial.").

Evidence is irrelevant, and thus, inadmissible, if it does not have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence." FED. R. EVID. 401, 402. Even if relevant, evidence is inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Excluding evidence on the grounds of relevancy is within the discretion of the trial court. *See United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1996), *cert denied* 516 U.S. 1121 (1996). Applying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Under Federal Rule of Evidence 103(c), a court may "to the extent practicable . . . prevent inadmissible evidence from being suggested to the jury by any means[.]" *Rolls-Royce*, 2011 WL 1740143, at *2 (*citing* FED. R. EVID. 103(c)). Similarly, questions of whether factually relevant evidence

should be excluded as "unduly prejudicial" are also left to the sound discretion of the trial court, which must balance the probative value of the evidence against the potential prejudice resulting from its inclusion. *See Sprint/United Mgmt*, 552 U.S. at 384.

## ARGUMENT

I. **EVIDENCE OF THE *SEGAR* LITIGATION IS NOT RELEVANT TO THIS CASE, AND IN ANY EVENT IS MORE PREJUDICIAL THAN PROBATIVE AND SHOULD BE EXCLUDED**

During the course of this litigation, Plaintiff has frequently referenced the *Segar* class action litigation. *See e.g.* Compl. ¶¶ 16-20 (citing *Segar v. Civiletti*, 508 F. Supp. 690, 712-15 (D.D.C. 1981), *aff'd* in relevant part *sub nom.*, *Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984)); Memorandum in Support of Plaintiff's Opposition Brief ("Pl. Opp."), Dkt. No. 121, at ¶ 1 p.9. As testimony of the *Segar* litigation is irrelevant, highly prejudicial, and would confuse the issues and mislead the jury, it should be excluded. FED. R. EVID. 401-403.

    A. <u>The *Segar* Litigation Is Irrelevant As The Stipulated Procedures Upon Which The Plaintiff May Rely Were Vacated At The Time Of His Non-Selection And The Administrator Followed The Proper Selection Procedures In Place At The Time Of Her Decision</u>

Federal Rules of Evidence 401 and 402 allow this Court to determine whether evidence is relevant and to exclude irrelevant evidence as necessary. FED. R. EVID. 401, 402. Even if evidence is relevant, if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," then such evidence may be excluded at the trial court's discretion. FED. R. EVID. 403; *see also Sprint/United Mgmt.*, 552 U.S. at 384. Information regarding the *Segar* litigation is both irrelevant to Plaintiff's claims and unduly prejudicial. It should be excluded.

*Segar* is a Title VII class action pending in the United States District Court for the

District of Columbia, brought by a class of African-American DEA Special Agents alleging discrimination by the DEA in, among other things, promotions to SES positions. Gilmore is a member of the plaintiff class, as is Administrator Leonhart.[1] The *Segar* litigation was filed in the United States District Court for the District of Columbia in 1977 and came to trial in 1979. After finding that the DEA had discriminated against African-American agents in salary, promotions, initial (General Schedule ("GS")) grade assignments, work assignments, supervisory evaluations, and imposition of discipline, the District Court in the District of Columbia ordered comprehensive relief. *Segar v. Civiletti*, 508 F. Supp. 690 (D.D.C. 1981). The Court of Appeals affirmed the district court's finding of discrimination, but reversed some of its remedial measures. *Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984). No decision-maker involved in the promotion decision at issue in this case was employed by the DEA at the time of the original *Segar* decisions which resulted in the *Segar* court's findings and conclusions.

In the years following the Court of Appeals' 1984 decision, the *Segar* litigation remained in the district court in the District of Columbia. *See Segar v. Aschroft,* 422 F. Supp. 2d 117, 120-26 (D.D.C. 2006) (summarizing the course of events in the litigation regarding promotions to the SES). In 2003, a controversy arose between the *Segar* parties as to whether—under the terms of a stipulation regarding SES selection procedures entered into by the parties on March 12, 2002 ("the Stipulated Procedures")—the Administrator retained authority to select a non-SES Special

---

[1] The district court in *Segar* certified a class pursuant to FED. R. CIV. P. 23(b)(2) consisting of all African-Americans who then served as DEA Special Agents, had been discharged as Special Agents, who had unsuccessfully applied for DEA Special Agent positions or who *in the future* will apply to be Special Agents. *See Segar v. Smith*, 738 F.2d 1249, 1260-61 (D.D.C. 1977) ("*Segar I*"). It thus is undisputed that Plaintiff is a member of the *Segar* class, and, at least until her appointment as Administrator, Ms. Leonhart was also a *Segar* class member.

Agent for a position if the agent had neither applied for the position nor been rated.[2] *Segar I*, 738 F.2d at 1260-61; *Segar v. Mukasey*, 508 F.3d 16, 20 (D.C. Cir. 2007) ("*Segar II*"). On March 9, 2006, after concluding a bench trial on that question, the district court voided the Stipulated Procedures and ordered that, when selecting new members of the DEA's SES, the Administrator could consider only Special Agents who had applied, had been rated and ranked, and had been placed on one of three lists of qualified applicants provided to the Administrator. *Segar II,* 508 F.3d at 21.

It is undisputed that Administrator Tandy complied with the District of Columbia's 2006 decision when making the selection at issue in this case. And it was not until November 23, 2007—*after* Administrator Tandy retired from federal service—that the United States Court of Appeals for the District of Columbia Circuit reversed the district court's 2006 conclusion and order, and reinstated a stipulation limiting the Administrator's choices to only those on the "Best Qualified" list when selecting new SES Special Agents. *Segar II*, 508 F.3d at 25-26.

Here, Plaintiff has repeatedly relied on the Stipulated Procedures in arguing his case. Yet these Stipulated Procedures in *Segar II* were vacated prior to Plaintiff's non-selection and were reinstated on appeal only after his non-selection. *Segar II.* 508 F.3d at 19-21. Simply put, evidence of a purported violation of a then-vacated order is not relevant to Plaintiff's claims.

Similarly irrelevant to Plaintiff's claims is that in 1979 the DEA was found to have violated Title VII when promoting Special Agents. None of the individuals involved in the promotion decision at issue in this case were even employed by the DEA during the *Segar* trial in 1979, nor were they involved in the design or execution of the promotion process that the

---

[2] On August 28, 2003, the DEA Administrator promoted a Special Agent, Mary Cooper, a non-class member, to the SES ranks, though Special Agent Cooper had not "submitted an application or been rated and ranked and placed on the list sent to the Administrator" for promotion consideration. *Segar II*, 508 F.3d at 20.

court in that case ultimately found to be discriminatory in its effect.

Accordingly, evidence of the *Segar* litigation, or of any of the agreements, orders, decisions or events from the *Segar* litigation, is not relevant to this case and should be excluded.

    B.    <u>Evidence Of The *Segar* Litigation Is Highly Prejudicial And Would Confuse The Issues In This Case</u>

Even assuming, *arguendo,* that the *Segar* litigation is relevant to Plaintiff's claims, it should still be excluded due to its highly prejudicial nature and propensity to confuse the issues in this matter.

Rule of Evidence 403 permits this Court to "exclude relevant evidence if its probative value is substantially outweighed" by any number of items, including those of "unfair prejudice, confusing the issues, [or] misleading the jury." FED. R. EVID. 403. "After evaluating the marginal probative value of proposed evidence, a trial court then must balance the value of the evidence against the harmful consequences that may result from its admission. Foremost among those dangers is the risk of unfair prejudice, which refers to an undue tendency of evidence to influence a jury to make a decision for reasons unrelated to the probative value of the evidence." *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 719 (4th Cir. 2014) (excluding evidence as unduly prejudicial after applying a Rule 403 analysis in a Title VII case); *see also Bland v. Fairfax Cty.*, No. 1:10-cv-1030, 2011 WL 2490995, at *5 (E.D. Va. June 20, 2011) (Cacheris, J.) (excluding evidence as unfairly prejudicial in a Title VII case and noting that "[a]s the Fourth Circuit has stated, Rule 403 'only requires suppression of evidence that results in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence.'") (*citing United States v. Mohr*, 318 F.3d 613, 619–20 (4th Cir. 2003)).

Evidence may also be excluded by virtue of Rule of Evidence 404, which limits the admissibility of character evidence that is otherwise relevant within the meaning of Rule 401. Generally, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." FED. R. EVID. 404(a).[3] Rule 404(b) expands on the inadmissibility of character evidence to encompass proof of a person's bad character through "[e]vidence of other crimes, wrongs or acts." FED. R. EVID. 404(b). While evidence of prior bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith," "[i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id*. Therefore, "the threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988) (noting that Rule of Evidence 404(b) applies both in civil and criminal cases).

This Court has also held that excluding evidence is appropriate when a parallel proceeding is irrelevant to a plaintiff's claim and introducing such a proceeding would lead to a "substantial possibility" that a jury could be confused or misled in the absence of a "nuanced appreciation for the substantive and procedural dissimilarities" between the two proceedings. *Guerrero v. Deane*, No. 1:09CV1313 JCC/TCB, 2012 WL 3834907, at *10 (E.D. Va. Sept. 4, 2012) (Cacheris, J.) (excluding evidence and testimony as to the disposition of a related state court proceeding); *see also* FED. R. EVID. 403 (excluding evidence when its probative value is substantially outweighed by a danger of "confusing the issues [or] misleading the jury."); *Lewis v. Sentara Alt. Delivery Sys.*, 139 F.3d 890 (Table), at *3 (4th Cir. Mar. 2, 1998) ("Excluding

---

[3] While exceptions exist to this Rule, none are relevant in this case. *See* FED. R. EVID. 404(a).

testimony under Rule 403 to avoid litigating collateral matters was not an abuse of discretion.").

Here, evidence of the *Segar* litigation is both highly prejudicial and substantially increases the likelihood of jury confusion. Evidence that the DEA was found to have violated Title VII in 1979 would simply be an "appeal to the emotion" of the jury, and permits a highly prejudicial inference that the DEA acted in a discriminatory manner in this case. Any reference to the *Segar* litigation would amount to no more than an attempt to bolster Plaintiff's claim of discrimination through introducing highly prejudicial evidence of a prior bad act not involving the decision-maker in Plaintiff's non-selection. *See* FED. R. EVID. 403, 404(a), and 404(b).

Admitting evidence of the *Segar* litigation would also substantially increase the likelihood of jury confusion on the procedural and substantive distinctions between the *Segar* litigation in the District of Columbia and Plaintiff's Title VII employment discrimination action before this Court. Such evidence could also lead the jury to believe that the question before it had already been decided in the *Segar* litigation, though that is not the case. As the issues before the jury in this case would be different than those addressed in the *Segar* litigation, a high risk of undue prejudice and confusion exists, and weighs in favor of excluding testimony regarding this other litigation. *See e.g.*, *Guerrero*, 2012 WL 3834907, at *10; FED. R. EVID. 403.

C. The Fourth Circuit's Ruling In *Buckley* Is Inapplicable To This Case

Plaintiff may also argue that *Buckley v. Mukasey*, 538 F.3d 306 (4th Cir. 2008), points to the permissible inclusion of *Segar* evidence. Such an argument by Plaintiff, however, would misstate the Fourth Circuit's holding in *Buckley*.

Buckley was a DEA special agent who alleged retaliation based in part on her participation in the *Segar* litigation. This Court limited plaintiff's discussion of the *Segar* litigation under Federal Rules of Evidence 401-403, 404(a) and 404(b), based on its belief that

8

the plaintiff "sought to introduce evidence regarding the *Segar* litigation in order to establish 'an environment of discrimination' within the DEA." *Buckley*, 538 F.3d at 317-18 (internal citation omitted). The Fourth Circuit overturned and remanded the case, finding instead that the plaintiff intended to use evidence of the *Segar* litigation "to demonstrate *retaliatory* animus, as she was required to do to prevail on her retaliation claims." *Id.* (emphasis in original). As the plaintiff claimed retaliation based in part upon her participation in the *Segar* class action, the Fourth Circuit determined that limitations on *Segar* evidence "foreclosed a coherent and compelling evidentiary account of the government's alleged retaliation." *Id.* at 319. The appellate court instead ruled that, when "[v]iewed in the light of its real purpose of establishing retaliatory animus," evidence of the *Segar* litigation was relevant within the meaning of Rules of Evidence 401 and 404(b).[4] *Id.*

Here, Plaintiff does not claim retaliation predicated upon his participation in the *Segar* class—he has no retaliation claim at all. His claims do not hinge upon whether his supervisors knew of his participation in the *Segar* litigation, or even whether his supervisors knew of the *Segar* litigation. And it is undisputed that Administrator Tandy complied with the 2006 court decision regarding SES promotions that was in force at the time of her decision not to select Plaintiff for promotion to the SES.

Plaintiff also cannot argue that evidence of *Segar* makes it "more probable or less probable" that his non-selection was racially motivated. FED. R. EVID. 401. None of the decision-makers in place at the time of the *Segar* trial in 1979 made the decision not to appoint Plaintiff to the SES. Rather, introducing evidence of the *Segar* litigation would simply permit an

---

[4] The appellate court also noted that potential confusion to the jury could be remedied by a limiting instruction that "Segar litigation evidence is to be considered only as evidence of retaliatory animus." *Buckley*, 538 F.3d at 320.

9

inference that "[t]hese people discriminated before, . . . they are discriminating now." *Buckley,* 538 F.3d at 318; *see also Schneider v. City & Cty. of Denver,* 47 Fed. Appx. 517, 526 (10th Cir. 2002) (holding inadmissible a verdict form referencing a prior Title VII litigation against the defendant, as the case discussed different issues, the decision-makers in each suit were different, and there was "little or no connection" between the cases). Such an inference as would arise from introducing the *Segar* litigation, that prior bad conduct indicates later conformity with that conduct, is impermissible under Rule of Evidence 404(b) and is highly prejudicial under Rule 403. *See also Becker v. Arco Chem. Co.*, 207 F.3d 176, 192 (3d. Cir. 2000) (holding that as plaintiff "failed to articulate how the [] evidence fits into a chain of logical inferences pointing towards ARCO's intent without involving the inference that because ARCO committed the first act it was more likely to have committed the second, we cannot agree with the district court's conclusion that the evidence was admissible under Rule 404(b) to establish ARCO's intent to discriminate against Becker."). Accordingly, in this case, the Fourth Circuit's decision in *Buckley* counsels that evidence of the *Segar* litigation should be excluded.

## II. SES SELECTIONS TO FOREIGN OFFICES ARE IRRELEVANT AND SHOULD BE EXCLUDED

Plaintiff alleged in his complaint that the DEA systematically discriminated against African-American employees applying to SES positions. As a comparator, Plaintiff points to Andre Kellum—an African-American Special Agent who served as a GS-15 Country Attaché in Bangkok, Thailand. While Plaintiff alleged that Kellum's job was upgraded to an SES position and that he was replaced by a white male, Compl. at ¶ 44, his allegation is erroneous. Kellum was not replaced in his GS-15 position; to the contrary, he remained in Bangkok until the scheduled end of his overseas tour. Rather, a new SES position was created for a Regional Director in Bangkok. The Regional Director position, while based in Bangkok, included

additional responsibilities overseeing DEA representatives in other countries in Southeast Asia as well as some of the responsibilities of the Country Attaché position.

Moreover, SES selections in the United States and SES selections in foreign countries are subject to differing considerations and procedures. *See e.g.*, Defendant's Exhibit ("DEX") A at 43:20-44:19, 49:2-49:8 (stating that domestic SES positions are not announced, whereas overseas SES positions are posted because "not everybody wants to go to Afghanistan."). As standards between domestic and foreign SES applications differ, any probative value of such evidence would be outweighed by possibility that the jury would be misled or confused when considering what relationship might exist between these dissimilar items. Evidence of Kellum's non-selection should be excluded under Rules of Evidence 401, 402 and 403.

### III. PLAINTIFF'S SAPP SCORE IS IRRELEVANT AND SHOULD BE EXCLUDED

Plaintiff points to his SAPP score multiple times in an attempt to bolster his claims that he had the requisite enforcement experience desired of SES applicants. *See e.g.* Pl. Opp., Dkt. No. 121, at pp.5 n.2, 12, 24; PEX A; PEX F. And, as indicated in his Rule 26 disclosures, Plaintiff intends to introduce into evidence his SAPP score and narrative into evidence at trial. *See* Plaintiff's Rule 26 Disclosures, Dkt. No. 150 at p.3.[5] However, Plaintiff's SAPP score was used only for purposes of his application for promotion to a GS-15 position—a fact admitted by the Plaintiff. Pl. Opp., Dkt No. 121, at PEX A, ¶ 11 (describing his SAPP score as the score used by the DEA when determining his promotion "to become a GS-15 agent."). Nor was Plaintiff's

---

[5] Plaintiff lists PEX003 as Plaintiff's "SAPP Results and Explanation" and PEX004-PEX005 as "Plaintiff's SAPP Narrative." Dkt. No. 150, at p.3. A review of PEX002 also reveals that it is virtually identical to PEX003, Plaintiff's SAPP results. In addition, exhibits PEX008-PEX010 are copies of Plaintiff's "PRS Summary Form," a form required for "Grade 13 and Grade 14 Special Agents (SAs) Competing in the 2011 SA Promotion Program (SAPP)." As documents PEX002-005 and PEX008-010 all reference Plaintiff's SAPP score, Defendants move to exclude each of these documents as irrelevant.

11

SAPP score, or his SES qualification score, made known to the Administrator when she was making her decision on new SES appointments. *See e.g.* DEX B at 124:21-125:8 ("we don't know the scores of the employees."). As Plaintiff's SAPP score was not provided to the Administrator for use during her decision-making process, it should be excluded under Federal Rules of Evidence 401 and 402.

According then-DEA Deputy Administrator (and current DEA Administrator) Michele Leonhart, SAPP scores used during the promotion process to a GS-14 or GS-15 position measure "the things that a [GS] 14 and [GS] 15 do in the field." DEX B at 117:11-14. While an SAPP score does address "leading these enforcement groups [as a GS-14 or GS-15]" a GS-14 or GS-15 applicant's SAPP score is not utilized in any way after the employee is promoted, and is never used for future applications to the SES. *Id.* Much like the SES qualification score is used to place candidates on the various qualification lists, "[e]ach Grade 13 or Grade 14 special agent who qualifies for promotion and wishes to be promoted . . . goes through the assessment and receives a SAPP score." DEX C at 43:15-22. After compiling SAPP scores, "the [evaluation] band would be set based on the highest score. . . . any applicant who had a score within that band made the best-qualified list." *Id.* at 43:20-44:4; *see also id.* at 162:3-5.

Plaintiff does not contend—and cannot—that his SAPP score was included as part of his SES qualification score, as part of his SES application, or was in any way considered when he applied for the SES. The fact that Plaintiff received a high score for his "[a]bility to plan and coordinate enforcement operations" at a GS-15 agent level does not make it "more probable or less probable" that he had such significant enforcement experience as desired for an SES applicant. FED. R. EVID. 401, 402. Nor does Plaintiff's SAPP score make it more or less probable that he had enforcement experience that exceeded that of other SES applicants. *Id.*

12

Plaintiff's SAPP score was never used for his SES application and thus any reference to his SAPP score should be excluded as not relevant.

IV. **THE COURT SHOULD POSTPONE TESTIMONY OF THE PARTIES' EXPERTS UNTIL AFTER THE JURY RENDERS ITS DECISION AS BACK PAY IS AN EQUITABLE ISSUE FOR THE COURT**

As the Court noted during the May 16, 2014 hearing, both parties retained experts to testify regarding Plaintiff's claimed lost wages. DEX D at pp. 7:24-12:21. However, these experts should not be called before the jury so as to avoid confusion on the issues before the jury, and to avoid burdening the jury with testimony irrelevant to their decision.

Under Title VII, any question of back pay is to be determined by the Court, not the jury, as back pay in Title VII cases is an equitable remedy. *See* 42 U.S.C. § 2000e-5(g); *see also Hylind v. Xerox Corp.*, 481 Fed. Appx. 819, 824 (4th Cir, 2012) ("[T]he determination of back pay is an equitable matter for the judge, not the jury."); *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 356 (4th Cir. 1996) ("As part of its equitable powers under Title VII, a district court has broad equitable discretion to fashion remedies to make the plaintiff whole for injuries resulting from a violation of the statute.") (*citing and relying on Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763-64 (1976)); *Smith v. Hampton Training Sch. for Nurses*, 360 F.2d 577, 581 n. 8 (4th Cir. 1966) (holding that the question of back pay is not proper before a jury, but is rather "an integral part of the equitable remedy of reinstatement, and should be determined by the court."); *cf Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991) (holding that an award of compensation for future lost earnings, or "front pay," is an equitable matter for the court, not the jury). In *Corti v. Storage Technology Corp.*, 304 F.3d 336 (4th Cir. 2002), the Fourth Circuit noted with approval the district court's jury instruction that "[i]n calculating damages, you may not consider any wages or benefits that Ms. Corti may have lost. The award of lost pay or

benefits should you find [defendant] liable, will be determined by the Court." *Corti*, 304 F.3d at 342.

In this case, issues regarding back pay are not significant unless and until the jury determines that Defendant violated Title VII by not selecting Plaintiff to the SES. Yet even should the jury make such a decision, it will not decide whether (or to what extent) Plaintiff is entitled to an award of back pay. Presenting the parties' expert witnesses to the jury would only confuse the jury with irrelevant information and unnecessarily lengthen the time of their jury service, for they will have no role in making a back pay determination. *See e.g.* FED. R. EVID. 403 (allowing exclusion of evidence if it could cause "undue delay" or "waste of time"); *see also Duke*, 928 F.2d 1413 ("[A]s with back pay under Title VII . . . its award and amount is one for the court sitting in equity to consider and not the jury.").

Accordingly, any necessary testimony of the parties' expert witnesses should be postponed until the jury reaches a verdict on the issues before them in this case. If the jury reaches a verdict requiring such testimony, the Court can determine whether live testimony would assist it in determining a back pay award, if any, or whether to direct an alternative means of providing the information required by the Court on that question.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion *in limine* to exclude or limit evidence regarding the *Segar* litigation, non-contemporaneous SES selections, and Plaintiff's SAPP score in in the above-captioned action, and to postpone any evidence regarding back pay until after the jury resolves the issues to be submitted for its decision.

//

//

                                Respectfully submitted,

                                DANA J. BOENTE
                                UNITED STATES ATTORNEY

*By*:                /s/
                                AYANA N. FREE
                                R. JOSEPH SHER
                                Assistant United States Attorneys
                                ERIN K. MURDOCK-PARK
                                Special Assistant United States Attorney
                                OFFICE OF THE UNITED STATES ATTORNEY
                                Justin W. Williams Building
                                2100 Jamieson Avenue
                                Alexandria, Virginia 22314
                                Telephone:   (703) 299-3785
                                Fax:           (703) 299-3983
                                Email:         ayana.free@usdoj.gov

DATED: May 30, 2014                  *Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Bradford Hardin (#76812)
WILMER CUTLER PICKERING HALE AND DORR LLP
1899 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
bradford.hardin@wilmerhale.com
*Counsel for the Plaintiff*

/s/
ERIN K. MURDOCK-PARK
Special Assistant United States Attorney
OFFICE OF THE UNITED STATES ATTORNEY
Justin W. Williams Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3785
Fax: (703) 299-3983
Email: ayana.free@usdoj.gov

DATED: May 30, 2014        *Counsel for the Defendant*