**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| EDWARD L. GILMORE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-789 |
| | ) | |
| ERIC HOLDER, in his official capacity as Attorney General of the United States, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF EDWARD L. GILMORE'S MOTION
IN LIMINE TO PRECLUDE CERTAIN HEARSAY EVIDENCE**

Plaintiff Edward L. Gilmore submits this memorandum in support of his motion to exclude certain hearsay testimony under Rule 802 of the Federal Rules of Evidence. Mr. Gilmore requests the Court preclude the defendant from introducing hearsay evidence regarding (1) Mr. Guevara's, Mr. Kasson's, or others' alleged views on the candidates for the Deputy Chief Inspector of the Office of Security Programs (DCI, OSP) position; or (2) the August 2005 Career Board meeting.

**I.   The Court Should Preclude the DEA from Introducing Hearsay Evidence Regarding Mr. Guevara's, Mr. Kasson's, or Others' Alleged Views on the Candidates for the DCI, OSP Position**

At her deposition, Administrator Leonhart described her role in the SES selection process as gathering Guevara's and Kasson's input and passing it on to Administrator Tandy:

> Q: How about Mr. Kasson? Did you put a lot of weight on Mr. Kasson's recommendation?
>
> A: *Again, I didn't make the selection. Ms. Tandy did. I just passed on the input from Mr. Guevara and Mr. Kasson*.

Leonhart Dep. 99:11-15 (emphasis added). As a result, most of Ms. Leonhart's testimony regarding Mr. Gilmore and Ms. Roach is based on hearsay she obtained during that information-gathering process. For example, Ms. Leonhart testified as to Mr. Kasson's and Mr. Guevara's alleged out-of-court statements regarding Mr. Gilmore's qualifications for the DCI, OSP position:

> Q: All right. Let's talk about the strong leader point first. I think you mentioned that judgment came from Mr. Guevara and Mr. Kasson; did I understand you correctly?
>
> A: The judgment came from many people, but specifically I was giving two examples, that his first line supervisor, Roger Guevara, did not recommend him for the position that was underneath Roger.
>
> Q: And how do you know that?
>
> A: ***Roger told me that.***

Leonhart Dep. 98:3-13; *see also* id. at 151:1-10 ("When it came to, okay, now we have the new positions in the headquarters to fill, . . . knowing that ***Roger himself said he could not recommend Ed for that job*** and actually recommended someone else, the fact that ***Jim Kasson told her that there were other candidates, he could not recommend Ed for that position***, I think she took all that into consideration.").

Additionally, Ms. Leonhart testified that Ms. Roach was placed on the short list for the DCI, OSP position based on statements Mr. Kasson allegedly made to her, which she then described:

> Q: And what factors led you to include Ms. Roach among the short list of candidates?
>
> A: Going back earlier in the year, ***conversations*** with then-SAC Jim Kasson of the Philadelphia Division regarding the potential of his ASACs for performance at the SES level. ***He was very complimentary of her leadership skills, solid enforcement experience, able to work with the team, actually form a team. She***

> *could juggle a number of things going on at the same time. Very good with liaison. Could really, you know, build the team.*

Leonhart Depo. 83:3-14; *see also* id. at 102:16-20 ("Q: Anyone other than Jim Craig express a view in favor of Ms. Roach? A: They *<u>all expressed agreement</u>* that she was a very strong candidate for this, or even associate SAC jobs that were open.").

The DEA also has identified as Trial Exhibits certain handwritten notes of Ms. Leonhart, which are themselves hearsay and contain additional out-of-court statements made by others. *See, e.g.*, DEX 24 ("Handwritten notes from M. Leonhart conversation with R. Guevara"); DEX 32 ("Administrator Leonhart's Handwritten Notes Regarding ASACs"); DEX 33 ("Administrator Leonhart's Handwritten Notes Regarding Messrs. Gilmore and Biales"). These handwritten notes purport to relay out-of-court statements by Kasson, Guevara, and others regarding candidates for the DCI SES position, including Mr. Gilmore and Ms. Roach. Ms. Leonhart made it clear at her deposition that her notes were reporting hearsay:

> Q: Can you explain what this document is?
>
> A: This would have meant I had a *conversation with Jim Kasson* on April 24th, 2006, regarding his ASACs. And it would have been in the context of ASACs ready for the next level, ready for SES, promotion to the SES . . . .
>
> So Jim is -- *Jim Kasson is making a statement* that [Ms. Roach has] got solid enforcement. So she's done it at every level, she could lead in enforcement, she could lead a division, their enforcement programs.

*See* Leonhart Dep. 85:20–91:1 (discussing the handwritten notes identified as DEX 32); *see also United States v. Morlang,* 531 F. 2d 183, 190 (4th Cir. 1975) ("Prior unsworn statements of a witness are mere hearsay and are, as such, generally inadmissible as affirmative proof.").

Mr. Guevara's, Mr. Kasson's, and others' alleged out-of-court statements regarding candidates for the DCI, OSP position would be offered for their truth and therefore are inadmissible hearsay. Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than that

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Thus the Court should preclude the DEA from introducing such hearsay evidence. Fed. R. Evid. 802.

Not only is such evidence hearsay but permitting the current Administrator of the DEA to report on what others supposedly told her about their views of Mr. Gilmore and Ms. Roach risks giving their comments undue weight and therefore would be prejudicial. Moreover, Mr. Guevara and Mr. Kasson are available to testify live or by deposition and have been identified by DEA as potential witnesses.

### II.     The Court Should Preclude the DEA from Introducing Hearsay Evidence Regarding the August 2005 Career Board Meeting

In her deposition, Ms. Leonhart testified regarding the statements made by others during the August 2005 Career Board meeting. For instance, Ms. Leonhart testified that "Mr. Guevara let the career board know" and "Jerome Harris mentioned" that Mr. Gilmore was aware he was not competitive for the SES, and that this was the only basis for her knowledge that Mr. Gilmore supposedly knew he was not a competitive SES candidate:

> Q: You specifically remember Mr. Guevara saying that during the Career Board meeting, that Mr. Gilmore was aware that this wasn't a move that would help him on the SES path?
>
> A: Yes. **Mr. Guevara let the Career Board know**, kind of assured the Career Board that Ed knew that he was not going to be competitive for the SES, that he knew that, and he was raising his hand because he just wanted to do something different. . . .
>
> Q: Other than Mr. Guevara saying that Ed knows what's happening, he's all right with this, were any other efforts made to talk to Mr. Gilmore about what kind of effect this decision would have on his career path?
>
> A: I'm not aware of any, because Roger Guevara had made it clear that Ed knew the situation, and even **Jerome Harris mentioned** that Ed was aware that he wasn't competitive.

Leonhart Dep. 38:14-22; 39:20–40:6; *see also* id. 42:7-15 ("Q: . . . was there any effort to confirm that directly with Mr. Gilmore, that he understood the impact of this decision on his career? A: Not by the Career Board, but other Career Board members, like Jerome Harris, acknowledged that Ed Gilmore was aware of his enforcement weakness."). This testimony is hearsay and is inadmissible under Rule 802.

Likewise, the DEA has identified as a Trial Exhibit a transcript of the August 2005 Career Board meeting prepared for this litigation. *See* DEX 12; *see also* DEX 12 Leonhart Aff. ¶¶ 3-4 (stating that the written transcript was prepared after the DEA filed its motion for summary judgment and that Ms. Leonhart corrected the transcript). The transcript itself is hearsay for which there is no exception and should be excluded at trial on that basis. In addition the transcript contains out-of-court statements offered for the truth of the matter made by various speakers, at least two of whom the DEA has identified as potential witnesses. Accordingly, Plaintiff requests that hearsay evidence relating to the August 2005 Career Board Meeting be excluded.

## CONCLUSION

For these reasons, the Court should preclude the DEA from introducing hearsay evidence regarding (1) Mr. Guevara's, Mr. Kasson's, or others' alleged views on the candidates for the Deputy Chief Inspector of the Office of Security Programs position; or (2) the August 2005 Career Board meeting.

Respectfully Submitted,

/s/ D. Bradford Hardin, Jr.
D. Bradford Hardin, Jr. (Va. Bar No. 76812)
Amy Kaplan (Va. Bar No. 80789)
Eric Mahr (*pro hac vice*)
Amanda Major (*pro hac vice*)
Greg Butler (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: Bradford.Hardin@WilmerHale.com

Dated: June 3, 2014      *Counsel for Plaintiff Edward L. Gilmore*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June 2014, I sent copies of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

R. Joseph Sher
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3747
(703) 299-3983 (facsimile)
Joe.sher@usdoj.gov
*Counsel for the Defendant*

Ayana N. Free
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3785
(703) 299-3983 (facsimile)
Ayana.free@usdoj.gov
*Counsel for the Defendant*

/s/D. Bradford Hardin, Jr.
D. Bradford Hardin, Jr. (Va. Bar No. 76812)