IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| EDWARD L. GILMORE,              ) | |
| ) | |
| Plaintiff,              ) | |
| ) | |
| v.              ) | |
| ) | Civil Action No. 1:13-cv-789 (LMB/IDD) |
| ERIC HOLDER,              ) | |
| in his official capacity as              ) | |
| Attorney General of the United States,   ) | |
| ) | |
| Defendant.              ) | |
| ) | |

**PLAINTIFF EDWARD L. GILMORE'S OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* TO EXCLUDE CERTAIN OF PLAINTIFF'S EVIDENCE**

The defendant ("Defendant" or "DEA") seeks to exclude evidence regarding the *Segar* litigation and evidence regarding Plaintiff Edward Gilmore's ("Plaintiff's" or "Mr. Gilmore's") Special Agent Promotion Program ("SAPP") score, largely on relevance grounds.[1] (Dkt. No. 152 at 3-10, 11-13 ("Motion")). The Court should defer ruling on these evidentiary issues until the evidence is placed in its proper context at trial. To the extent the Court considers the DEA's Motion on the merits, the categories of evidence the DEA seeks to exclude are unquestionably relevant, as detailed below. Mr. Gilmore thus respectfully requests that the Court deny those portions of the DEA's Motion related to the *Segar* litigation and Mr. Gilmore's SAPP score.

---

[1] Mr. Gilmore does not intend to introduce evidence regarding selections for SES positions located in foreign countries and, therefore, does not oppose that part of the DEA's Motion. (Dkt. No. 152 at 10-11.) Likewise, Mr. Gilmore does not oppose the portion of the DEA's Motion seeking to postpone any testimony regarding the amount of back pay to which he is entitled until after the jury returns its verdict. (*Id.* at 13-14.) However, Mr. Gilmore respectfully requests that evidence regarding back pay be presented immediately following a favorable jury verdict. The parties and the Court have set aside this time for resolution of Mr. Gilmore's claim, and waiting until after a verdict to determine when and how the issue of back pay will be addressed would further delay providing Mr. Gilmore the relief he seeks.

I. **THE COURT SHOULD DEFER RULING ON THE EVIDENTIARY ISSUES RAISED BY THE DEA UNTIL TRIAL**

As the Court has recognized, evaluating the relevance of evidence devoid of the proper context at trial is difficult, if not impossible. (Dkt. No. 68 at 10:9-12.) *See also In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, 2013 WL 3282926, at *2 (S.D.W. Va. June 27, 2013) (denying various motions *in limine* and explaining that "I simply cannot make a substantive ruling at this time without knowing the particular piece of evidence that the plaintiffs seek to introduce or argument that the plaintiffs seek to make, and the context in which the plaintiffs seek to introduce such evidence or make such argument"). Perhaps recognizing the uphill battle it faces in its Motion, the DEA attacks certain evidence by identifying what it presumes Plaintiff will argue and explaining why it believes such argument would be improper under the Federal Rules of Evidence. With regard to evidence of the *Segar* litigation, the DEA alternatively presupposes that Mr. Gilmore will (1) argue that the Stipulated Procedures applied when he was denied promotion to the Senior Executive Service ("SES") (Motion at 5); (2) equate the DEA's prior discrimination with his discrimination claim (*id.* at 5-6, 9-10); and (3) use *Segar* to appeal to the emotions of the jury (*id.* at 8). With regard to Mr. Gilmore's SAPP score, the DEA anticipates that Mr. Gilmore will argue that his score entitled him to promotion to the SES. (*Id.* at 11-13.) But these are not all potential uses of this evidence, and, in fact, do not capture Mr. Gilmore's intended use of the evidence as described below (*infra* at Sec. II, IV). Therefore, the Court should defer ruling on the admissibility of evidence regarding the *Segar*

litigation and Mr. Gilmore's SAPP score until such time as Mr. Gilmore seeks to introduce the evidence at trial.[2]

## II. EVIDENCE OF THE *SEGAR* LITIGATION PROVIDES CRITICAL CONTEXT TO THE EMPLOYMENT DECISION AT ISSUE IN THIS CASE, AND IS THUS HIGHLY RELEVANT

Mr. Gilmore accuses the DEA of discriminatorily denying him promotion to the SES on the basis of race when he was passed over in favor of Barbara Roach, a white agent, for the SES-level position of Deputy Chief Inspector of the Office of Security Programs ("DCI-OSP"). Key to Mr. Gilmore's case-in-chief will be his argument that he was objectively more qualified for the DCI-OSP position than was Ms. Roach. Mr. Gilmore's position on the DEA's Best-Qualified list for promotion to the SES in comparison to Ms. Roach's placement on the Qualified list is evidence of his objectively superior qualifications. The Best-Qualified and Qualified lists were established by court order in the *Segar* ligation, and were designed to prevent the very discrimination at issue in this case. Evidence of the *Segar* litigation is therefore not only relevant, but critical.

Importantly, Mr. Gilmore has no intention of wasting the Court's and the jury's time re-litigating *Segar* or implying that the DEA's discrimination toward him was "in accordance with" some discriminatory trait, *see* Fed. R. Evid. 404(a)(1). Instead, he intends to introduce only certain basic facts about the *Segar* litigation that provide necessary context for ***his*** discrimination claim. *See Teva Neuroscience, Inc. v. Watson Pharm., Inc.*, Nos. 10-cv-5078, 11-cv-3076, 2013 WL 1966048, at *2 (D.N.J. May 10, 2013) (denying defendants' motion *in limine* where evidence "will assist the factfinder in understanding the relevant background" and "may provide

---

[2] While ruling on the admissibility of particular evidence is best left to trial, Mr. Gilmore requests that the Court provide pre-trial guidance on the extent the parties may refer to the *Segar* litigation and Mr. Gilmore's SAPP score in their opening statements. This will allow the parties to properly craft their arguments, while avoiding unnecessary interruptions in front of the jury.

context"); *Corley v. Louisiana*, No. 06-cv-882, 2011 WL 4916455, at *1 (M.D. La. Oct. 17, 2011) (denying defendants' motion *in limine* where evidence "may be relevant as background information or provide context for evidence related to the plaintiff's protected activity"). For example, Mr. Gilmore plans to introduce evidence of the following:

- He applied for SES promotion as part of the DEA's "open season" application process.

- The "open season" process is part of the Stipulated Procedures that arose out of the *Segar* litigation.

- The Stipulated Procedures were designed to "enact a system developed and constructed to provide DEA with a valid, non-discriminatory mechanism for selecting DEA special agent executives and to provide agency selection officials with the highest quality candidates from which to choose." *Segar v. Mukasey*, 508 F.3d 16, 19 (D.C. Cir. 2007) (quoting the Stipulated Procedures).

- Under the "open season" process, SES applicants are rated and ranked as "Best Qualified," "Qualified," or "Minimally Qualified."

- The Stipulated Procedures require the Administrator to choose from the list of "Best Qualified" candidates when filling SES positions.

- Between March 2006 and November 2007—including in October 2007 when Administrator Tandy made the SES selection decision challenged here—a district court ruling in *Segar* meant that the Stipulated Procedures were temporarily not in place; however, even during that period, the district court required that the Administrator promote to the SES only those special agents who had been rated and ranked.

Without this context, Mr. Gilmore will be denied the ability to present a "coherent and compelling evidentiary account" of the DEA's discrimination. *Buckley v. Mukasey*, 538 F.3d 306, 319 (4th Cir. 2008).

In *Buckley v. Mukasey*—another case involving alleged discrimination by the DEA—the Fourth Circuit held that the district court's exclusion of similar evidence related to the *Segar* litigation as irrelevant, among other grounds, constituted an abuse of discretion. *See id.* at 319. In that case, the court rejected the very argument that the DEA now advances: that *Segar* is irrelevant because the decision-makers at issue in that case are different than the decision-makers

at issue here. *Compare* Motion at 5-6 ("None of the individuals involved in the promotion decision at issue in this case were even employed by the DEA during the *Segar* trial in 1979 . . . . Accordingly, evidence of the *Segar* litigation . . . is not relevant to this case and should be excluded.") *with Buckley*, 538 F.3d at 318 (The DEA contended that "the *Segar* litigation . . . involved different decisionmakers whose racial animus cannot be attributed to the decisionmakers here. Thus, the facts or circumstances underlying *Segar* are not relevant to the employment actions taken by [this defendant] against plaintiff." (alteration in original)). In *Buckley*, the Fourth Circuit explained that certain evidence regarding the *Segar* litigation was in fact relevant to the case, including "the *Segar* plaintiffs' various successes against the DEA, from the initial findings of race discrimination to the series of injunctions controlling DEA operations . . . ." *Buckley*, 538 F.3d at 319.

The DEA's argument that the holding in *Buckley* is limited to cases of alleged retaliation is far too narrow. Indeed, the Fourth Circuit's reasoning that "restrictions on the *Segar* litigation evidence foreclosed a coherent and compelling evidentiary account" of the DEA's conduct, *id.*, applies equally to Mr. Gilmore's discriminatory denial of promotion claim. Just as in *Buckley*, the DEA would have the Court permit Mr. Gilmore "to introduce evidence on the requirements of the DEA's promotion system and its purpose of ensuring equal opportunity," while prohibiting Mr. Gilmore from "mentioning to the jury that the promotion system was governed by [a court order] . . . ." *Id.* As the Fourth Circuit has explained, such a "sanitized" version of the facts would deprive Mr. Gilmore of adequately presenting his case. *See id.*

Evidence related to the *Segar* litigation is of particular relevance in light of former-Administrator Tandy's *de bene esse* deposition testimony. During that testimony, Ms. Tandy repeatedly referred to the "court procedure" or "court process" that limited her discretion in

- 5 -

filling SES vacancies. (Tandy Testimony at 13:6-8 ("Well, let me just start by saying I was *required by established court procedure* to select from names on one of these lists, one of these three lists."), 29:19-23 ("I understand there has to be a system and there has to be a review, and that that was done by that panel, and that they did put those two lists together, and that *the court did say* that I could select from either list."), 30:21-25 ("So the fact that there were these lists I respected, *because that was the court process* . . . .") (emphases added) (Exh. A).)

Ms. Tandy was the deciding official who denied Mr. Gilmore promotion to the SES, making her testimony critical to the DEA's case—as the DEA admits. (Dkt. No. 136 at 1 (describing Ms. Tandy as a "most essential witness[]"). That Ms. Tandy's testimony will be played to the jury is thus without question. The DEA cannot rely on such testimony and at the same time seek to deny Mr. Gilmore the ability to introduce any evidence of the *Segar* litigation, particularly evidence placing the Best-Qualified list in its proper context: as a court-approved procedure designed to eliminate racial discrimination in the DEA's SES selection process and to establish a method of promoting the "highest quality candidates" to the SES without regard to race. *See Segar*, 508 F.3d at 23 (quoting the Stipulated Procedures).

**III.** **ANY PREJUDICE ARISING FROM EVIDENCE OF THE 35-YEAR-OLD *SEGAR* DECISION CAN BE CURED BY AN APPROPRIATE JURY INSTRUCTION**

The DEA's contention that evidence of the *Segar* litigation "should . . . be excluded due to its highly prejudicial nature and propensity to confuse the issues in this matter" is misplaced. (Motion at 6.) The *Segar* court found that the DEA discriminated against African American employees in 1979, approximately 35 years ago. That a jury in 2014 would equate the DEA's discriminatory conduct at that time with Mr. Gilmore's allegations is highly unlikely. *See United States v. Mitts*, No. 3:07-cr-40, 2008 WL 927825, at *4 (W.D. Ky. Apr. 4, 2008) (explaining that the passage of ten years "decreases the potential for unfair prejudice, as Defendant will be able to

argue more plausibly that whatever occurred during his long-ago association . . . has no effect on the actions for which he is charged"). In addition, any potential unfair prejudice or jury confusion can be rectified with an appropriate jury instruction. *See Buckley*, 538 F.3d at 320 ("To the extent there is any danger of confusion of the issues, a limiting instruction could be utilized to caution the jury that the *Segar* litigation evidence is to be considered only as evidence of retaliatory animus."); *see also United States v. Cabrera-Beltran*, 660 F.3d 742, 756 (4th Cir. 2011) (finding that "any remaining danger of unfair prejudice was alleviated by the cautionary jury instruction given by the district court"); *United States v. Moazzeni*, 908 F. Supp. 2d 748, 753 (E.D. Va. 2012) (finding that defendant would suffer no unfair prejudice where "[i]f requested, an appropriate jury instruction will guide the jury deliberations and avoid any resulting confusion").

The cases relied upon by the DEA are not to the contrary. In *Guerrero v. Deane*, the court excluded only a specific comment made by the judge in the state court proceeding on hearsay—not relevance—grounds. No. 1:09-cv-1313, 2012 WL 3834907, at *10 (E.D. Va. Sept. 4, 2012). The court deferred ruling on admissibility on the remaining evidence *in limine*. *Id. Lewis v. Sentara Alternative Delivery System*, 139 F.3d 890 (4th Cir. 1998), is likewise inapposite. There, the court affirmed the district court's exclusion of certain evidence only where its relevance required significant additional evidence that would waste the court's time and confuse the jury. *Id.* at *3. Here, in contrast, limited evidence related to the *Segar* litigation is itself necessary to provide context for clearly admissible evidence.

**IV.     MR. GILMORE'S SAPP SCORE IS RELEVANT TO SHOW THAT THE DEA'S PROFFERED EXPLANATION THAT MR. GILMORE LACKED ADEQUATE "ENFORCEMENT EXPERIENCE" IS PRETEXTUAL**

Mr. Gilmore contends that the DEA's "enforcement experience" explanation for denying him promotion to the SES is merely a pretext for discrimination. Mr. Gilmore's score on the

SAPP test is unquestionably relevant to establishing pretext. The test is administered by the DEA, and is used by the DEA in promoting special agents to the GS-15 level. (Motion at 11.) It measures, among other things, a candidate's "Ability to Plan and Coordinate Enforcement Operations." (ELG00001889-93 at ELG00001891 (Exh. B).) Mr. Gilmore received the highest possible rating in this category. (*Id.* at ELG00001889.)

That the DEA now claims its own test is irrelevant to a special agent's enforcement capabilities is beyond the pale. The SAPP test stands in stark contrast to the DEA's undefined "enforcement experience" criteria in identifying the best candidates for promotion up the ranks. It measures specific attributes related to a special agent's ability to manage the enforcement operations relevant to the DEA:

> Considering all components of planned operations and assessing the comprehensiveness and viability of the plans; evaluating conformance of plans with accepted DEA guidelines; anticipating possible consequences of planned actions in terms of operational effectiveness and the safety and security of personnel and other resources; and effectively coordinating enforcement operations.

(*Id.* at ELG00001891.) While a special agent's SAPP score was not one of the written criteria considered when promoting a special agent to the SES, neither was "enforcement experience." (DEA-ROI-0000324-45 (Exh. C).) Mr. Gilmore's SAPP score is therefore relevant and should not be excluded. Further, the DEA's attempt to exclude certain exhibits wholesale on the basis that they reference Mr. Gilmore's SAPP score (Motion at 11 n.5) should be rejected.

## **CONCLUSION**

For the above reasons, Plaintiff respectfully requests that the Court deny those portions of the DEA's Motion related to the *Segar* litigation and Mr. Gilmore's SAPP score.

Respectfully Submitted,

*/s/ D. Bradford Hardin, Jr.*
Don Bradford Hardin, Jr. (Va. Bar No. 76812)
Amy Kaplan (Va. Bar No. 80789)
Eric Mahr (*pro hac vice*)
Amanda Major (*pro hac vice*)
Jeffrey T. Hantson *(pro hac vice)*
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: Bradford.Hardin@WilmerHale.com

Dated: June 6, 2014        *Counsel for Plaintiff Edward L. Gilmore*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June 2014, I sent copies of the foregoing PLAINTIFF EDWARD L. GILMORE'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN OF PLAINTIFF'S EVIDENCE with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

R. Joseph Sher
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3747
(703) 299-3983 (facsimile)
joe.sher@usdoj.gov
*Counsel for the Defendant*

Ayana N. Free
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3785
(703) 299-3983 (facsimile)
ayana.free@usdoj.gov

Erin Kathleen Murdock-Park
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3763
(703) 299-3983 (facsimile)
erin.murdock-park@usdoj.gov
*Counsel for the Defendant*

*/s/D. Bradford Hardin, Jr.*
Don Bradford Hardin, Jr. (Va. Bar No. 76812)