# DEX C

```
                                                                    1
                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

EDWARD L. GILMORE,                 .    Civil Action No. 1:13cv789
                                   .
          Plaintiff,               .
                                   .
     vs.                           .    Alexandria, Virginia
                                   .    May 16, 2014
ERIC HOLDER, in his official       .    10:14 a.m.
capacity as Attorney General       .
of the United States,              .
                                   .
          Defendant.               .
                                   .
 .   .   .   .   .   .   .   .   .   .   .


                    TRANSCRIPT OF MOTIONS HEARING
               BEFORE THE HONORABLE LEONIE M. BRINKEMA
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:           AMANDA L. MAJOR, ESQ.
                             AMY P. KAPLAN, ESQ.
                             Wilmer Cutler Pickering Hale and
                             Dorr LLP
                             1875 Pennsylvania Avenue, N.W.
                             Washington, D.C. 20006


FOR THE DEFENDANT:           R. JOSEPH SHER, AUSA
                             AYANA N. FREE, AUSA
                             United States Attorney's Office
                             2100 Jamieson Avenue
                             Alexandria, VA 22314


OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Fifth Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595


                           (Pages 1 - 21)


              COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

1  of his EEO complaint.

2       And so the last issue, of course, then is the
3  defendant's motion for summary judgment.  This is a really
4  tough case.  I spent more time on this case than I have on a
5  Title VII case in a long time because as I said, this is a
6  plaintiff who clearly had a lot of very, very positive
7  qualifications.

8       The problem the government has in this case is that
9  the testimony of Mr. Guevara is, I think, enough to have this
10 case go to trial.  Guevara was up until the last couple of
11 months before this decision made, he was the direct supervisor
12 of Mr. Gilmore, and he really raved about him.

13      The government's description of Guevara was not
14 completely accurate in its brief.  It is not the case that
15 Guevara did not recommend him.  The evidence that I see in this
16 case is Guevara was never asked.  So yeah, he didn't recommend
17 him, but it's not because he didn't recommend him.  He was
18 never asked about him, and he has said that if he were to have
19 been asked, he would have recommended him.

20      I think particularly interesting in terms of an
21 exhibit in this case is the exhibit of the Career Board minutes
22 back in 2005, when Mr. Gilmore was at that time still working
23 in the aviation area and was asking for a lateral transfer into
24 this GS-15 position, and I'm sure since it's an exhibit,
25 you-all looked at that carefully, but that is a fascinating

1   exhibit because of it's a transcript, and you hear people
2   actually talking about Mr. Gilmore, and Guevara is adamant in
3   that discussion that Gilmore has all of the qualifications
4   needed for the deputy chief inspector of the Office of Security
5   Programs, because what that job involves, it's not an
6   investigatory job.  It's a job that provides security for
7   personnel, for buildings, and for IT systems.  It requires the
8   management of complex contracts, and I think he says in that
9   conversation that the biggest, one of the biggest contracts the
10  DEA had at that point was being managed by -- was involved in
11  that office.
12          So his testimony alone in my view creates a material
13  issue of fact about the qualifications of Mr. Gilmore for the
14  position, in addition to which there is, I think, a legitimate
15  factual question as to whether or not this insistence upon
16  street-level law enforcement experience was a realistic
17  qualification for that particular position.
18          The other thing that is problematic is whether, in
19  fact, the amount of law enforcement experience which Gilmore
20  had -- and it's uncontested that he was a street cop in Chicago
21  for several years and he had been a regular special agent
22  working for two or three years when he joined the DEA, so he
23  had -- he did have law enforcement experience.  It wasn't
24  current, and I think not having current experience could be,
25  could be a legitimate factor, depending upon the particular

19

1   position that someone was applying for, but in this case, in
2   terms of the prima facie case, this plaintiff clearly is a
3   member of a protected group.  He's African American.  He was
4   clearly qualified or well qualified for this position.  He
5   applied for the position, and the person who got the position
6   was not from his protected group and was not as highly rated on
7   one index, on this SES qualification index, she wasn't as
8   highly rated as he.  I mean, those are uncontested facts.
9           Now, whether or not the final decision to put her in
10  the position over Mr. Gilmore was tainted or affected by his
11  race is the big question in this case, and it's a very big
12  question.  I really don't know because I haven't seen the
13  witnesses testify, and that's why this case will have to go to
14  trial if you don't settle it.  It's a close call.
15          I will say that given what I think are all the bona
16  fides of this plaintiff, if the, if the jury gets wind that the
17  witnesses are hedging or saying things inaccurately, I think
18  the inference they will draw will be against the government.
19          On the other hand, I will also say that there's
20  clearly again from that same Career Board set of minutes some
21  very interesting comments by the deputy administrator,
22  Ms. Leonhart, because she's talking about the problem that
23  Mr. Gilmore has in wanting to even get that position because
24  it's another headquarters position, and so, I mean, there's
25  clearly evidence in this record that back in 2005, there were

20

1  concerns about is this the smartest career move for this man
2  because by keeping himself out of the field and staying at
3  headquarters, does he become less eligible for SES positions,
4  and there is some evidence in this record that the
5  administrator felt that the people who should be going into SES
6  positions should have an extensive amount of field experience.
7  That's not an irrational approach in a law enforcement agency.
8         So what I'm saying to both sides is this is a really
9  tough case, and it's not by federal standards a big dollar
10 case.  That's why I started looking at the damages issue to
11 begin with.
12        So I'm denying the government's motion for summary
13 judgment.  This case has too many unanswered issues.  The case
14 will totally focus on whether the reasons given are pretextual
15 or whether they're genuine, and I think that there are really
16 good reasons why a jury could find that they were genuine, but
17 based upon credibility determinations, they could also find
18 that they were not fair.  That being the case, this is a case
19 where I really think wise folks should sit down and try to work
20 it out, so I leave it with you at that.
21        The case is set for trial to begin on Monday,
22 June 16.  If you plan -- if you can't work it out and it's
23 going to go to trial, then I will -- if you're going to have
24 any motions in limine, I do not take them on the morning of
25 trial.  You'll need to schedule them ahead of time, and I'm not