**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| EDWARD L. GILMORE </br></br> Plaintiff, </br></br> v. </br></br> ERIC HOLDER, </br> in his official capacity as </br> Attorney General of the United States, </br></br> Defendant. | Civil Action No. 1:13-cv-789 |

**PLAINTIFF EDWARD L. GILMORE'S OPPOSITION**
**TO DEFENDANT'S BILL OF COSTS**

Plaintiff Edward L. Gilmore submits this memorandum in opposition to the DEA's bill of costs. Mr. Gilmore respectfully requests this Court deny the DEA's request for costs because it would be unjust to award costs given (1) the untimeliness of the DEA's bill of costs and (2) the close and difficult nature of the case. Additionally, the requested costs are excessive and if awarded should be reduced substantially. Finally, if the Court does award the DEA costs, Mr. Gilmore respectfully requests the Court stay that award pending appeal.

**I.      Standard For The Award Of Costs**

A prevailing party may recover costs, other than attorney's fees, under Fed. R. Civ. P. 54(d)(1). However, this rule does not give a district court "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964). Instead, a court may tax only those costs authorized by statute. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).

A court may deny costs in cases in which it can "justify its decision by articulating some good reason for doing so." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (quoting *Teague v. Bakker*, 35 F.3d 978, 995-96 (4th Cir. 1994)) (internal quotation marks omitted). That is, "[c]osts may be denied to the prevailing party only when there would be an element of injustice in a presumptive cost award." *Id.* For example, courts may consider factors such as "misconduct by the prevailing party worthy of a penalty . . . or the losing party's inability to pay," as well as "excessiveness in a particular case, the limited value of the prevailing party's victory, or the closeness and difficulty of the issues decided." *Id*.

## II. The Court Should Not Award The DEA Costs Against Mr. Gilmore

This Court should not award the DEA costs against Mr. Gilmore because the DEA's bill of costs was untimely and because this was a close and difficult case.

### A. The DEA's Bill Of Costs Should Be Denied As Untimely

Pursuant to Local Rule 54, "the party entitled to costs shall file a bill of costs . . . within eleven (11) days from the entry of judgment." Local Rule 54(D). Fed. R. Civ. P. 6(a) "appl[ies] in computing any time period specified in . . . any local rule," and it does not contemplate extensions for weekend and holidays. It provides "[w]hen the period is stated in days or a longer unit of time:

   (A) exclude the day of the event that triggers the period;
   (B) count every day, including intermediate Saturday, Sundays, and legal holidays; and
   (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Civ. P. 6(a)(1)(A)-(C). *See e.g*. *Stronach v. Va. State Univ.*, 577 F. Supp. 2d 788, 789 (E.D. Va. 2008) ("The Court entered judgment in this case on May 12, 2008, when it granted Defendants' Motion for Summary Judgment. Thus, Defendants' deadline to file their Bill of

Costs was May 23, 2008.")) The Court entered judgment in this case on June 17, 2014. ECF No. 181. The DEA's deadline to file its bill of costs was July 28, 2014. The DEA failed to file its bill of costs until July 2, 2014, fifteen days after the entry of judgment. ECF No. 186. Even then, the DEA's bill of costs was filed incorrectly, and had to be refiled on July 3, 2014, sixteen days after entry of judgment. ECF No. 187. The DEA's bill of costs was untimely.[1]

This Court may, in its discretion, extend the time to file a bill of costs upon a showing of "excusable neglect." *Id.* However, "[a] party cannot easily show 'excusable neglect,' and the Court should only find 'excusable neglect' in *extraordinary cases* where injustice would otherwise result." *Id.* (internal citations omitted) (emphasis in original). Here, the DEA is represented by the local U.S. Attorney's Office for this District, who are clearly experienced counsel familiar with the District's local rules. The DEA's bill of costs provides no justification for its untimeliness, and mere "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect." *Id.* (internal citations omitted).

Moreover, injustice would not result by denying the DEA costs. The DEA is a large government agency seeking a considerable sum from an individual plaintiff, Mr. Gilmore, who is a good faith Title VII plaintiff represented by pro bono counsel. Accordingly, Mr. Gilmore respectfully requests that the Court dismiss the DEA's bill of costs as untimely.

**B.    The DEA Should Not Be Awarded Costs Because This Was A Close And Difficult Case**

As this Court acknowledged in Summary Judgment proceedings "this is a really tough case." ECF No. 138 Summary Judgment Tr. ¶¶ 8-9. Mr. Gilmore is an African American who served more than twenty years as a DEA Special Agent. Throughout his career, Mr. Gilmore received outstanding performance reviews. He was the highest rated candidate on the list of

---

[1] Because the DEA's bill of costs was unquestionably untimely, Mr. Gilmore filed a Motion to Strike the Bill of Costs immediately preceding this Opposition.

3

Agents eligible to be promoted to the DEA's Senior Executive Service ("SES"). Mr. Gilmore served in the position as Deputy Chief Inspector for over two years and received exemplary performance reviews. Nevertheless, when his position was upgraded to the SES, he was removed from that position and replaced by a white Agent who was less qualified than he was. The DEA then demoted Mr. Gilmore to a limited, administrative position with ministerial responsibilities for which he was plainly overqualified. Mr. Gilmore filed a complaint with the EEOC and alleged that these actions violated Title VII of the Civil Rights Act of 1964.

  Mr. Gilmore was reasonable pursing his claims through trial. As this Court summarized at Summary Judgment stage, "in terms of the prima facie case, this plaintiff clearly is a member of a protected group. He's African American. He was clearly qualified or well qualified for this position. He applied for the position, and the person who got the position was not from his protected group and was not as highly rated on one index, on this SES qualification index, she wasn't as highly rated as he. I mean, those are uncontested facts." ECF No. 138 Summary Judgment Tr. 19 ¶¶ 2-8.

  Moreover, in response to the DEA's motion for a directed verdict at the close of plaintiffs' case, this Court concluded "there is more than enough evidence at this point for this case to go forward. I mean, the plaintiff has made out the prima facie case. . . No, I think it's definitely enough to go forward. . . . he has already put forward pretext. . . . the law enforcement experience issue is wide open. . . . there is not necessarily enough information in this case to satisfy me at this point that that was not pretextual. No, I am letting the case go forward." 6-16-2014 Trial Trans. 270-271.

  Throughout this litigation, Mr. Gilmore has reasonably believed he is the victim of discrimination. For five years, as his claim languished in administrative proceedings, Mr.

4

Gilmore contemplated what all have acknowledged is a strong prima facie case. Over the course of extended discovery Mr. Gilmore continued to believe he was the victim of discrimination (a belief he continues to hold today). The DEA's proffered reasons – that Mr. Gilmore did not adequately clear the backlog and that Mr. Gilmore did not have sufficient law enforcement experience – were not explained to him at any point in his DEA career and stood in stark contrast to Mr. Gilmore's performance evaluations and his direct supervisor's testimony that he would have recommended Mr. Gilmore for promotion. Further, Mr. Gilmore reasonably concluded that he had adequate law enforcement experience to perform the job that he had been performing at an outstanding level for two years.

In addition, Mr. Gilmore was not apprised of the DEA's proffered reasons for passing him over for promotion until well into discovery, at the depositions of former Administrator Karen Tandy and Administrator Leonhart. Indeed, the deposition of Administrator Leonhart was delayed until the final day of twice extended discovery, April 9, 2014. ECF No. 66. And the evidence that the DEA asserts supports those proffered reasons – such as the notes of Administrator Leonhart's conversations with Mr. Gilmore's supervisors – was not produced until just before that deposition, well past the relevant production deadlines. Thus, even if, upon finally hearing the DEA's proffered reasons for its decision, Mr. Gilmore believed that the DEA may have had a conceivable justification for not promoting him, he had no choice but to pursue his claims to trial due to the DEA's refusal to engage in settlement negotiations.

Mr. Gilmore's claims survived the DEA's motion to dismiss and motion for summary judgment stage, with this Court concluding at summary judgment: "Now, whether or not the final decision to put her in the position over Mr. Gilmore was tainted or affected by his race is the big question in this case, and it's a very big question. I really don't know because I haven't

seen the witnesses testify, and that's why this case will have to go to trial if you don't settle it. It's a close call." ECF No. 138 Tr. 19 ¶¶ 9-14. Under these circumstances, given the close and difficult nature of this case, it would be unjust to levy costs against Mr. Gilmore. Accordingly, Mr. Gilmore respectfully requests the Court deny the DEA's bill of costs.

**III.    The DEA's Requested Costs Are Excessive And Should Be Denied**

    **A.    The DEA's Claimed Costs For Witnesses Thomas Nuse And Roger Guevara Are Excessive**

Title 28 U.S.C. § 1920 provides that prevailing parties may recover "witness fees." The DEA seeks witness fees for Mr. Nuse and Mr. Guevara.

        **1.    Costs Related To Thomas Nuse Should Be Denied As Unnecessary and Excessive**

Mr. Nuse's testimony was not necessary to the DEA's case. Mr. Nuse provided limited insight into Mr. Gilmore's performance as Deputy Chief Inspector. Mr. Nuse spoke only in passing about Mr. Gilmore's actual job performance and provided no insight into Administrator Tandy's decision not to promote Mr. Gilmore to the position of Deputy Chief Inspector for the Office of Security Programs. Instead, Mr. Nuse's testimony consisted primarily of personal attacks on Mr. Gilmore, such as his testimony regarding various perceived slights that apparently soured his personal view of Mr. Gilmore. Moreover, trial lasted two days and Mr. Nuse only testified for one of those days. Without explanation, the DEA seeks five days' worth of expenses for Mr. Nuse. At minimum, any reimbursement for Mr. Nuse should be limited to the day where Mr. Nuse actually testified. *See Amdocs (Isr) Ltd v. Openet Telecom Inc*, 1:10cv910 (LMB/TRJ) 2013 U.S. Dist. LEXIS 42300, at *18-19 (E.D. Va. July 11, 2013) (Brinkema, J.) ("Other expenses go beyond what was necessary; for example, a witness traveling from Atlanta to Washington D.C. for a one-day deposition does not necessitate spending two nights at a hotel.")

Given the unnecessary nature of the testimony provided by Mr. Nuse, and the excessive amount of expenses claimed, Mr. Gilmore respectfully requests that all costs related to Mr. Nuse be denied.

### 2. If Awarded At All, The DEA's Claimed Expenses Related To Rogelio Guevara Should Be Reduced

Mr. Guevara testified for one day, but the DEA claims expenses for three days, including a hotel bill for $1,287.40. The DEA also claims $131.50 in taxi fees, without specifying the destinations or origins of these trips. Mr. Gilmore requests Mr. Guevara's fees be reduced to account for one day of testimony, and for a more moderate range of expenses, particularly given the wide range of reasonable accommodations within blocks of the courthouse. *See Amdocs (Isr)*, 2013 U.S. Dist. LEXIS 42300, at *18 (E.D. Va. 2013) (Brinkema, J.) (denying expenses that go beyond what is necessary to secure a witness' testimony).

### B. The DEA's Claimed Expenses Related To Depositions Are Excessive

The costs of a deposition, including transcript fees, should be awarded "when the taking of a deposition is reasonably necessary at the time of its taking. " *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987); *see* 28 U.S.C. § 1920(2). Many of the DEA's claimed deposition costs are unnecessary and excessive because (1) they relate to claims on which the DEA did not prevail and/or (2) they related to depositions Mr. Gilmore was forced to notice as a result of the DEA's failure to provide timely and complete discovery.

### 1. Mr. Gilmore Should Not Be Taxed Costs for Witnesses Related To Claims Upon Which The DEA Did Not Prevail

#### a. Stephanie Smith Deposition

The deposition of Stephanie Smith did not resolve any claim upon which the DEA prevailed. Instead, Ms. Smith was relevant to only the DEA's unsuccessful claim that Mr. Gilmore's initial EEO contact was untimely. Specifically, Ms. Smith testified she failed to

receive a preservation notice from the DEA, which led her to destroy her calendar which likely contained the date of Mr. Gilmore's first contact with the EEO office. However, Mr. Gilmore, not the DEA, prevailed on this issue. ECF No. 134. Because Ms. Smith's testimony was unnecessary to any claim on which the DEA prevailed, costs associated with Ms. Smith should be denied.

### b. Mark Shafernich Deposition

Likewise, the deposition of Mark Shafernich, the DEA's 30(b)(6) computer specialist, was unnecessary to resolve the matter upon which the DEA prevailed. Instead, Mr. Shafernich's testimony was relevant only to the DEA's various electronic document retention policies. In turn, these policies were relevant only to understand the extent of the DEA's insufficient collection efforts and its failure to preserve documents such as the calendar of Stephanie Smith. This information was used to compel the DEA to produce additional documents and to contest the DEA's untimeliness claim, which again are issues upon which Mr. Gilmore prevailed in whole or part. Indeed, Mr. Shafernich did not even know who Mr. Gilmore was, and did not testify to the merits of any of the claims upon which the DEA ultimately prevailed. As such, costs for the deposition of Mr. Shafernich should be not be taxed against Mr. Gilmore.

### c. Bruce Travers Deposition

The DEA should not be reimbursed for costs related to the deposition of Bruce Travers, who was deposed in order to explain the DEA's policies regarding identifying, gathering, and searching Career Board documents. Mr. Gilmore was forced to notice this deposition only because the DEA claimed it was unable to provide Mr. Gilmore the 2005 Career Board Minutes where Mr. Gilmore believed he was chosen to be ASAC of the Chicago field office, but Mr. Guevara interjected to say he wanted Mr. Gilmore for Office of Security Programs. Mr. Gilmore noticed the deposition in an effort to understand why the DEA was able to locate certain Career

Board minutes and tapes from 2005 that were helpful to the DEA's case, but not other ones potentially helpful to Mr. Gilmore. It would be unjust to levy against Mr. Gilmore costs related to discovery disputes, especially when the origin of the dispute lies with inconsistencies in the DEA's document production, and its failure to articulate its document preservation, collection, and productions efforts through counsel. Accordingly, the costs associated with Mr. Travers should be denied.

### d. Gary Olenkiewiz Deposition

Mr. Gilmore was forced to depose Gary Olenkiewiz to understand the 2007 Career Board decisions not to transfer Mr. Gilmore laterally following the DEA's failure to promote him. This deposition related to Mr. Gilmore's withdrawn retaliation claim. Defendant did not prevail upon this claim and Mr. Gilmore should not be punished for responsibly narrowing his claims in advance of trial. Accordingly, Mr. Gilmore requests that the Court deny the DEA's claim for costs associated with this deposition.

### 2. Costs Relating to Rough Draft Transcripts Should Be Denied

The DEA claims costs for both the rough and official transcripts of the depositions of Administrator Leonhart and its expert witness, Mr. Lesch. Mr. Gilmore should not be responsible for the convenience of the DEA's counsel receiving rough transcripts the same day as deposition, instead of waiting the following day to receive the official transcript.

Additionally, because the DEA did not itemize the costs it claims in relation to the remaining depositions, Mr. Gilmore is unable to determine whether they include rough and official transcripts – although the amount of the relevant costs suggests that they do include both copies as well as delivery costs. The DEA's failure to itemize their bill of costs prevents further review, but Mr. Gilmore should not be responsible for the DEA's rough draft copies and delivery

9

of transcripts. Accordingly, Mr. Gilmore requests that the Court deny the DEA's claimed costs for these items.

### III. Mr. Gilmore Requests This Court Defer Costs Pending Appeal

Mr. Gilmore intends to appeal the judgment in this matter. Under such circumstances, it is within the Court's discretion to defer costs pending appeal. *See e.g. Tecsec, Inc. v. Int'l Business Machines Corp. et al.*, 1:10cv115, Dkt No. 585 "Order Granting 583 Motion to Stay Consideration of IBM's Motion for Attorney's Fees and Costs and IBM's Bill of Costs." (E.D. Va April 7, 2010) (Brinkema, J.). Mr. Gilmore is an individual Title VII plaintiff represented by pro bono counsel. The amount requested by the DEA is a significant sum for an individual. Accordingly, should the Court determine to award the DEA any of its claimed costs, Mr. Gilmore respectfully requests the Court stay that award pending appeal.

### CONCLUSION

For these reasons, the Court should deny the DEA's bill of costs. In the event this Court awards costs, Mr. Gilmore requests this Court stay the costs pending appeal.

Respectfully Submitted,

/s/ D. Bradford Hardin, Jr.
D. Bradford Hardin, Jr. (Va. Bar No. 76812)
Eric Mahr (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: Bradford.Hardin@WilmerHale.com

Dated: July 11, 2014            *Counsel for Plaintiff Edward L. Gilmore*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July 2014, I sent copies of the foregoing PLAINTIFF EDWARD L. GILMORE'S OPPOSITION TO DEFENDANT'S BILL OF COSTS with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

R. Joseph Sher
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3747
(703) 299-3983 (facsimile)
Joe.sher@usdoj.gov
*Counsel for the Defendant*

Ayana N. Free
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3785
(703) 299-3983 (facsimile)
Ayana.free@usdoj.gov
*Counsel for the Defendant*

                        /s/D. Bradford Hardin, Jr.
                        D. Bradford Hardin, Jr. (Va. Bar No. 76812)